## UNITED STATES DISTRICT COURT
### DISTRICT OF MARYLAND

STATE OF MARYLAND, et al.

              Plaintiffs

      v.

PETE HEGSETH, Secretary of Defense, et al.

              Defendants.

Case No: 1:26-cv-02322-MJM

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ................................................................................................ 3

    I.    Statutory and regulatory background ................................................... 3

    II.    Statement of undisputed material facts ................................................ 5

        A.    Executive Order No. 14398 ........................................................ 5

        B.    Actions taken by the defendants to implement Executive Order No. 14398 ............................................................................... 8

            1.    April 2026 FAR Council memorandum .......................... 8

            2.    Agency implementation ................................................. 10

        C.    Lack of clarity in the contract terms ......................................... 13

        D.    Contracting activities of the plaintiff States ............................... 16

    III.    Proceedings in this case ..................................................................... 17

ARGUMENT .................................................................................................. 18

    I.    Standards applicable to a motion for summary judgment in an action for judicial review under the Administrative Procedure Act .................................... 18

    II.    The April 2026 FAR Council memorandum exceeds the FAR Council's authority and violates procedural requirements and substantive limits established by federal statutes and regulations. .......................................................................... 20

        A.    The FAR Council memorandum is reviewable final agency action under the APA. ................................................................................... 20

        B.    The FAR Council memorandum exceeded the FAR Council's statutory authority. ................................................................................... 22

        C.    The FAR Council memorandum violated the notice and comment requirements of 41 U.S.C. § 1707 and the parallel requirements of FAR subpart 1.5. ................................................................................ 23

        D.    The False Claims Act provision specified in the Executive Order conflicts with the False Claims Act. ......................................................... 25

  E.  The FAR Council's adoption of the reporting and recordkeeping requirements specified in the new contract terms violated the Paperwork Reduction Act..........................................................................25

III. The class deviations issued by the remaining defendant agencies, and those agencies' adoption of the contract terms prescribed by Executive Order No. 14398, are unlawful for many of the same reasons. ...............................................27

IV. The Court should vacate the challenged actions and enjoin their implementation. ...........................................................................................................28

CONCLUSION...................................................................................................................30

ii

## TABLE OF AUTHORITIES

**CASES**

*Am. Bankers Ass'n v. Nat'l Credit Union Admin.*,
271 F.3d 262 (D.C. Cir. 2001)..................................................................... 18

*Bennett v. Spear*,
520 U.S. 154 (1997)....................................................................................... 22

*Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*,
144 S. Ct. 2440 (2024).................................................................................. 28

*D.A.M. v. Barr*,
486 F. Supp. 3d 404 (D.D.C. 2020) ........................................................... 27

*Deese v. Esper*,
483 F. Supp. 3d 290 (D. Md. 2020) ........................................................... 18

*Dow AgroSciences LLC v. Nat'l Marine Fisheries Serv.*,
637 F.3d 259 (4th Cir. 2011) ...................................................................... 22

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006)....................................................................................... 29

*Kentucky v. Biden*,
571 F. Supp. 3d 715 (E.D. Ky. 2021)....................................................... 21

*La Gloria Oil & Gas Co. v. United States*,
56 Fed. Cl. 211 (Fed. Cl. 2003) ................................................................. 24

*Mayes v. Biden*,
67 F.4th 921 (9th Cir.)................................................................................. 21

*Mountain Valley Pipeline, LLC v. W. Pocahontas Props. Ltd. P'ship*,
918 F.3d 353 (4th Cir. 2019)...................................................................... 30

*Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*,
22 F.3d 546 (4th Cir. 1994)........................................................................ 30

*Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*,
167 F.4th 86 (4th Cir. 2026)....................................................................... 14

*Navajo Refining Co. v. United States*,
58 Fed. Cl. 200 (Fed. Cl. 2003) ................................................................. 24

*Nken v. Holder*,
556 U.S. 418 (2009)....................................................................................... 29

*Outdoor Amusement Bus. Ass'n v. Dep't of Homeland Sec.*,
 Civil Action No. ELH-16-1015, 2017 WL 3189446 (D. Md. July 27, 2017)....... 18

*Perkins v. Lukens Steel Co.*,
 310 U.S. 113 (1940). ....................................................................................... 3

*Roe v. U.S. Dep't of Def.*,
 947 F.3d 207 (4th Cir. 2020) ............................................................................ 30

*Sierra Club v. U.S. Army Corps of Eng'rs*,
 909 F.3d 635 (4th Cir. 2018) ............................................................................ 28

*SourceAmerica v. U.S. Dep't of Educ.*,
 Case No. 1:17-cv-893, 2018 WL 10436584 (E.D. Va. July 5, 2018) ................... 18

*Tesoro Haw. Corp. v. United States*,
 58 Fed. Cl. 65 (Fed. Cl. 2003) ......................................................................... 24

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
 578 U.S. 590 (2016)......................................................................................... 20

*United States v. Garcia*,
 855 F.3d 615 (4th Cir. 2017) .............................................................................. 8

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
 579 U.S. 176 (2016).......................................................................................... 25

*Youngstown Sheet & Tube Co. v. Sawyer*,
 343 U.S. 579 (1952).......................................................................................... 3

**FEDERAL STATUTES**

41 U.S.C. § 1302(a) ................................................................................................ 4

41 U.S.C. § 1302(b) ................................................................................................ 4

41 U.S.C. § 1303................................................................................................ 3, 17, 22

41 U.S.C. § 1303(a)(1).............................................................................................. 4

41 U.S.C. § 1303(d) .......................................................................................... 4, 22

41 U.S.C. § 1707........................................................................................... passim

41 U.S.C. § 1707(a)(1).............................................................................................. 4

41 U.S.C. § 1707(a)(1)(A) ...................................................................................... 23

41 U.S.C. § 1707(a)(1)(B)(i)................................................................................... 23

41 U.S.C. § 1707(a)(1)(B)(ii) ........................................................................ 23

41 U.S.C. § 1707(b) ........................................................................................ 4

41 U.S.C. § 1707(d)–(e) .............................................................................. 4, 24

Administrative Procedure Act (APA), 5 U.S.C. §§ 551–559, 701–706 ............ 3, 18, 20, 22

    5 U.S.C. § 704 ...................................................................................... 20, 22

    5 U.S.C. § 706(2) .............................................................................. 17, 18, 28

    5 U.S.C. § 706(2)(A) .................................................................................. 18

Declaratory Judgment Act, 28 U.S.C. § 2201 ................................................. 28

False Claims Act, 31 U.S.C. §§ 3729–3733 ........................................... passim

    31 U.S.C. § 3729(b)(4) ............................................................................... 25

Paperwork Reduction Act, 44 U.S.C. §§ 3501–3521 ............................... passim

    44 U.S.C. § 3502(3) .................................................................................... 26

    44 U.S.C. § 3506(c)(1) ............................................................................... 26

    44 U.S.C. § 3506(c)(2) ............................................................................... 26

    44 U.S.C. § 3507(a) ............................................................................... 26, 27

    44 U.S.C. § 3507(a)(1)(D) .......................................................................... 26

    44 U.S.C. § 3507(b) .................................................................................... 26

**EXECUTIVE ORDERS**

Exec. Order No. 11246, Equal Employment Opportunity, 3 C.F.R. 339 (1964–1965) 2, 13, 14, 15

Exec. Order No. 14173, Ending Illegal Discrimination and Restoring Merit-Based Opportunity, 90 Fed. Reg. 8633 (Jan. 21, 2025) .................................. 2, 13, 14, 16

Exec. Order No. 14275, Restoring Common Sense to Federal Procurement, 90 Fed. Reg. 16447 (Apr. 15, 2025) ...................................................................... 8

Exec. Order No. 14398, Addressing DEI Discrimination by Federal Contractors, 91 Fed. Reg. 16147 (Mar. 26, 2026) ........................................................... passim

v

**FEDERAL REGULATIONS**

41 C.F.R. pt. 60-1 ................................................................................. 13

41 C.F.R. § 60-1.4(a) ........................................................................... 15

41 C.F.R. § 60-3.2(C) ........................................................................... 15

Federal Acquisition Regulation, 48 C.F.R. ch. 1 ................................... 4

    48 C.F.R. subpart 1.4 ................................................................ passim

    48 C.F.R. § 1.401(a) ........................................................................ 5

    48 C.F.R. § 1.401(c) ........................................................................ 5

    48 C.F.R. § 1.402 ...................................................................... 4, 24

    48 C.F.R. § 1.404 ............................................................................ 5

    48 C.F.R. subpart 1.5 ................................................................ 24, 28

    48 C.F.R. § 2.101 .......................................................................... 21

    48 C.F.R. § 13.201 ........................................................................ 21

    48 C.F.R. § 22.810 ........................................................................ 14

    48 C.F.R. § 43.103(a) ...................................................................... 9

    48 C.F.R. § 52.222-26 .................................................................... 14

**OTHER AUTHORITIES**

David H. Carpenter et al., Cong. Rsch. Serv., R42826, The Federal Acquisition
    Regulation (FAR): Answers to Frequently Asked Questions (2025) ..................... 3

Information Collection; Addressing DEI Discrimination by Federal Contractors, 91 Fed.
    Reg. 24544 (May 6, 2026) ................................................................... 10

Recission of Executive Order 11246 Implementing Regulations, 90 Fed. Reg. 28472
    (proposed July 1, 2025) ........................................................................ 14

White House, White House Announces Revolutionary Federal Procurement Overhaul
    (Apr. 16, 2025) .................................................................................. 8

**PRELIMINARY STATEMENT**

The U.S. government spends hundreds of billions of dollars each year procuring goods and services for its own use, making it the largest purchaser in the world. The plaintiff States participate heavily in the business of federal contracting through their agencies and instrumentalities, performing work vital to the public under federal contracts and subcontracts worth billions of dollars a year.

