Exhibit 5

Declaration of Emma Cimino (Connecticut)

**DECLARATION OF EMMA CIMINO**

I, Emma Cimino, declare as follows:

1. I am the Acting Commissioner of the Connecticut Department of Energy and Environmental Protection (DEEP). I make this declaration based on personal knowledge and information provided to me in my official capacity. If called as a witness, I could and would testify competently to the matters set forth below.

2. I was appointed Acting Commissioner of DEEP by Connecticut Governor Ned Lamont on July 10, 2026. Prior to becoming Acting Commissioner, I served DEEP as Deputy Commissioner for Environmental Quality (2023-2026), overseeing DEEP's air management, water protection and land reuse, and materials management programs.

3. DEEP is a Connecticut executive branch state agency. DEEP is charged with conserving, improving and protecting human health, natural resources and the environment of the state of Connecticut as well as making energy more affordable, cleaner and reliable for the people and businesses of the state. DEEP is also committed to playing a positive role in rebuilding Connecticut's economy and creating jobs – and to fostering a sustainable and prosperous economic future for the state.

4. As Acting Commissioner of DEEP, I am responsible for carrying out programs to protect, conserve, and improve the environment, as well as to protect the public health and the environment in the use of sources of ionizing radiation within the state of Connecticut, which includes DEEP's Radiation Division's delegated authority from the federal government to inspect mammography facilities within the State of Connecticut. Additionally, I am responsible for entering into both federal contracts for goods and services and federal grant award agreements on behalf of DEEP.

5. Prior to my most recent employment with DEEP, I worked in the office of U.S. Senator Chris Murphy, where I led the Senator's work on energy, environment, and infrastructure issues, including work on the Bipartisan Infrastructure Law and the Inflation Reduction Act. Prior to the Senate, I worked as a Senior Policy Advisor at the National Governor's Association. I began my state service working for former Connecticut Governor Dan Malloy, serving as Director of Government Affairs. I hold a bachelor's degree in political science from the University of Connecticut and a master's degree in public administration from the Harvard Kennedy School.

**Federal Contracting Activities of DEEP**

6. DEEP supplies services to the federal government under procurement contracts with federal agencies.

7. DEEP is party to the following present contract: Federal Award ID 75F40122C00141 Mammography Quality Standards Act (MQSA) Connecticut ("MQSA Connecticut Contract"), United States Department of Health and Human Services (HHS), Food and Drug Administration (FDA).

8. Under the MQSA Connecticut Contract, HHS/FDA has obligated $1,438,854.93 to DEEP for the performance of inspection of mammography facilities in Connecticut. The MQSA Connecticut Contract's term lasts five (5) years from September 30, 2022 to September 29, 2027. Each year, DEEP typically enters into a new Option Period for this contract, totaling approximately $350,000.00 per Option Period. The MQSA Contract's base period of performance lasted September 30, 2022 to from September 29, 2023. The MQSA Connecticut Contract has included option periods each year thereafter, and was most recently modified on September 10, 2025 to enter into Option Period 3. DEEP anticipates receiving a modification to

the MQSA Connecticut Contract in early September of 2026 to enter into the final option year (Option Period 4), which ends on September 29, 2027.

9. DEEP regularly and routinely seeks opportunities for new federal contract work. DEEP regularly enters into subsequent Option Periods during the term of the current MQSA Connecticut Contract. Additionally, DEEP expects to apply for the MQSA Connecticut Contract in future terms following the expiration of the current contract on September 29, 2027.

10. The federal agencies for which DEEP is currently working as a contractor or subcontractor or seeking new contracts include HHS/FDA.

**Executive Order 14398**

11. I understand that on March 26, 2026, President Trump issued Executive Order 14398, Addressing DEI Discrimination by Federal Contractors, 91 Fed. Reg. 16,147 (Mar. 26, 2026). The order directs federal agencies to include terms in all their contracts barring contractors from "engag[ing] in any racially discriminatory DEI activities," defined as "disparate treatment based on race or ethnicity in the recruitment, employment . . . , contracting . . . , program participation, or allocation or deployment of an entity's resources." Under the terms, contractors or subcontractors not in compliance with this prohibition may be subject to contract cancellation and debarment from future contracts. The terms also require contractors to "furnish all information and reports, including providing access to books, records, and accounts" for purposes of ascertaining compliance. The terms state, "The contractor recognizes that compliance with the requirements of this clause are material to the Government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code (False Claims Act)."

