Exhibit 9

Declaration of Janette Kirk (Maine)

## DECLARATION OF JANETTE KIRK

I, Janette Kirk, declare as follows:

1. I am Janette Kirk, Chief, Office of Federal Programs, Maine Department of Education. I make this declaration based on personal knowledge and information provided to me in my official capacity. If called as a witness, I could and would testify competently to the matters set forth below.

### Professional and Agency Background

2. I am currently employed by the Maine Department of Education as Chief, Office of Federal Programs.

3. The Maine Department of Education, in collaboration with educators, schools, districts, and communities statewide, strives to provide all Maine students access to educational experiences, PreK through adult, that lead to their success in life and career. With students at the center of every decision, the Department's goal is to promote educational experiences that engage and challenge every student through individualized learning opportunities that enhance achievement.

4. As Maine Department of Education's Chief, Office of Federal Programs, my duties include providing policy and operational leadership for the Office of Federal Programs; formulating and directing the implementation of education policy of the Department of Education related to elementary and secondary education in Maine, including Elementary and Secondary Education, Assessment, and Child Nutrition teams, and ensuring all federal programs are in alignment with the Commissioner's policy agenda. I am, therefore, responsible for the comprehensive coordination and alignment of policies, programs and initiatives within the Office of Federal Programs.

**Federal Contracting Activities of Maine Department of Education**

5. The Maine Department of Education regularly and routinely supplies services to the federal government under procurement contracts with federal agencies.

6. For example, the Maine Department of Education has been and is a party to contracts with the U.S. Department of Education for services related to federal-state coordination in connection with the National Assessment of Educational Progress. The period of performance for the Maine Department of Education's current such contract ends in March 2027, with the potential for extensions beyond that date.

7. The Maine Department of Education anticipates seeking additional opportunities for federal contract work in the future.

8. In all, the Maine Department of Education's contracts with the U.S. Department of Education total more than $2 million since 2008.

**Executive Order 14398**

9. I understand that on March 26, 2026, President Trump issued Executive Order 14398, Addressing DEI Discrimination by Federal Contractors, 91 Fed. Reg. 16,147 (Mar. 26, 2026). The order directs federal agencies to include terms in all their contracts barring contractors from "engag[ing] in any racially discriminatory DEI activities," defined as "disparate treatment based on race or ethnicity in the recruitment, employment . . . , contracting . . . , program participation, or allocation or deployment of an entity's resources." Under the terms, contractors or subcontractors not in compliance with this prohibition may be subject to contract cancellation and debarment from future contracts. The terms also require contractors to "furnish all information and reports, including providing access to books, records, and accounts" for purposes of ascertaining compliance. The terms state, "The contractor recognizes that

compliance with the requirements of this clause are material to the Government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code (False Claims Act)."

10. I understand that on or about April 20, 2026, the FAR Council issued a memorandum to agency procurement officers with instructions on how to implement Executive Order 14398. The memorandum directs agencies to issue class deviations under FAR subpart 1.4 to incorporate the contract terms and other requirements of Executive Order 14398. The memorandum further directs agencies to start using the contract terms prescribed by Executive Order 14398 in new contracts by April 24, 2026, and to seek to modify existing contracts with the contract terms prescribed by Executive Order 14398 by July 24, 2026. These new terms are numbered FAR 52.222-90, Addressing DEI Discrimination by Federal Contractors, though they have not yet been officially incorporated into the Federal Acquisition Regulation. The memorandum directs that, "If a contractor refuses to agree to a bilateral modification, the contracting officer should consider whether, absent the modification, the contract no longer meets the agency's needs and should therefore be terminated for convenience."

11. I understand that many federal agencies have issued class deviations to implement Executive Order 14398. Through these class deviations, the agencies have directed contracting officers to use the terms prescribed by Executive Order 14398, including the clause found at FAR 52.222-90, Addressing DEI Discrimination by Federal Contractors.

12. In light of Executive Order 14398, the FAR Council memorandum, and the class deviations described above, I expect that all Maine Department of Education federal contracts will be made subject to the order's terms in the immediate future, and thus the Maine Department of Education will be required to agree to the contract term or risk losing the contracts or contracting opportunities.