On March 26, 2026, President Trump issued a new Executive Order with the stated purpose of deterring "diversity, equity, and inclusion (DEI) activities" by federal contractors and subcontractors. Exec. Order No. 14398, Addressing DEI Discrimination by Federal Contractors, § 1, 91 Fed. Reg. 16147 (Mar. 26, 2026) (attached as Exhibit 1). The Executive Order declares that DEI activities are "unethical and often illegal" and directs federal agencies to include new terms in all their contracts, subcontracts, and "contract-like instruments" barring contractors from "engag[ing] in any racially discriminatory DEI activities," defined as "disparate treatment based on race or ethnicity in . . . recruitment, employment . . . , contracting . . . , program participation, or allocation or deployment of an entity's resources." *Id.* §§ 1–3.

The plaintiff States oppose racial discrimination and are committed to complying with all existing state and federal laws against discrimination. They also have a strong interest in preventing, detecting, and remedying racial discrimination both within their own operations and more broadly. But the defendant federal agencies' implementation of the Executive Order impedes the States' efforts because the prescribed contract terms are unclear and do not provide sufficient explanation of what they prohibit. The definition of "racially discriminatory DEI activities" calls to mind existing prohibitions of discrimination based on race or ethnicity, but neither the Executive Order nor the agency actions implementing the prescribed contract terms have provided any meaningful explanation of whether or how the contract terms impose

requirements different from existing law. Consequently, the plaintiff States cannot confidently discern the full scope and meaning of the contract terms or whether lawful efforts to combat racial discrimination might run afoul of the contract terms.

The contract terms are especially confusing considering the history leading up to Executive Order No. 14398. For 60 years, Executive Order No. 11246,[1] issued by President Lyndon B. Johnson in 1965, had required contract terms prohibiting racial discrimination by federal contractors. Immediately after taking office in January 2025, President Trump issued Executive Order No. 14173,[2] which rescinded Executive Order No. 11246 and prescribed new contract terms prohibiting contractors from operating DEI programs that violate federal antidiscrimination laws. The latest Executive Order, Executive Order No. 14398, provides no explanation of how its requirements differ from those of either the longstanding Executive Order No. 11246 or the more recent Executive Order No. 14173.

The implementation of Executive Order No. 14398 threatens grave harm to the plaintiff States: If they do not agree to the new terms, they risk losing existing contracts or missing out on contracting opportunities. And the federal government has threatened severe penalties for failure to comply with the new terms, including cancellation of contracts, debarment from future federal contracts, and lawsuits under the False Claims Act, 31 U.S.C. §§ 3729–3733.

As directed by Executive Order No. 14398, the Federal Acquisition Regulatory Council (FAR Council) and other federal agencies have taken rapid steps to adopt the new contract terms and add them to new and existing federal contracts. But the agencies have not clarified the meaning of the contract terms, and in their rush to impose the contract terms they have run

---

[1] Exec. Order No. 11246, Equal Employment Opportunity, 3 C.F.R. 339 (1964–1965).
[2] Exec. Order No. 14173, Ending Illegal Discrimination and Restoring Merit-Based Opportunity, 90 Fed. Reg. 8633 (Jan. 21, 2025).

roughshod over federal law. The agencies' implementing actions exceed the authority granted to the FAR Council under 41 U.S.C. § 1303 and violate several procedural requirements and substantive limits that govern federal procurement policy, most notably a statutory requirement under 41 U.S.C. § 1707 for notice and comment before adoption of federal procurement policies with significant impact. Due to these legal violations, the defendant agencies' implementing actions are unlawful under the Administrative Procedure Act (APA), 5 U.S.C. §§ 551–559, 701–706, and should be set aside.

The Court should grant summary judgment for the plaintiff States based on the claims in Count I of the plaintiffs' Complaint, ECF No. 1, and should issue relief vacating the defendant agencies' actions, declaring them unlawful, and enjoining their implementation.

## BACKGROUND

### I.    Statutory and regulatory background

"[T]he Government enjoys the unrestricted power . . . to determine those with whom it will deal, and to fix the terms and conditions upon which it will make needed purchases." *Perkins v. Lukens Steel Co.*, 310 U.S. 113, 127 (1940). The authority to determine the policies that govern those purchases resides with Congress. *See id.* at 130; *see also Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 643 (1952) (Jackson, J., concurring) ("Congress alone controls the raising of revenues and their appropriation and may determine in what manner and by what means they shall be spent for military and naval procurement."). Congress has used that authority to enact a wide array of statutes governing federal procurement. *See generally, e.g.*, David H. Carpenter et al., Cong. Rsch. Serv., R42826, The Federal Acquisition Regulation (FAR): Answers to Frequently Asked Questions 10–11 (2025) (listing numerous federal statutes that relate to federal procurement).

The federal government maintains a "single Government-wide procurement regulation," 41 U.S.C. § 1303(a)(1), known as the Federal Acquisition Regulation (FAR) and codified in Title 48, chapter 1, of the Code of Federal Regulations. 48 C.F.R. ch. 1. A body called the Federal Acquisition Regulatory Council (FAR Council), established under 41 U.S.C. § 1302(a), coordinates the maintenance of the FAR. *See id.* § 1303(d) (specifying that the FAR Council "shall manage, coordinate, control, and monitor the maintenance of, issuance of, and changes in, the Federal Acquisition Regulation"). The FAR Council consists of four officials from the Office of Federal Procurement Policy, the Department of Defense, the National Aeronautics and Space Administration, and the General Services Administration. *See id.* § 1302(b).

Amendments to the FAR, as well as other changes to federal procurement policies, are subject to procedural requirements set forth in 41 U.S.C. § 1707. Under § 1707, any "procurement policy, regulation, procedure, or form" that "relates to the expenditure of appropriated funds" and "has a significant effect beyond the internal operating procedures of the agency issuing the policy, regulation, procedure, or form; or . . . has a significant cost or administrative impact on contractors or offerors" generally must be published for public comment in the Federal Register at least 60 days before it takes effect, and at least 30 days must be permitted for comment. *Id.* § 1707(a)(1), (b).

The statute permits waiver of some of these requirements, but only if "urgent and compelling circumstances make compliance . . . impracticable," and only if the responsible agency publishes notice in the Federal Register and provides for a 30-day comment period. *See id.* § 1707(d)–(e).

Subpart 1.4 of the FAR allows for agencies to adopt "deviations" from the FAR "when necessary to meet the specific needs and requirements of each agency." 48 C.F.R. § 1.402.

Deviations may, for example, provide for use of contract clauses that are "inconsistent with the FAR" or language that is "not authorized by the FAR." *Id.* § 1.401(a), (c). A deviation may take the form of a "class deviation" that affects multiple contracts. *Id.* § 1.404. But deviations do not provide a way to bypass the notice and comment requirements that 41 U.S.C. § 1707 imposes for significant changes to procurement policies—the FAR provisions allowing for deviations are regulations, and as such, they do not and cannot override the statutory requirements of § 1707. Deviations are themselves subject to the requirements of § 1707 and therefore require notice and comment when they implement significant policy changes.

## II.      Statement of undisputed material facts

### A.      Executive Order No. 14398

On March 26, 2026, President Trump issued Executive Order No. 14398, Addressing DEI Discrimination by Federal Contractors, 91 Fed. Reg. 16147 (Mar. 26, 2026).

Section 1 of the order states that it was intended to curtail "'diversity, equity, and inclusion' (DEI) activities in which employees, applicants, or contracting parties are treated differently, separated, or singled out based on their race or ethnicity, rather than treated equally and objectively based on their merit and without regard to their immutable characteristics." *Id.* § 1. Such activities, the order states, "are not only unethical and often illegal, but also cause inefficiencies, waste, and abuse within entities that engage in such practices. . . . These costs are inevitably passed on to the Federal Government when it contracts with companies who engage in racially discriminatory DEI activities, or who use subcontractors who do so." *Id.* Accordingly, the order states that "[i]t is therefore the policy of the United States to promote economy and efficiency in Federal contracting by preventing racial discrimination." *Id*.

Section 2 of the order defines two terms:

**Sec. 2**. *Definitions*. (a) For the purposes of this order, "racially discriminatory DEI activities" means disparate treatment based on race or ethnicity in the recruitment, employment (*e.g.,* hiring, promotions), contracting (*e.g.,* vendor agreements), program participation, or allocation or deployment of an entity's resources.

(b) "Program participation" means membership or participation in, or access or admission to: training, mentoring, or leadership development programs; educational opportunities; clubs; associations; or similar opportunities that are sponsored or established by the contractor or subcontractor.

*Id.* § 2.

Section 3 of the order specifies new contract terms for all federal agencies to add to their contracts, requiring contractors to refrain from "racially discriminatory DEI activities" as defined in the order and imposing certain ancillary requirements:

**Sec. 3**. *Requirements for Federal Contractors*. Within 30 days of the date of this order, executive departments and agencies, including independent establishments subject to FPASA, 40 U.S.C. 102(4)(A) (agencies), shall, to the extent permitted by law, ensure that contracts and contract-like instruments, including contractors' subcontracts and subcontractors' lower-tier subcontracts, include the following clause:

"In connection with the performance of work under this contract, [the contractor/appropriate party (contractor)] agrees as follows:

1. The contractor will not engage in any racially discriminatory DEI activities, as defined in section 2 of the Executive Order of March 26, 2026 (Addressing DEI Discrimination by Federal Contractors);

2. The contractor will furnish all information and reports, including providing access to books, records, and accounts, as required by the contracting agency pursuant to the Executive Order of March 26, 2026 (Addressing DEI Discrimination by Federal Contractors), for purposes of ascertaining compliance with this clause;

3. In the event of the contractor's or a subcontractor's noncompliance with this clause, this contract may be canceled, terminated, or suspended in whole or in part, and the contractor or subcontractor may be declared ineligible for further Government contracts;

4. The contractor will report any subcontractor's known or reasonably knowable conduct that may violate this clause to the contracting department or agency and take any appropriate remedial actions directed by the contracting department or agency;

6

5. The contractor will inform the contracting department or agency if a subcontractor sues the contractor and the suit puts at issue, in any way, the validity of this clause; and

6. The contractor recognizes that compliance with the requirements of this clause are material to the Government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code (False Claims Act).".