12. I understand that on or about April 20, 2026, the FAR Council issued a memorandum to agency procurement officers with instructions on how to implement Executive

Order 14398. The memorandum directs agencies to issue class deviations under FAR subpart 1.4 to incorporate the contract terms and other requirements of Executive Order 14398. The memorandum further directs agencies to start using the contract terms prescribed by Executive Order 14398 in new contracts by April 24, 2026, and to seek to modify existing contracts with the contract terms prescribed by Executive Order 14398 by July 24, 2026. These new terms are numbered FAR 52.222-90, Addressing DEI Discrimination by Federal Contractors, though they have not yet been officially incorporated into the Federal Acquisition Regulation. The memorandum directs that, "If a contractor refuses to agree to a bilateral modification, the contracting officer should consider whether, absent the modification, the contract no longer meets the agency's needs and should therefore be terminated for convenience."

13. I understand that many federal agencies have issued class deviations to implement Executive Order 14398. Through these class deviations, the agencies have directed contracting officers to use the terms prescribed by Executive Order 14398, including the clause found at FAR 52.222-90, Addressing DEI Discrimination by Federal Contractors.

14. In light of Executive Order 14398, the FAR Council memorandum, and the class deviations described above, I expect that all DEEP federal contracts and subcontracts will be made subject to the order's terms in the immediate future, and thus DEEP will be required to agree to the contract term or risk losing the contracts or contracting opportunities.

15. To date, DEEP has not yet been asked to sign or assure compliance with the new contract terms prescribed by Executive Order 14398 in connection with contracts for HHS. DEEP anticipates being asked to sign or assure compliance with the new contract terms prescribed by Executive Order 14398 upon receipt of the MQSA Connecticut Contract modification for the final Option Period (Option Period 4). Additionally, DEEP anticipates being

asked to sign on or assure compliance with the new contract terms prescribed by Executive Order 14398 when it applies for the MQSA Connecticut Contract following expiration of the current contract.

16. Notwithstanding the DEEP concerns described below—including the significant uncertainty and substantial costs, burdens, and harms caused by Executive Order 14398, coupled with the significant and unprecedented penalties Executive Order 14398 would impose—DEEP anticipates being asked to agree to the new contract terms prescribed by Executive Order 14398 even though the federal government has not provided a clear explanation of what, if anything, the terms require from contractors beyond compliance with existing federal antidiscrimination law.

17. To date, DEEP has not yet agreed to the new contract terms prescribed by Executive Order 14398, given its effective date and the timing of the Option Period cycles of the current MQSA Connecticut Contract.

**Executive Order 14398's Costs, Burdens, and Harms**

18. I am deeply concerned that the contract terms prescribed by Executive Order 14398, if included in our agency's federal contracts, will lead to significant uncertainty and create substantial costs, burdens, and harms for DEEP and our State.

19. Executive Order 14398's prohibition of "racially discriminatory DEI activities" is unclear. The order and the contract terms adopted to implement the order define "racially discriminatory DEI activities" to mean "disparate treatment based on race or ethnicity in the recruitment, employment (e.g., hiring, promotions), contracting (e.g., vendor agreements), program participation, or allocation or deployment of an entity's resources." The order in turn defines "program participation" to mean "membership or participation in, or access or admission

to: training, mentoring, or leadership development programs; educational opportunities; clubs; associations; or similar opportunities that are sponsored or established by the contractor or subcontractor."

20. Other federal and state laws applicable to DEEP and other contract terms prescribed by the federal government in the past have previously addressed the subject of racial discrimination. The new Executive Order and the agency actions implementing it do not explain how the new contract terms relate to those earlier laws and contract terms, nor do they explain whether the Executive Order imposes requirements that are different from those earlier laws and contract terms.