## Executive Order 14398's Costs, Burdens, and Harms

13. I am deeply concerned that the contract terms prescribed by Executive Order 14398, if included in our agency's federal contracts, would lead to significant uncertainty and create substantial costs, burdens, and harms for the Maine Department of Education and our State.

14. Executive Order 14398's prohibition of "racially discriminatory DEI activities" is unclear. The order and the contract terms adopted to implement the order define "racially discriminatory DEI activities" to mean "disparate treatment based on race or ethnicity in the recruitment, employment (e.g., hiring, promotions), contracting (e.g., vendor agreements), program participation, or allocation or deployment of an entity's resources." The order in turn defines "program participation" to mean "membership or participation in, or access or admission to: training, mentoring, or leadership development programs; educational opportunities; clubs; associations; or similar opportunities that are sponsored or established by the contractor or subcontractor."

15. Other federal and state laws applicable to the Maine Department of Education and other contract terms prescribed by the federal government in the past have previously addressed the subject of racial discrimination. The new Executive Order and the agency actions implementing it do not explain how the new contract terms relate to those earlier laws and contract terms, nor do they explain whether the Executive Order imposes requirements that are different from those earlier laws and contract terms.

16. As a result, the inclusion of the new terms in our agency's federal contracts would create significant uncertainty going forward. This uncertainty would create additional costs

associated with ensuring compliance, including resources devoted to assessing any programmatic impacts or changes needed to mitigate the risk of being deemed noncompliant.

17. The lack of clarity in Executive Order 14398 and the associated contract terms is especially harmful given that the Executive Order directs federal agencies to "cancel, terminate, suspend, or cause to be cancelled, terminated, or suspended" any contract for the contractor or subcontractor's noncompliance—especially because the prohibition of "racially discriminatory DEI activities" is unclear as explained above—would create substantial risk should the Maine Department of Education agree to the new terms. If contracts were terminated for noncompliance, it would result in the loss of a full-time position that coordinates and manages the work of National Assessment of Educational Progress (NAEP), a congressionally mandated large-scale assessment which provides data to inform the educational systems of the State. Without this position, the federally mandated assessment may not be administered and completed.

18. Executive Order 14398's requirement that federal agencies "take appropriate action to suspend and debar" contractors or subcontractors for noncompliance—especially because the prohibition of "racially discriminatory DEI activities" is unclear as explained above—would create substantial risk associated with such unprecedented penalties, should the Maine Department of Education agree to the new terms. This would harm the State of Maine's entire National Assessment of Educational Progress coordination, impacting multiple schools, hundreds of children, and likely also the reputation of the State of Maine generally when seeking out other federal contracts.

19. The contract term under which the contractor "recognizes that compliance with the requirements of this clause are material to the Government's payment decisions for purposes

of" the False Claims Act is harmful because it threatens lawsuits under the False Claims Act. States would face costs associated with defending lawsuits under the False Claims Act even if they were to prevail in those lawsuits. Lawsuits of this kind would divert important time and resources away from the Maine Department of Education's mission of ensuring that Maine youth receive appropriate education and training.

**Executive Order 14398's Procedural Harms**

20. The FAR Council guidance explains that the FAR Council "intends to conduct rulemaking pursuant to the notice and comment process set forth at 41 U.S.C. 1707" to amend the Federal Acquisition Regulation (FAR). But the FAR Council guidance also directed federal agencies to implement the Executive Order before this rulemaking was completed.

21. Because the FAR Council and other federal agencies began implementation of the Executive Order without the required process, the Maine Department of Education has not had the benefit of federal agencies' responses to public comments, which might have helped clarify the meaning of the new terms. The significant uncertainty and substantial costs, burdens, and harms caused by Executive Order 14398 could have been mitigated, and perhaps avoided altogether, had the new terms been issued pursuant to lawful procedures.

22. As another example, the FAR Council guidance explains the FAR Council "is seeking clearance from the Office of Management and Budget (OMB) under the Paperwork Reduction Act of 1995 (PRA) for the information collections related to FAR clause 52.222-90." The guidance provides that "agencies will be expected to enforce full compliance with these requirements" once OMB approves the information collection under the PRA, but does not address whether agencies may enforce compliance before that time, and in any event requires the immediate insertion of the new contract terms in new and existing contracts.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on July 16, 2026, at Augusta, ME.

Janette Kirk