*Id.* § 3 (alteration in original).

Section 4 of the order threatens harsh penalties for violations of the prescribed contract terms. In accordance with guidance to be issued by the Office of Management and Budget, agencies "shall . . . cancel, terminate, [or] suspend . . . any contract or contract-like instrument" if a contractor or subcontractor fails to comply with the prescribed terms. *Id.* § 4(a). The agency must also "take appropriate action to suspend and debar" contractors or subcontractors that violate the terms—that is, to exclude them from all federal contracting. *Id.* § 4(a)(ii).

Section 5 addresses implementation of the Executive Order. It directs the FAR Council to make amendments to the FAR to implement the terms of the order. Exec. Order No. 14398, § 5(a). But it also directs the FAR Council to move forward with implementation of the new contract terms before those amendments are completed, by "issu[ing] deviation and interim guidance" to agencies "under subpart 1.4 of the Federal Acquisition Regulation," within 60 days of the order. Exec. Order No. 14398, § 5(b).

The Executive Order directs that implementation actions by the FAR Council and federal agencies must comply with, and are subject to, applicable law. *See id.* § 3 (directing federal agencies to use the prescribed contract terms "to the extent permitted by law"); *id.* § 5 (directing the FAR Council to take action "to the extent permitted by law" and "consistent with applicable law"); *id.* § 7(b) ("This order shall be implemented consistent with applicable law . . . .").

7

**B.**    **Actions taken by the defendants to implement Executive Order No. 14398**

1.    April 2026 FAR Council memorandum

On or about April 20, 2026, the FAR Council issued a memorandum (dated April 17, 2026) to agency procurement officers with instructions for implementing Executive Order No. 14398. Memorandum from Fed. Acquisition Regul. Council, Agency Implementation of Executive Order 14398, Addressing DEI Discrimination by Federal Contractors (Apr. 17, 2026), https://perma.cc/KF7L-HJUZ (referenced in this brief as the "April 2026 FAR Council memorandum" or simply "the FAR Council Memorandum" and attached as Exhibit 2).[3]

The FAR Council instructed agencies to implement the requirements of Executive Order No. 14398 by folding them into an ongoing procurement reform effort that the Trump Administration had launched in 2025, which the Administration has touted as a "Revolutionary FAR Overhaul." *See* Exec. Order No. 14275, Restoring Common Sense to Federal Procurement, 90 Fed. Reg. 16447 (Apr. 15, 2025); White House, White House Announces Revolutionary Federal Procurement Overhaul (Apr. 16, 2025), https://perma.cc/MB6A-Z6B8.

Before Executive Order No. 14398, many federal agencies had previously issued "class deviations" under FAR subpart 1.4 to implement parts of the "Revolutionary FAR Overhaul." *See supra* pp. 4–5 (background discussion of "deviations" and "class deviations"). The April 2026 FAR Council memorandum directed agencies to immediately revise earlier-issued class deviations to incorporate the contract terms and other requirements of Executive Order No. 14398. *See* Ex. 2 at 2 (instructing agencies to "[u]pdate their Revolutionary Federal Acquisition Regulation Overhaul class deviations"). The FAR Council provided model text for agencies to use in their revised deviations. *See* Ex. 2 at 5–10. The FAR Council stated that "[a]gencies that

---

[3] Documents posted on federal agency websites are subject to judicial notice. *See, e.g.*, *United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017).

adopt the model deviation text . . . are not required to coordinate with the Council," but absent contrary statutory requirements, "agencies must request approval from the Council before adopting FAR text that differs from the Council's model deviation text." Ex. 2 at 2.

The FAR Council has also incorporated the model deviation text into a set of "Revolutionary FAR Overhaul" materials published on its website. Fed. Acquisition Regul. Council, Revolutionary FAR Overhaul—FAR Parts and Agency Deviations, https://perma.cc /KKE7-38K7. Other federal agencies have incorporated those materials by reference into their own procurement policies. *See infra* p. 12.

The April 2026 FAR Council memorandum directed agencies to start using the contract terms prescribed by Executive Order No. 14398 in new contracts by April 24. Ex. 2 at 2. It also directed that "contracting officers must make every effort to bilaterally modify existing contracts by July 24, 2026." Ex. 2 at 2. A bilateral modification under the FAR is a modification adopted with the agreement of the contractor. *See* 48 C.F.R. § 43.103(a). The FAR Council specified that "[i]f a contractor refuses to agree to a bilateral modification, the contracting officer should consider whether, absent the modification, the contract no longer meets the agency's needs and should therefore be terminated for convenience." Ex. 2 at 2.

The FAR Council admitted that it had not yet conducted notice and comment or completed amendments to the FAR, stating, "The FAR Council intends to conduct rulemaking pursuant to the notice and comment process set forth at 41 U.S.C. 1707. Agencies are encouraged to make their class deviations effective until implemented in the FAR." Ex. 2 at 3.

On May 6, 2026, the four agencies whose officials comprise the FAR Council published a notice of information collection in the Federal Register, inviting comment on the reporting and recordkeeping requirements of the new contract terms and citing the Paperwork Reduction Act,

9

44 U.S.C. §§ 3501–3521. Information Collection; Addressing DEI Discrimination by Federal

Contractors, 91 Fed. Reg. 24544 (May 6, 2026). The notice called for comments by July 6, 2026.

*Id.* at 24545. Even though the FAR Council and other agencies had not complied with the

requirements of the Paperwork Reduction Act, the April 2026 FAR Council memorandum

directed federal agencies to include the new information collection requirements in new contracts

by April 24, 2026, and in existing contracts by July 24, 2026. Ex. 2 at 2. The FAR Council

memorandum further instructed federal agencies to "expect that contractors will alert the

appropriate contracting officer of potential violations of the clause or lawsuits relating to the

clause"—thus, contractors are expected to comply with this element of the information collection

before completion of the process required under the Paperwork Reduction Act. Ex. 2 at 3.

The FAR Council has estimated that as many as 640,000 contracts and subcontracts,

including more than 160,000 contracts with more than 34,000 unique vendors, would be subject

to Executive Order No. 14398. *See* Fed. Acquisition Regul. Council, Federal Acquisition

Regulation (FAR): Addressing DEI Discrimination by Federal Contractors (E.O. 14398), OMB

Control No. 9000-XXXX, Justification—Part A Supporting Statement at 3 (2026).

2.      Agency implementation

The other defendant agencies besides the FAR Council have taken action to implement

Executive Order No. 14398 as directed by the April 2026 FAR Council memorandum.

Based on the FAR Council's direction, the defendant agencies have issued class

deviations to implement Executive Order No. 14398 and have instructed their contracting

officers to incorporate the new contract terms into new and existing contracts. For example:

- Department of Defense—Memorandum from John M. Tenaglia, Principal Dir., Def. Pricing, Contracting, & Acquisition Pol'y, U.S. Dep't of Def. (Apr. 24, 2026), https:// www.acq.osd.mil/dpap/dars/classdev/DFARS_RFO/Part-222/Class_Deviation_2026 -O0040_Revision_1_DFARS_222.pdf.

10

- Department of Education—Memorandum from Christopher Rosier, Deputy Assistant Sec'y for Acquisition Mgmt., Deputy Chief Acquisition Officer/Senior Procurement Exec., U.S. Dep't of Educ. (Apr. 22, 2026), https://perma.cc/CK86-NH8U.

- Department of Energy—U.S. Dep't of Energy, Class Deviation Findings and Determination: Federal Acquisition Regulation (FAR) Parts 9, 12, 22, And 52 Regarding Implementation of Executive Order 14398, Addressing DEI Discrimination by Federal Contractors (Apr. 28, 2026), https://perma.cc/WYW2-SF5Z.

- Environmental Protection Agency—Memorandum from Stefan Martiyan, EPA Senior Procurement Exec., Off. of the Chief Procurement Officer, U.S. EPA (Apr. 23, 2026), https://perma.cc/47XD-XE4X.

- Department of Homeland Security—Memorandum from Sarah Green, Deputy Chief Procurement Officer, U.S. Dep't of Homeland Sec. (Apr. 24, 2026), https://perma.cc /V78V-W8KR.

- Department of the Interior—U.S. Dep't of the Interior, Application of Labor Laws to Government Acquisitions (May 4, 2026), https://perma.cc/A3PY-CGAC.

- Department of Health and Human Services—Memorandum from Jennifer D. Johnson, Deputy Assistant Sec'y for Acquisitions and Senior Procurement Exec., U.S. Dep't of Health & Hum. Servs. (Apr. 24, 2026), https://perma.cc/9GUY-9U4V.

- Department of Justice—Memorandum from William N. Taylor II, Deputy Assistant Att'y Gen. for Mgmt. & Compliance, Senior Procurement Exec., U.S. Dep't of Just. (Apr. 23, 2026), https://perma.cc/8Y7D-SZBV.

- Department of Commerce—Memorandum from Olivia J. Bradley, Senior Procurement Exec. & Dir. for Acquisition Mgmt., U.S. Dep't of Commerce (Apr. 22, 2026), https:// perma.cc/ES5U-8X56.