21. As a result, the inclusion of the new terms in our agency's federal contract would create significant uncertainty going forward. This uncertainty would create additional costs associated with ensuring compliance, including changes to DEEP's resources dedicated to hiring personnel to work on inspections under MQSA.

22. The lack of clarity in Executive Order 14398 and the associated contract terms is especially harmful given that the Executive Order directs federal agencies to "cancel, terminate, suspend, or cause to be cancelled, terminated, or suspended" any contract for the contractor or subcontractor's noncompliance—especially because the prohibition of "racially discriminatory DEI activities" is unclear as explained above—would create substantial risk should DEEP agree to the new terms. In the event DEEP's current federal contract was terminated due to noncompliance, this would cause DEEP to lose funding to conduct mammography facility inspections in the state of Connecticut. This would cause responsibility of conducting such inspections to fall on the HHS/FDA, including the responsibility for hiring, training and deploying staff and inspectors. Additionally, this could result in mammography facilities in the

State of Connecticut not being inspected properly under the Mammography Quality Standards Act, or at all, if there are budgetary shortfalls and inadequate staff resources deployed to Connecticut. Such an outcome could adversely affect the health and well-being of Connecticut residents by reducing regulatory oversight intended to ensure that mammography equipment, imaging quality, personnel qualifications, and quality assurance programs continue to meet federal standards. Effective inspections are essential to maintaining high-quality breast cancer screening services, supporting early detection and accurate diagnosis, and preserving public confidence that Connecticut patients are receiving safe, reliable, and clinically effective mammography examinations.

23. Executive Order 14398's requirement that federal agencies "take appropriate action to suspend and debar" contractors or subcontractors for noncompliance—especially because the prohibition of "racially discriminatory DEI activities" is unclear as explained above—would create substantial risk associated with such unprecedented penalties, should DEEP agree to the new terms. DEEP would face significant repercussions if barred from contracts and grants across the board. DEEP would lose out on hundreds of millions of federal funds that support the mission of the agency, including those received through federal contracts and grants. Losing out on those federal funds would negatively impact DEEP's ability to carry out programs and projects that are fundamental to its mission.

24. The contract term under which the contractor "recognizes that compliance with the requirements of this clause are material to the Government's payment decisions for purposes of" the False Claims Act is harmful because it threatens lawsuits under the False Claims Act. States would face costs associated with defending lawsuits under the False Claims Act even if they were to prevail in those lawsuits. Harms to DEEP resulting from defending a False Claims

Act Action lawsuit, even if DEEP prevailed on such lawsuit, would include, but are not limited to the redirection of time, cost, and other resources associated with defending such lawsuit.

**Executive Order 14398's Procedural Harms**

25. The FAR Council guidance explains that the FAR Council "intends to conduct rulemaking pursuant to the notice and comment process set forth at 41 U.S.C. 1707" to amend the Federal Acquisition Regulation (FAR). But the FAR Council guidance also directed federal agencies to implement the Executive Order before this rulemaking was completed.

26. Because the FAR Council and other federal agencies began implementation of the Executive Order without the required process, DEEP has had no opportunity to share its concerns regarding the new terms, including the significant uncertainty and substantial costs, burdens, and harms they cause. Nor does DEEP have the benefit of federal agencies' responses to public comments, which might have helped clarify the meaning of the new terms. The significant uncertainty and substantial costs, burdens, and harms caused by Executive Order 14398 could have been mitigated, and perhaps avoided altogether, had the new terms been issued pursuant to lawful procedures.

27. As another example, the FAR Council guidance explains the FAR Council "is seeking clearance from the Office of Management and Budget (OMB) under the Paperwork Reduction Act of 1995 (PRA) for the information collections related to FAR clause 52.222-90." The guidance provides that "agencies will be expected to enforce full compliance with these requirements" once OMB approves the information collection under the PRA, but does not address whether agencies may enforce compliance before that time, and in any event requires the immediate insertion of the new contract terms in new and existing contracts. DEEP will experience added administrative burdens associated with both complying with the new contract

terms and supplying the federal agencies with additional paperwork and documentation to demonstrate compliance with the new terms.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on July 17, 2026, at Hartford, Connecticut.

______________________________

Emma Cimino, Acting Commissioner