- Department of Transportation—Memorandum from Chrishaun Jones, Senior Procurement Exec., U.S. Dep't of Transp. (Apr. 24, 2026), https://perma.cc/D3WS -4ZDN.

- Department of Agriculture—Memorandum from Hilary Erickson, Senior Procurement Exec., Off. of Contracting & Procurement, U.S. Dep't of Agric. (Apr. 23, 2026), https:// perma.cc/L4UF-GAXE.

- Department of Veterans Affairs—Memorandum from Exec. Dir., Off. of Acquisition & Logistics (003A), & Senior Procurement Exec., U.S. Dep't of Veterans Affairs (Apr. 23, 2026), https://perma.cc/X9FV-V2QT.

- Department of Housing and Urban Development—U.S. Dep't of Hous. & Urban Dev., Supplement to the Federal Acquisition Regulation (FAR) for FAR Parts 9, 12, and 22 in

11

Support of Executive Order (E.O.) 14398, Addressing DEI Discrimination by Federal Contractors (Apr. 23, 2026), https://perma.cc/XL64-FLNZ.

- Department of State—Memorandum from Sharon D. James, Acting Senior Procurement Exec., U.S. Department of State (Apr. 27, 2026), https://perma.cc/B54N-PJWW.

- Department of Labor—Memorandum from Carl V. Campbell, Senior Procurement Exec., U.S. Dep't of Labor (Apr. 27, 2026), https://perma.cc/83KD-7HD7.

- General Services Administration—Memorandum from Jeffrey A. Koses, Senior Procurement Exec., Off. of Acquisition Pol'y, Gen. Servs. Admin. (Apr. 20, 2026), https://perma.cc/J3HP-W9YD.

- Nuclear Regulatory Commission—Memorandum from Eleni Jernell, Dir., Acquisition Mgmt. Div., Off. of Admin., Nuclear Regul. Comm'n (Apr. 30, 2026), https://perma.cc/VL2U-YYJS.

Some of the defendant agencies have not issued new class deviations to implement Executive Order No. 14398 but had earlier issued class deviations that incorporate by reference the model deviation text issued by the FAR Council for the "Revolutionary FAR Overhaul" and posted on the FAR Council website. For example:

- National Aeronautics and Space Administration—NASA, Class Deviation from Federal Acquisition Regulation (FAR) Part 22 and NASA FAR Supplement (NFS) Part 1822 to Implement the Revolutionary FAR Overhaul (NASA Case 2025-N045), PCD 25-41, at 2 (Dec. 19, 2025), https://perma.cc/J68H-A7ZR.

- Consumer Product Safety Commission—Memorandum from Brien Lorenze, Exec. Dir., U.S. Consumer Prod. Safety Comm'n, at 5 (Nov. 24, 2025), https://perma.cc/SLD7-PNEC.

- National Science Foundation—Memorandum from Patrick K. Breen, Senior Procurement Exec., Nat'l Sci. Found., at 5 (Dec. 2, 2025), https://perma.cc/YAB8-HPNZ.

The FAR Council has posted the model deviation text from the April 2026 FAR Council memorandum on its Revolutionary FAR Overhaul website. *See supra* p. 9; *see also, e.g.*, Fed. Acquisition Regul. Council, FAR Overhaul—FAR Part Deviation Guidance, https://perma.cc/TT5W-HPA6. Accordingly, the agency deviations that incorporate the FAR Council website text now call for use of the contract terms prescribed by Executive Order No. 14398.

12

## C.      Lack of clarity in the contract terms

The rushed and unconsidered rollout of the contract terms prescribed by the Executive Order has caused confusion, uncertainty, and chaos in federal contracting. The definitions of "racially discriminatory DEI activities" and "program participation" provided in the Executive Order and adopted by the agencies are unclear and fail to provide sufficient guidance either to contractors or federal contracting officers regarding what particular activities are prohibited. Neither the Executive Order nor the agencies' implementing actions have provided meaningful assistance in the way of explanation, analysis, comparisons to existing laws or past federal policies, or examples or illustrations.

The contract terms are especially confusing considering the history leading up to Executive Order No. 14398. For 60 years before President Trump's second term, Executive Order No. 11246,[4] issued by President Lyndon B. Johnson in 1965, had required contract terms prohibiting racial discrimination by federal contractors. Executive Order No. 11246 was amended several times by later Presidents but was well known to contractors as part of the fabric of government contracting. The Office of Federal Contract Compliance Programs (OFCCP) within the Department of Labor maintained detailed regulations clarifying contractors' obligations under the Executive Order No. 11246 contract terms. *See, e.g.*, 41 C.F.R. pt. 60-1.

Immediately after he took office in January 2025, President Trump issued Executive Order No. 14173, Ending Illegal Discrimination and Restoring Merit-Based Opportunity, 90 Fed. Reg. 8633 (Jan. 21, 2025). Executive Order No. 14173 rescinded Executive Order No. 11246 in its entirety and directed federal agencies to dismantle programs that had been established to

---

[4] Exec. Order No. 11246, Equal Employment Opportunity, 3 C.F.R. 339 (1964–1965).

13

implement Executive Order No. 11246.[5] In addition, Executive Order No. 14173 directed federal agencies to require every federal contractor to certify that it "does not operate any programs promoting DEI that violate any applicable Federal anti-discrimination laws." *Id.* § 3(b)(iv)(B).

Executive Order No. 14173 generated significant confusion in federal contracting, in part because it appeared to target DEI activities and yet provided no definition of DEI. *See id.* Nevertheless, through the reference to "applicable Federal anti-discrimination laws," *id.*, Executive Order No. 14173 expressly trained its focus on activities that violate existing federal law. *See Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, 167 F.4th 86, 103 (4th Cir. 2026) (interpreting Executive Order No. 14173 as not requiring more than "compliance with federal antidiscrimination laws").

The latest Executive Order, Executive Order No. 14398, provides no explanation of how its requirements differ from those of either the longstanding Executive Order No. 11246 or the more recent Executive Order No. 14173. And in contrast to Executive Order No. 14173, Executive Order No. 14398 contains no language referencing existing antidiscrimination laws. *Compare* Exec. Order No. 14173, § 3(b), *with* Exec. Order No. 14398, § 3. Nor have the FAR Council or other federal agencies provided meaningful explication of how Executive Order No. 14398 compares with prior antidiscrimination requirements or other extant federal laws that prohibit racial discrimination.

---

[5] OFCCP has since proposed to rescind its regulations implementing Executive Order No. 11246, but it has not yet completed final action on that proposal, and the regulations therefore formally remain in effect. *See* Recission of Executive Order 11246 Implementing Regulations, 90 Fed. Reg. 28472 (proposed July 1, 2025). The FAR provisions implementing Executive Order No. 11246 also have not yet been amended and remain in effect. *See, e.g.*, 48 C.F.R. §§ 22.810, 52.222-26 (provisions implementing portions of Executive Order No. 11246).

14

As one example, the contract terms prescribed by Executive Order No. 11246 barred racial discrimination in employment actions including "recruitment or recruitment advertising." Exec. Order No. 11246, § 202; *see* 41 C.F.R. § 60-1.4(a). But regulations issued by OFCCP made clear that this did not prevent employers from engaging in outreach efforts intended to broaden applicant pools or break historical patterns of exclusion. Indeed, the OFCCP regulations encouraged such efforts. *See, e.g.,* 41 C.F.R. § 60-3.2(C) ("[T]he use of recruiting procedures designed to attract members of a particular race, sex, or ethnic group, which were previously denied employment opportunities or which are currently underutilized, may be necessary to bring an employer into compliance with Federal law, and is frequently an essential element of any effective affirmative action program . . . ."). So, for example, a contractor could seek to promote inclusion by sharing a job posting with colleagues at historically Black colleges and universities, or a networking group for Asian American professionals, so long as the contractor did not express any racial preference and otherwise ensured equal opportunity for all applicants. The contract terms prescribed by Executive Order No. 14398, however, prohibit "disparate treatment" in "recruitment" without meaningful elaboration, and with no context or reference points apart from a diatribe against "diversity, equity, and inclusion." Thus, contractors are left to wonder whether and how the terms might apply to steps to promote inclusion when hiring for positions related to a federal contract. It is also unclear whether the federal government seeks to depart from the OFCCP regulations, which remain in effect.

As another example, the Executive Order No. 14398 contract terms refer vaguely to disparate treatment based on race in the "allocation or deployment of an entity's resources," again with no further explanation or context apart from the invective against "diversity, equity, and inclusion." A contractor seeking to address incidents of racism or antisemitism in its

15

workplace—say, by distributing a pamphlet to employees about historical discrimination and offensive stereotypes—now has reason to wonder whether these efforts are permissible if directed at employees involved in federal contract work.

### D.    Contracting activities of the plaintiff States

Each of the plaintiff States, through its agencies and instrumentalities, regularly engages in the business of federal contracting. The agencies and instrumentalities of each plaintiff State regularly work on federal procurement contracts either as contractors or subcontractors and continually seek new federal contracts and subcontracts.[6] Many of the plaintiff States also manage subcontractors on federal contracts.[7]

The services provided by the plaintiff States under federal contracts and subcontracts meet a wide range of federal government needs, from scientific research and development to highway safety analysis to medical treatment of military veterans to maintenance of vital global satellite networks.[8] Each year, the plaintiff States' federal contracting activities amount to hundreds of contracts worth billions of dollars.[9]

---

[6] *See* Ex. 3 (Kitchell Decl.) ¶¶ 7–8, 10; Ex. 4 (Maldonado Decl.) ¶ 5; Ex. 5 (Cimino Decl.) ¶¶ 6, 9; Ex. 6 (McLaughlin Decl.) ¶¶ 5–8; Ex. 7 (Walton Decl.) ¶¶ 6–9; Ex. 8 (Ellinger Decl.) ¶¶ 4–11; Ex. 9 (Kirk Decl.) ¶¶ 5–8; Ex. 10 (Frankenfield Decl.) ¶¶ 5–8; Ex. 11 (O'Shea Decl.) ¶¶ 4–7; Ex. 12 (Barton Decl.) ¶¶ 7–10; Ex. 13 (Boring Decl.) ¶¶ 5–7; Ex. 14 (Billings Decl.) ¶¶ 6–9; Ex. 15 (Behrens Decl.) ¶¶ 6–7; Ex. 16 (Nagel Decl.) ¶¶ 5–8; Ex. 17 (Jenkins Decl.) ¶¶ 6–9; Ex. 18 (Johnson Decl.) ¶¶ 5, 8–9; Ex. 19 (Brown Decl.) ¶¶ 5–6; Ex. 20 (Kozma Decl.) ¶¶ 5–9; Ex. 21 (Dellit Decl.) ¶¶ 5–7; Ex. 22 (Switzer Decl.) ¶¶ 5–6.
[7] *See* Ex. 3 (Kitchell Decl.) ¶ 25; Ex. 4 (Maldonado Decl.) ¶ 27; Ex. 6 (McLaughlin Decl.) ¶¶ 13–14; Ex. 7 (Walton Decl.) ¶ 21; Ex. 8 (Ellinger Decl.) ¶¶ 4, 21; Ex. 10 (Frankenfield Decl.) ¶ 20; Ex. 12 (Barton Decl.) ¶¶ 19–20; Ex. 14 (Billings Decl.) ¶ 20; Ex. 16 (Nagel Decl.) ¶¶ 20–21; Ex. 21 (Dellit Decl.) ¶ 18.
[8] *See, e.g.*, Ex. 3 (Kitchell Decl.) ¶ 9; Ex. 4 (Maldonado Decl.) ¶ 6; Ex. 8 (Ellinger Decl.) ¶¶ 9–10; Ex. 10 (Frankenfield Decl.) ¶ 6; Ex. 16 (Nagel Decl.) ¶ 6.
[9] *See, e.g.*, Ex. 3 (Kitchell Decl.) ¶ 10; Ex. 4 (Maldonado Decl.) ¶ 5; Ex. 5 (Cimino Decl.) ¶ 8; Ex. 6 (McLaughlin Decl.) ¶ 7; Ex. 7 (Walton Decl.) ¶ 9; Ex. 8 (Ellinger Decl.) ¶ 11; Ex. 9 (Kirk Decl.) ¶ 8; Ex. 10 (Frankenfield Decl.) ¶ 8; Ex. 11 (O'Shea Decl.) ¶ 6; Ex. 12 (Barton Decl.) ¶ 7; Ex. 13 (Boring Decl.) ¶ 6; Ex. 14 (Billings Decl.) ¶ 10; Ex. 16 (Nagel Decl.) ¶ 8; Ex.

16

Collectively, the plaintiff States' agencies and instrumentalities currently have or are actively pursuing contracts or subcontracts for work for all of the federal agencies that are named as defendants, or subcomponents of those agencies, other than the FAR Council.[10]

### III.    Proceedings in this case

The plaintiff States[11] filed this case on June 10, 2026, against the United States, the FAR Council and its members, 24 federal agencies with whom the States have or are seeking procurement contracts, and the heads of those 24 federal agencies. The plaintiff States challenge actions taken by the defendant agencies to implement Executive Order No. 14398: the April 2026 memorandum and guidance issued by the FAR Council, the class deviations adopted by the other defendant agencies to implement the Executive Order, and those agencies' adoption of the contract terms prescribed by the Executive Order and the FAR Council memorandum.

Count I of the complaint asserts that the challenged actions violate federal law in that they violated the procedural requirements of 41 U.S.C. § 1707; they exceeded the authority granted to the FAR Council under 41 U.S.C. § 1303; they conflict with applicable FAR provisions; they conflict with the False Claims Act, 31 U.S.C. §§ 3729–3733; and they conflict with the requirements of the Paperwork Reduction Act, 44 U.S.C. §§ 3501–3521. It seeks relief from these violations under § 706(2) of the Administrative Procedure Act (APA), 5 U.S.C.

---

17 (Jenkins Decl.) ¶ 9; Ex. 18 (Johnson Decl.) ¶¶ 7–8; Ex. 19 (Brown Decl.) ¶ 6; Ex. 20 (Kozma Decl.) ¶ 6; Ex. 21 (Dellit Decl.) ¶ 6; Ex. 22 (Switzer Decl.) ¶ 7.

[10] *See, e.g.*, Ex. 3 (Kitchell Decl.) ¶ 10; Ex. 4 (Maldonado Decl.) ¶ 11; Ex. 5 (Cimino Decl.) ¶ 10; Ex. 6 (McLaughlin Decl.) ¶ 6; Ex. 7 (Walton Decl.) ¶¶ 7–8, 10; Ex. 8 (Ellinger Decl.) ¶ 12; Ex. 9 (Kirk Decl.) ¶ 6; Ex. 10 (Frankenfield Decl.) ¶¶ 6, 9; Ex. 11 (O'Shea Decl.) ¶ 7; Ex. 12 (Barton Decl.) ¶ 8; Ex. 13 (Boring Decl.) ¶ 6; Ex. 14 (Billings Decl.) ¶ 6; Ex. 16 (Nagel Decl.) ¶¶ 6–7, 9; Ex. 17 (Jenkins Decl.) ¶¶ 7–8, 10; Ex. 18 (Johnson Decl.) ¶¶ 7, 9–10; Ex. 19 (Brown Decl.) ¶ 6; Ex. 20 (Kozma Decl.) ¶¶ 7, 10; Ex. 21 (Dellit Decl.) ¶ 6; Ex. 22 (Switzer Decl.) ¶¶ 6–7.

[11] The plaintiff States are Maryland, California, Illinois, Colorado, Connecticut, the District of Columbia, Hawaiʻi, Maine, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New Mexico, Oregon, Rhode Island, Vermont, Virginia, Washington, and Wisconsin.

§§ 551–559, 701–706, and several alternative sources of authority. Count II of the complaint asserts that the challenged actions are unlawful because they were arbitrary and capricious under § 706(2)(A) of the APA, 5 U.S.C. § 706(2)(A).

This motion seeks judgment in favor of the plaintiff States based on the claims in Count I. Those claims are sufficient to support relief against all the challenged actions, and so a ruling granting summary judgment for the plaintiff States on Count I will resolve the entire case and make it unnecessary for the Court to reach the further claims presented in Count II.

## ARGUMENT

**I.    Standards applicable to a motion for summary judgment in an action for judicial review under the Administrative Procedure Act**

The Administrative Procedure Act (APA), 5 U.S.C. §§ 551–559, 701–706, authorizes judicial review of the actions of federal agencies and officers. A court must "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right"; or "without observance of procedure required by law." *Id.* § 706(2).

A claim for judicial review under the APA is typically resolved on summary judgment based on the record of the materials that were before the agency at the time of the challenged action. *Deese v. Esper*, 483 F. Supp. 3d 290, 303–04 (D. Md. 2020). But a claim that an agency action violated statutory requirements can be resolved without production of the administrative record. *See, e.g.*, *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 271 F.3d 262, 266–67 (D.C. Cir. 2001); *Outdoor Amusement Bus. Ass'n v. Dep't of Homeland Sec.*, Civil Action No. ELH-16-1015, 2017 WL 3189446, at *20 (D. Md. July 27, 2017); *SourceAmerica v. U.S. Dep't of Educ.*, Case No. 1:17-cv-893, 2018 WL 10436584, at *4 & n.6 (E.D. Va. July 5, 2018). Such a

claim therefore can properly be resolved on a motion for summary judgment without the administrative record.

The claims in Count I of the complaint can all be resolved without review of the administrative records for the challenged actions, as they turn on application and interpretation of statutes and regulations rather than on flaws in the reasoning or explanation supporting the agencies' actions (which is the focus of the claims in Count II of the complaint). The present motion relies exclusively on the claims in Count I.

The plaintiff States challenge the April 2026 FAR Council memorandum on several grounds: (1) that the FAR Council memorandum exceeded the statutory authority granted to the FAR Council; (2) that the memorandum violated the notice and comment requirements of 41 U.S.C. § 1707, and that the use of "class deviations" is not a valid way to bypass those requirements; (3) that the False Claims Act provision prescribed by the Executive Order conflicts with the False Claims Act, 31 U.S.C. §§ 3729–3733; and (4) that the FAR Council unlawfully directed agencies to implement contract terms related to recordkeeping and reporting without first completing the steps required under the Paperwork Reduction Act, 44 U.S.C. §§ 3501–3521.

The plaintiff States also challenge the adoption of the Executive Order No. 14398 contract terms by other agencies besides the FAR Council, and the class deviations through which those agencies adopted the contract terms. Those other agencies appear to have taken those actions based on the April 2026 FAR Council memorandum, and accordingly their actions can and should be vacated as part of the relief for the FAR Council's violations of law. *See infra* p. 27. But the other agencies' actions are also subject to judicial review independent of the FAR Council memorandum, and they should be held unlawful because they suffer many of the same legal flaws as the FAR Council memorandum: the agencies' actions violated the notice and

19

comment requirements of 41 U.S.C. § 1707; the adopted contract terms conflict with the False

Claims Act; and the agencies imposed reporting and recordkeeping requirements without first

completing the procedures required under the Paperwork Reduction Act.

II.   **The April 2026 FAR Council memorandum exceeds the FAR Council's authority and violates procedural requirements and substantive limits established by federal statutes and regulations.**

A.   **The FAR Council memorandum is reviewable final agency action under the APA.**

The APA authorizes review of "final" agency action. 5 U.S.C. § 704. To qualify as final,

an agency action must meet two requirements: "First, the action must mark the consummation of

the agency's decisionmaking process—it must not be of a merely tentative or interlocutory

nature. And second, the action must be one by which rights or obligations have been determined,

or from which legal consequences will flow." *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578

U.S. 590, 597 (2016) (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)). Courts take a

"'pragmatic' approach" when assessing finality. *Id.* at 599.

The FAR Council memorandum qualifies as final under these standards. The

memorandum bears the signatures of all four members of the FAR Council and represents the

final word of the FAR Council on the matters discussed in the memorandum. And it gives rise to

legal consequences in that it purports to define and impose obligations on federal agencies in a

way that will ultimately affect federal contractors such as the plaintiff States. The memorandum

employs mandatory language, specifying what agencies and contracting officers "must" do. Ex. 2

at 2–4 ("agencies must . . ."; "contracting officers must . . ." ). It issues instructions phrased as

commands, for example, "Insert the clause at FAR 52.222-90 in new solicitations and resulting

contracts . . . ." and "Insert the clause at FAR 52.222-90 in all existing contracts . . . ." Ex. 2 at 2.

The memorandum specifies implementation details that had not been stated in the Executive

20

Order—for example, a directive to agencies to adopt class deviations and an April 27, 2026, deadline for doing so; an April 24, 2026, deadline for agencies to begin using the new contract terms in new contracts and solicitations; a July 24, 2026, deadline for agencies to modify existing contracts to include the new terms; an exception permitting contracting officers to exempt contracts that are to expire during 2026; and conditions specifying that the contract terms are required only for contracts above the "micro-purchase threshold . . . for which the place of delivery or performance is in the United States."[12] Ex. 2 at 2.

The use of mandatory language and the introduction of new rules beyond those specified in the Executive Order set the April 2026 FAR Council memorandum apart from a September 2021 FAR Council memorandum that two courts held was not final agency action, *see Mayes v. Biden*, 67 F.4th 921, 944, 945 (9th Cir.), *vacated as moot*, 89 F.4th 1186 (9th Cir. 2023); *Kentucky v. Biden*, 571 F. Supp. 3d 715, 731 (E.D. Ky. 2021), *aff'd in part and modified in part on other grounds*, 57 F.4th 545 (6th Cir. 2023). That September 2021 memorandum, which dealt with COVID-19 workplace safety requirements, merely repeated requirements that had been stated in full in an Executive Order. *See* Memorandum from Fed. Acquisition Regul. Council, Issuance of Agency Deviations to Implement Executive Order 14042 (Sept. 30, 2021), https://perma.cc/T4CU-B8ZH. A Ninth Circuit panel concluded that the memorandum was "'not binding of its own force' and '[did] not compel agencies to take any specific action.'" *Mayes*, 67 F.4th at 944.

---

[12] The "micro-purchase threshold" is a dollar amount below which a contract is subject to streamlined requirements. *See* 48 C.F.R. § 13.201. The micro-purchase threshold is currently $15,000 for most goods and services, though higher or lower thresholds are applicable to certain kinds of contracts. *See id.* § 2.101 (definition of "[m]icro-purchase threshold").

Another way the FAR Council memorandum engenders legal consequences is that it has been incorporated by reference into other agencies' operative procurement policies. An agency's action can qualify as final when another federal agency accords determinative effect to the action. *See Bennett*, 520 U.S. at 169–70, 178 (concluding that a Biological Opinion issued by the Fish and Wildlife Service, though characterized by the Service as "advisory," qualified as final agency action because another agency, the Bureau of Reclamation (the "action agency"), would accord "virtually determinative effect" to the opinion); *accord Dow AgroSciences LLC v. Nat'l Marine Fisheries Serv.*, 637 F.3d 259, 265 (4th Cir. 2011).

Here, several agencies have instructed their contracting officers to use the model deviation text published by the FAR Council on its website, which includes the model deviation text the FAR Council prescribed in the April 2026 FAR Council memorandum. *See supra* p. 12.

In addition, the APA specifies that "[a] preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action." 5 U.S.C. § 704. So regardless of whether the FAR Council memorandum is final, it is reviewable in this suit because it led to the other agency actions challenged in this suit.

**B.     The FAR Council memorandum exceeded the FAR Council's statutory authority.**

The April 2026 FAR Council memorandum, deviation text, and associated guidance are unlawful for several reasons.

First, the FAR Council memorandum exceeded the authority granted to the FAR Council under 41 U.S.C. § 1303, which defines the functions and authority of the FAR Council. That statute authorizes the FAR Council to "manage, coordinate, control, and monitor the maintenance of, issuance of, and changes in, the Federal Acquisition Regulation." *Id.* § 1303(d). Thus, the FAR Council's authority is limited to developing the content of the FAR; the statute does not

empower the FAR Council to prescribe agency deviations from the FAR or to direct agencies' procurement activities. The April 2026 FAR Council memorandum directed agencies to adopt deviations, prescribed an April 27, 2026, deadline and specific text for those deviations, and stated that agencies would need FAR Council approval to adopt different text. It also directed agencies when and how to start using the new contract terms, establishing an April 24, 2026, deadline for agencies to begin using the new contract terms in new contracts and solicitations; an exception permitting contracting officers to exempt contracts that are to expire during 2026; and a July 24, 2026, deadline for seeking bilateral modification of existing contracts. None of these actions is within the FAR Council's authority.

### C. The FAR Council memorandum violated the notice and comment requirements of 41 U.S.C. § 1707 and the parallel requirements of FAR subpart 1.5.

The FAR Council memorandum is also invalid because it violated the procedural requirements of 41 U.S.C. § 1707. The contract terms prescribed by Executive Order No. 14398 and the implementation policies developed by the FAR Council "relate[] to the expenditure of appropriated funds," 41 U.S.C. § 1707(a)(1)(A), have significant effects outside the walls of the agency, *see id.* § 1707(a)(1)(B)(i), and impose significant costs and administrative burdens on contractors, *id.* § 1707(a)(1)(B)(ii). Accordingly, the contract terms and policies are subject to the notice and comment procedures of § 1707. The FAR Council memorandum appears to recognize as much—it states that the FAR Council "intends to conduct rulemaking pursuant to the notice and comment process set forth at 41 U.S.C. 1707." Ex. 2 at 3.

The Executive Order and the FAR Council memorandum appear to have assumed that, before notice and comment under § 1707 were completed, the Executive Order could be implemented on an interim basis through the issuance of class deviations under FAR subpart 1.4. *See* Exec. Order No. 14398, § 5(b) (directing the FAR Council to "issue deviation and interim

guidance under subpart 1.4 of the Federal Acquisition Regulation . . . regarding agency implementation of the clause . . . before completion of the amendments [to the FAR]"); Ex. 2 at 3 ("Agencies are encouraged to make their class deviations effective until implemented in the FAR."). But that assumption is fundamentally mistaken, for at least two reasons.

The regulations in FAR subpart 1.4 that allow for deviations do not, and could not, create an exception to the statutory notice and comment requirements of § 1707. Class deviations are themselves subject to notice and comment under § 1707 when they implement "significant" procurement policies. *See La Gloria Oil & Gas Co. v. United States*, 56 Fed. Cl. 211, 220 (Fed. Cl. 2003) (holding that a class deviation was subject to the notice and comment requirements of § 1707, which at the time was codified at 41 U.S.C. § 418b); *accord Navajo Refining Co. v. United States*, 58 Fed. Cl. 200, 209 (Fed. Cl. 2003); *Tesoro Haw. Corp. v. United States*, 58 Fed. Cl. 65, 71–72 (Fed. Cl. 2003), *rev'd on other grounds*, 405 F.3d 1339 (Fed. Cir. 2005).

In addition, FAR subpart 1.4, by its plain terms, permits agencies to adopt "deviations" from the FAR only "when necessary to meet the specific needs and requirements of each agency." 48 C.F.R. § 1.402. Accordingly, deviations are not permissible to implement a new governmentwide policy as the FAR Council has attempted here.

The FAR Council did not conduct notice and comment before issuing the April 2026 FAR Council memorandum. It also did not invoke the waiver provisions of § 1707(d) and (e) and did not attempt to show circumstances that would justify a waiver. Accordingly, the FAR Council memorandum violated § 1707. It also violated the requirements of FAR subpart 1.5, 48 C.F.R. subpart 1.5, which imposes notice and comment requirements that largely parallel the requirements of § 1707. And because of the FAR Council's failure to provide for notice and comment, the plaintiff States and other federal contractors had no opportunity to alert the FAR

24

Council to the lack of clarity in the contract terms and the other legal errors in the FAR Council's implementation of the Executive Order.

> **D.**    **The False Claims Act provision specified in the Executive Order conflicts with the False Claims Act.**

The False Claims Act provision specified in the Executive Order and adopted by the FAR Council and agencies is contrary to law because it conflicts with the False Claims Act, 31 U.S.C. §§ 3729–3733. The provision purports to obtain the contractor's agreement that "compliance with the requirements of this clause [is] material to the Government's payment decisions for purposes of [31 U.S.C. § 3729(b)(4)]." The Executive Order instructs the Attorney General to "consider whether to bring actions under the False Claims Act against any contractors or subcontractors that violate the clause described in section 3 of this order." Exec. Order No. 14398, § 4(d)(i). But as interpreted by the Supreme Court, materiality under § 3729(b)(4) depends ultimately on the "effect on the likely or actual behavior of the recipient of [an] alleged misrepresentation." *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 193 (2016). Merely labeling a clause "material" does not make it so. *See id.* at 190–96; *see also id.* at 196 (noting that a term requiring contractors to aver compliance with all federal statutes and regulations would not make any and all violations "material").

> **E.**    **The FAR Council's adoption of the reporting and recordkeeping requirements specified in the new contract terms violated the Paperwork Reduction Act.**

The FAR Council also violated the Paperwork Reduction Act, 44 U.S.C. §§ 3501–3521, by imposing reporting and recordkeeping requirements that are subject to the Act without first completing the notice-and-comment process and other procedural steps required under the Act.

The Paperwork Reduction Act regulates efforts by federal agencies to collect information from the public, including the imposition of reporting and recordkeeping requirements. *See id.*

§ 3502(3) (definition of "collection of information"). An agency generally cannot conduct a covered "collection of information" without first obtaining approval from the Director of the Office of Management and Budget (OMB) and obtaining a control number for the collection. *Id.* § 3507(a). Before seeking approval, an agency must complete an internal review of the details of the proposed collection, *id.* § 3506(c)(1), "provide 60-day notice in the Federal Register," and solicit comments from the public and other federal agencies, *id.* § 3506(c)(2).

After collecting and reviewing comments, the agency must submit the proposed information collection to the Director of OMB for review, with a certification that the proposed collection meets certain requirements, including that it "is necessary for the proper performance of the functions of the agency" and that it "has been developed by an office that has planned and allocated resources for the efficient and effective management and use of the information to be collected." *Id.* § 3506(c)(3). The agency must publish notice of the submission in the Federal Register with a request for comments to be submitted to OMB. *Id.* § 3507(a)(1)(D). OMB generally must provide at least 30 days for public comment. *Id.* § 3507(b).

The contract terms prescribed by Executive Order No. 14398 impose several requirements that are subject to the Paperwork Reduction Act: a requirement to "furnish . . . information and reports, including providing access to books, records, and accounts, . . . for purposes of ascertaining compliance with this clause"; a requirement to "report any subcontractor's known or reasonably knowable conduct that may violate" the clause; and a requirement to "inform the contracting department or agency if a subcontractor sues the contractor and the suit puts at issue . . . the validity of th[e] clause." Exec. Order No. 14398, § 3. The FAR Council appears to recognize that these recordkeeping and reporting requirements are subject to the Paperwork Reduction Act, *see* Ex. 2 at 3, yet the FAR Council directed agencies to

26

impose the requirements before the required process is complete—the memorandum directs federal agencies to start including the pertinent terms in contracts and subcontracts without waiting for OMB clearance, and to "expect that contractors will alert the appropriate contracting officer of potential violations of the clause or lawsuits relating to the clause," Ex. 2 at 3. These mandates violate the Paperwork Reduction Act, which forbids agencies from conducting or sponsoring any "collection of information" unless the required steps are completed "in advance of the adoption of" the collection. 44 U.S.C. § 3507(a).

**III.   The class deviations issued by the remaining defendant agencies, and those agencies' adoption of the contract terms prescribed by Executive Order No. 14398, are unlawful for many of the same reasons.**

The class deviations issued by the remaining defendant agencies, and those agencies' adoption of the contract terms prescribed by Executive Order No. 14398, are unlawful for many of the same reasons the April 2026 FAR Council memorandum was unlawful.

The agency implementing actions should be vacated simply because they were rooted in the unlawful FAR Council memorandum. "[W]hen a court with jurisdiction finds that the plaintiffs before it were harmed by an agency decision issued under an illegal rule, the court should vacate that wrongful decision as a remedy." *D.A.M. v. Barr*, 486 F. Supp. 3d 404, 416 (D.D.C. 2020), *appeal dismissed*, No. 20-5281 (D.C. Cir. Nov. 2, 2020). But the agency implementing actions are also subject to judicial review independent of the FAR Council memorandum.

The agency implementing actions qualify as final agency action under the standards discussed in section II.A above. *See supra* p. 20. The decisions are conclusive and give rise to legal consequences in that they establish a requirement for new contract terms to be incorporated into the agencies' contracts.

The agency implementing actions suffer from many of the same legal flaws as the FAR Council memorandum: They imposed "significant" policy changes without notice and comment and accordingly violated the procedural requirements of 41 U.S.C. § 1707 and FAR subpart 1.5. *See supra* pp. 23–25. The use of class deviations does not permit agencies to bypass notice and comment; class deviations that implement significant policy changes are themselves subject to notice and comment. *See supra* pp. 23–24. The agency class deviations also were not issued "to meet the specific needs and requirements of each agency" and thereby violate the limits of FAR subpart 1.4. *See supra* p. 24. The agencies' adoption of the False Claims Act provision repeats the error of the FAR Council memorandum discussed above. *See supra* p. 25. And the agencies' adoption of the recordkeeping and reporting provisions prescribed by the Executive Order violates the Paperwork Reduction Act because neither the FAR Council nor the other implementing agencies have complied with the requirements of the Act as discussed above. *See supra* pp. 25–27. These agency actions therefore are also unlawful under the APA.

## IV.    The Court should vacate the challenged actions and enjoin their implementation.

The Court should award relief in the form of declaratory relief, vacatur of the challenged actions, and a permanent injunction.

The Court should declare the challenged actions unlawful based on § 706 of the APA, 5 U.S.C. § 706(2), and the Declaratory Judgment Act, 28 U.S.C. § 2201.

The Court also should set aside and vacate the challenged actions, which is the typical remedy for agency action found "legally deficient." 5 U.S.C. § 706(2); *Sierra Club v. U.S. Army Corps of Eng'rs*, 909 F.3d 635, 655 (4th Cir. 2018); *see also Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 144 S. Ct. 2440, 2460–61 (2024) (Kavanaugh, J., concurring). Vacatur will prevent the defendants from imposing the contract terms on the plaintiff States or anyone else, including prime contractors with whom the plaintiff States work as subcontractors.

The Court also should enter a permanent injunction barring implementation of the challenged actions with respect to the plaintiff States. To obtain a permanent injunction, a plaintiff must show "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The final two factors "merge when the Government is the opposing party." *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

Here, the defendants' actions inflict irreparable harm that is not compensable by remedies available at law. No damages remedy is available against the United States that would compensate for the defendants' unlawful introduction of unwanted contract terms in federal procurement contracts. The introduction of the new contract terms also imposes myriad costs on the plaintiff States that are not compensable by any damages remedy: The lack of clarity in the contract terms imposes increased compliance costs on the States.[13] The defendants' actions impose additional costs associated with negotiating with subcontractors, monitoring their compliance with the unclear contract terms, and reporting possible violations.[14] They impose additional burdens associated with the contract terms concerning reporting and access to

---

[13] *See, e.g.*, Ex. 3 (Kitchell Decl.) ¶¶ 17, 20–25, 28, 37–38; Ex. 4 (Maldonado Decl.) ¶¶ 24–26; Ex. 5 (Cimino Decl.) ¶¶ 19–21; Ex. 6 (McLaughlin Decl.) ¶¶ 16–18; Ex. 7 (Walton Decl.) ¶¶ 18–20; Ex. 8 (Ellinger Decl.) ¶¶ 19–21; Ex. 9 (Kirk Decl.) ¶¶ 14–16; Ex. 10 (Frankenfield Decl.) ¶¶ 17–19; Ex. 12 (Barton Decl.) ¶¶ 14–17; Ex. 13 (Boring Decl.) ¶¶ 13–15; Ex. 14 (Billings Decl.) ¶¶ 17–21; Ex. 15 (Behrens Decl.) ¶¶ 13–15; Ex. 16 (Nagel Decl.) ¶¶ 18–20; Ex. 17 (Jenkins Decl.) ¶¶ 17–19; Ex. 21 (Dellit Decl.) ¶¶ 15–17; Ex. 22 (Switzer Decl.) ¶¶ 13–15.

[14] *See, e.g.*, Ex. 3 (Kitchell Decl.) ¶¶ 25–27; Ex. 4 (Maldonado Decl.) ¶ 27; Ex. 7 (Walton Decl.) ¶ 21; Ex. 8 (Ellinger Decl.) ¶¶ 21–23; Ex. 10 (Frankenfield Decl.) ¶¶ 20, 26; Ex. 11 (O'Shea Decl.) ¶ 18; Ex. 12 (Barton Decl.) ¶¶ 19–20; Ex. 14 (Billings Decl.) ¶ 23; Ex. 16 (Nagel Decl.) ¶¶ 20–21; Ex. 21 (Dellit Decl.) ¶ 18.

records.[15] These harms are especially pronounced given the harsh consequences of noncompliance, including termination and elimination of contracts, threats of debarment from all federal funding, and threats of False Claims Act litigation.[16]

The harm inflicted by the defendants' actions is not readily quantifiable, and the plaintiff States have no damages remedy. *See, e.g.*, *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551 (4th Cir. 1994) (noting that damages that are "difficult to ascertain" can amount to irreparable harm); *Mountain Valley Pipeline, LLC v. W. Pocahontas Props. Ltd. P'ship*, 918 F.3d 353, 366 (4th Cir. 2019) ("[E]conomic damages may constitute irreparable harm where no remedy is available at the conclusion of litigation."). The balance of equities and public interest factors also favor a permanent injunction, because the defendants have no legitimate interest in proceeding with unlawful actions. *Roe v. U.S. Dep't of Def.*, 947 F.3d 207, 230–31 (4th Cir. 2020) (upholding a determination that the public interest favored adherence to law and stated policies).

Accordingly, the Court should vacate the challenged actions and enter a permanent injunction preventing implementation of the challenged actions.

**CONCLUSION**

For the reasons above, the Court should enter judgment for the plaintiff States based on the claims in Count I of the complaint.

---

[15] *See, e.g.*, Ex. 3 (Kitchell Decl.) ¶¶ 26–27, 37; Ex. 5 (Cimino Decl.) ¶ 27; Ex. 6 (McLaughlin Decl.) ¶ 18; Ex. 7 (Walton Decl.) ¶¶ 21, 27; Ex. 8 (Ellinger Decl.) ¶¶ 19–21; Ex. 10 (Frankenfield Decl.) ¶ 26; Ex. 12 (Barton Decl.) ¶ 43.

[16] *See, e.g.*, Ex. 3 (Kitchell Decl.) ¶¶ 29–3; Ex. 4 (Maldonado Decl.) ¶¶ 28–31; Ex. 5 (Cimino Decl.) ¶¶ 22–24; Ex. 6 (McLaughlin Decl.) ¶¶ 19–20; Ex. 7 (Walton Decl.) ¶¶ 22–24; Ex. 8 (Ellinger Decl.) ¶¶ 25–28; Ex. 9 (Kirk Decl.) ¶¶ 17–19; Ex. 10 (Frankenfield Decl.) ¶¶ 21–24; Ex. 11 (O'Shea Decl.) ¶¶ 19–21; Ex. 12 (Barton Decl.) ¶¶ 22–39; Ex. 13 (Boring Decl.) ¶¶ 16–18; Ex. 14 (Billings Decl.) ¶¶ 24–25; Ex. 15 (Behrens Decl.) ¶¶ 16–18; Ex. 16 (Nagel Decl.) ¶¶ 22–24; Ex. 17 (Jenkins Decl.) ¶¶ 20–22; Ex. 18 (Johnson Decl.) ¶¶ 19–21; Ex. 21 (Dellit Decl.) ¶¶ 19–21; Ex. 22 (Switzer Decl.) ¶¶ 16–18.

Date: July 21, 2026

**ANTHONY G. BROWN**
Attorney General of Maryland

/s/ JAMES C. LUH
JAMES C. LUH (D. Md. Bar No. 31776)
VIRGINIA A. WILLIAMSON (D. Md. Bar
   No. 31472)
ADAM KIRSCHNER (D. Md. Bar No.
   31767)
Assistant Attorneys General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-6411
jluh@oag.maryland.gov

Attorneys for State of Maryland

Respectfully submitted,

**ROB BONTA**
Attorney General of California

By: */s/ Alexis M. Piazza*
Alexis M. Piazza*
*Deputy Attorney General*
Office of the Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA  90013-1230
Michael L. Newman*
*Senior Assistant Attorney General*
Laura L. Faer*
*Supervising Deputy Attorney General*
Kenneth J. Sugarman*
Xiyun Yang*
*Deputy Attorneys General*
Alexis.Piazza@doj.ca.gov
Laura.Faer@doj.ca.gov
Kenneth.Sugarman@doj.ca.gov
Xiyun.Yang@doj.ca.gov
Michael.Newman@doj.ca.gov

*Attorneys for State of California*

31

**KWAME RAOUL**
Attorney General of Illinois

*/s/ Paul Berks*
CARA HENDRICKSON*
Executive Deputy Attorney General
PAUL BERKS*
Complex Litigation Counsel
ELIZABETH H. JORDAN*
Senior Social Equity Counsel
MOLLY PETCHENIK*
Assistant Attorney General
Office of the Illinois Attorney General
115 S. LaSalle St., Chicago, IL 60603
(773) 919-2923
Paul.Berks@ilag.gov
Cara.Hendrickson@ilag.gov
Elizabeth.Jordan@ilag.gov
Molly.Petchenik@ilag.gov

*Attorneys for Plaintiff State of Illinois*

**WILLIAM TONG**
Attorney General of Connecticut

*/s/ Andrew Ammirati*
Andrew Ammirati*
Assistant Attorney General
165 Capitol Ave
Hartford, CT 06106
(860) 808-5090
Andrew.Ammirati@ct.gov

*Attorney for Plaintiff State of Connecticut*

**PHILIP J. WEISER**
Attorney General of Colorado

By: */s/ Nora Passamaneck*
Nora Passamaneck*
*Senior Assistant Attorney General*
Sam Wolter*
*Assistant Attorney General*
1300 Broadway, #10
Denver, CO 80203
(720) 508-6000
nora.passamaneck@coag.gov
samuel.wolter@coag.gov

*Counsel for the State of Colorado*

**BRIAN L. SCHWALB**
Attorney General for the District of
Columbia

By: */s/ Eliza H. Simon*
Eliza H. Simon (D. Md. Bar No. 19648)
*Senior Counsel to the Attorney General*
Office of the Attorney General for the
District of Columbia
400 Sixth Street NW
Washington, D.C. 20001
(202) 741-5221
Eliza.Simon@dc.gov

*Counsel for the District of Columbia*

**ANNE E. LOPEZ**
Attorney General of Hawaiʻi

By: */s/ Kalikoʻonālani D. Fernandes*
Kalikoʻonālani D. Fernandes*
Solicitor General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov

*Attorneys for the State of Hawaiʻi*


**ANDREA JOY CAMPBELL**
Attorney General of Massachusetts

By: */s/ Nita K. Klunder*
Nita K. Klunder*
*State Trial Counsel*
Savannah Arguello*
*Assistant Attorney General*
Office of the Attorney General
One Ashburton Place, 20th Floor
Boston, MA 02108
(617) 963-2394
Nita.Klunder@mass.gov
Sav.Arguello@mass.gov

*Counsel for the Commonwealth of Massachusetts*


**KEITH ELLISON**
Attorney General of Minnesota

By: */s/ Kimberly Svendsen*
Kimberly Svendsen*
Special Counsel, Rule of Law
445 Minnesota Street, Suite 1400
St. Paul, MN 55101
(651) 757-1141
kimberly.svendsen@ag.state.mn.us

*Counsel for the State of Minnesota*


**AARON M. FREY**
Attorney General of Maine

*/s/ Katherine W. Thompson*
Katherine W. Thompson*
Special Counsel
Office of the Attorney General
6 State House Station
Augusta, ME 04333
Tel.: 207-626-8455
Fax: 207-287-3145
Kate.thompson@maine.gov

*Attorneys for Plaintiff State of Maine*


**DANA NESSEL**
Attorney General of Michigan

By: */s/ Neil Giovanatti*
Neil Giovanatti*
*Assistant Attorney General*
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
(517) 335-7603
GiovanattiN@michigan.gov

*Attorneys for the State of Michigan*


**AARON D. FORD**
Attorney General of Nevada

By: /s/ K. Brunetti Ireland
K. Brunetti Ireland*
Chief of Special Litigation
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
kireland@ag.nv.gov

Attorneys for State of Nevada

33

**JENNIFER DAVENPORT**
Attorney General of New Jersey

*/s/ Lucy I. Sprague*
Lucy I. Sprague*
Andrea I. Cavazos*
Deputy Attorneys General
Office of the Attorney General
124 Halsey Street, 5th Floor
Newark, NJ 07101
(609) 696-5279
lucy.sprague@law.njoag.gov
andrea.cavazos@law.njoag.gov

Counsel for the State of New Jersey

**DAN RAYFIELD**
Attorney General of Oregon

By: */s/ Leanne Hartmann*
Leanne Hartmann*
Senior Assistant Attorney General
Galen Knowles*
Assistant Attorney General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Tel (971) 673-1880
Fax (971) 673-5000
Leanne.Hartmann@doj.oregon.gov
Galen.Knowles@doj.oregon.gov

Attorneys for the State of Oregon

**RAÚL TORREZ**
Attorney General of New Mexico

*/s/ Olivia den Dulk*
Olivia den Dulk*
Assistant Attorney General
New Mexico Department of Justice
408 Galisteo Street
Santa Fe, New Mexico 87501
(505) 490-4060
odendulk@nmdoj.gov

*Attorneys for the State of New Mexico*

**PETER F. NERONHA**
Attorney General of Rhode Island

By: */s/ Leonard Giarrano IV*
Leonard Giarrano IV*
*Special Assistant Attorney General*
Office of the Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400
lgiarrano@riag.ri.gov

Attorney for State of Rhode Island

34

**CHARITY R. CLARK**
Attorney General of Vermont

By: */s/ Ryan P. Kane*
Ryan P. Kane*
Deputy Solicitor General
109 State Street
Montpelier, VT 05609
(802) 828-2153
Ryan.kane@vermont.gov

Attorneys for State of Vermont


**NICHOLAS W. BROWN**
Attorney General of Washington

*/s/ Sarah E. Smith-Levy*
SARAH E. SMITH-LEVY*
Assistant Attorney General
CRISTINA SEPE*
Deputy Solicitor General
800 Fifth Avenue, Suite 2000
P.O. Box TB-14
Seattle, WA 98104-3188
206-464-7744
sarah.e.smith-levy@atg.wa.gov
cristina.sepe@atg.wa.gov

*Attorneys for Plaintiff State of Washington*

**JAY JONES**
Attorney General of Virginia

By: /s/ *Megan C. Keenan*
Megan C. Keenan (D. Md. Bar No. 32426)
*Deputy Solicitor General*
Office of the Attorney General of Virginia
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-2071
mkeenan@oag.state.va.us

*Counsel for the Commonwealth of Virginia*


**JOSHUA L. KAUL**
Attorney General of Wisconsin

By: */s/ Aaron J. Bibb*
Aaron J. Bibb*
*Assistant Attorney General*
Wisconsin Department of Justice
17 West Main Street
Post Office Box 7857
Madison, WI 53707-7857
(608) 266-0810
aaron.bibb@wisdoj.gov

*Attorneys for State of Wisconsin*

*\* pro hac vice*

35