Exhibit 14

Declaration of Joanne Billings (Minnesota)

**DECLARATION OF JOANNE BILLINGS**

I, Joanne Billings, declare as follows:

1. I am the Interim Vice President for Research and Innovation at the University of Minnesota. I make this declaration based on personal knowledge and information provided to me in my official capacity. If called as a witness, I could and would testify competently to the matters set forth below.

**Professional and Agency Background**

2. I am currently employed by the University of Minnesota as the Interim Vice President for Research and Innovation.

3. The University of Minnesota is a major public land-grant research university system dedicated to conducting extensive research and providing educational services through its five campuses and other facilities throughout the State of Minnesota.

4. As the Interim Vice President for Research and Innovation, my duties include overseeing research compliance, integrity, administrative processes, and contracts for federal grants and awards across the University.

5. Prior to my most recent employment as Interim Vice President, I served as the Associate Vice President for Research Integrity and Innovation at the University of Minnesota.

**Federal Contracting Activities of the University**

6. The University regularly and routinely supplies goods and services to the federal government under procurement contracts with federal agencies. The University also regularly and routinely supplies goods and services as a subcontractor on procurement contracts with federal agencies.

7. The University regularly and routinely seeks opportunities for new federal contract work relating to various research labs and activities.

8. The University has 65 active contracts with 27 different federal agencies and departments worth $65.6 million ($15.2 million remaining to be spent), and is a subcontractor on 39 contracts through ten national labs that are funded by either the Department of Energy or NASA worth $15.3 (with $3.8 million remaining to be spent). Last year, the University entered into 64 new contracts and subcontracts worth $35.8 million

9. The federal agencies for which the University is currently working as a contractor or subcontractor or seeking new contracts includes, but not limited to, National Institutes of Health, US Department of Homeland Security, US Department of Health & Human Services AHRQ, Department of Energy (DOE), Department of Defense, National Aeronautics & Space Administration (NASA), US Department of Agriculture, DHHS Food and Drug Administration (FDA), US Department of Veterans Affairs (VA), US Department of Commerce, National Oceanic and Atmospheric Administration (NOAA), US General Services Administration, Department of the Interior.

## **Executive Order 14398**

10. I understand that on March 26, 2026, President Trump issued Executive Order 14398, Addressing DEI Discrimination by Federal Contractors, 91 Fed. Reg. 16,147 (Mar. 26, 2026). The order directs federal agencies to include terms in all their contracts barring contractors from "engag[ing] in any racially discriminatory DEI activities," defined as "disparate treatment based on race or ethnicity in the recruitment, employment . . . , contracting . . . , program participation, or allocation or deployment of an entity's resources." Under the terms, contractors or subcontractors not in compliance with this prohibition may be subject to contract cancellation

and debarment from future contracts. The terms also require contractors to "furnish all information and reports, including providing access to books, records, and accounts" for purposes of ascertaining compliance. The terms state, "The contractor recognizes that compliance with the requirements of this clause are material to the Government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code (False Claims Act)."

11. I understand that on or about April 20, 2026, the FAR Council issued a memorandum to agency procurement officers with instructions on how to implement Executive Order 14398. The memorandum directs agencies to issue class deviations under FAR subpart 1.4 to incorporate the contract terms and other requirements of Executive Order 14398. The memorandum further directs agencies to start using the contract terms prescribed by Executive Order 14398 in new contracts by April 24, 2026, and to seek to modify existing contracts with the contract terms prescribed by Executive Order 14398 by July 24, 2026. These new terms are numbered FAR 52.222-90, Addressing DEI Discrimination by Federal Contractors, though they have not yet been officially incorporated into the Federal Acquisition Regulation. The memorandum directs that, "If a contractor refuses to agree to a bilateral modification, the contracting officer should consider whether, absent the modification, the contract no longer meets the agency's needs and should therefore be terminated for convenience."

12. I understand that many federal agencies have issued class deviations to implement Executive Order 14398. Through these class deviations, the agencies have directed contracting officers to use the terms prescribed by Executive Order 14398, including the clause found at FAR 52.222-90, Addressing DEI Discrimination by Federal Contractors.

13. In light of Executive Order 14398, the FAR Council memorandum, and the class deviations described above, I expect that all of the University's contracts and subcontracts will

be made subject to the order's terms in the immediate future, and thus the University will be required to agree to the contract term or risk losing the contracts or contracting opportunities.

14. The University has already been asked to sign or assure compliance with the new contract terms prescribed by Executive Order 14398. As examples, these terms were incorporated into an award when the University received a U.S. Army contract in April 2026. These terms were also part of two additional Department of Veterans Affairs contract modifications containing FAR 52.222-90.

15. Notwithstanding the significant concerns described below arising from the uncertain language and the resulting costs, burdens, and harms caused by Executive Order 14398, coupled with the significant and unprecedented penalties Executive Order 14398 would impose—the University has agreed to the new contract terms prescribed by Executive Order 14398 even though the federal government has not provided a clear explanation of what, if anything, the terms require from contractors beyond compliance with existing federal antidiscrimination law.

**Executive Order 14398's Costs, Burdens, and Harms**

16. I am deeply concerned that the contract terms prescribed by Executive Order 14398, if included in our University federal contracts, introduce ambiguity and raise questions that will lead to significant uncertainty and could create substantial costs, burdens, and harms for the University.

17. Executive Order 14398's prohibition of "racially discriminatory DEI activities" is unclear. The order and the contract terms adopted to implement the order define "racially discriminatory DEI activities" to mean "disparate treatment based on race or ethnicity in the recruitment, employment (e.g., hiring, promotions), contracting (e.g., vendor agreements), program participation, or allocation or deployment of an entity's resources." The order in turn

defines "program participation" to mean "membership or participation in, or access or admission to: training, mentoring, or leadership development programs; educational opportunities; clubs; associations; or similar opportunities that are sponsored or established by the contractor or subcontractor."

18. Other federal and state laws applicable to the University and other contract terms prescribed by the federal government in the past have previously addressed the subject of racial discrimination. The new Executive Order and the agency actions implementing it do not explain how the new contract terms relate to those earlier laws and contract terms, nor do they explain whether the Executive Order imposes requirements that are different from those earlier laws and contract terms.

19. As always, the University of Minnesota stands ready to comply with federal antidiscrimination law, but we need clearer guidance as to what is expected so as to both honor the law and prevent exposure to the perils of noncompliance.

20. Executive Order 14398's prohibition of racially discriminatory DEI activities by contractors *or their subcontractors* and the requirement to report "any subcontractor's known or reasonably knowable conduct that *may* violate this clause" (emphasis added) creates additional compliance and monitoring costs for the University—especially because the prohibition of "racially discriminatory DEI activities" is unclear as explained above.

21. The lack of clarity in Executive Order 14398 and the associated contract terms is especially harmful given that the Executive Order directs federal agencies to "cancel, terminate, suspend, or cause to be cancelled, terminated, or suspended" any contract for the contractor or subcontractor's noncompliance—especially because the prohibition of "racially discriminatory DEI activities" is unclear as explained above—will create substantial risk.

22. Executive Order 14398's requirement that federal agencies "take appropriate action to suspend and debar" contractors or subcontractors for noncompliance—especially because the prohibition of "racially discriminatory DEI activities" is unclear as explained above— will create substantial risk associated with such unprecedented penalties. Debarment from future federal contracts would result in broad substantial harm to the University, the State, and beyond, for many reasons, including that critical and cutting-edge research would be lost or not be pursued due to lack of funding.

**Executive Order 14398's Procedural Harms**

23. The FAR Council guidance explains that the FAR Council "intends to conduct rulemaking pursuant to the notice and comment process set forth at 41 U.S.C. 1707" to amend the Federal Acquisition Regulation (FAR). But the FAR Council guidance also directed federal agencies to implement the Executive Order before this rulemaking was completed.

24. Because the FAR Council and other federal agencies began implementation of the Executive Order without completing the rulemaking process, the University has had no opportunity to share its concerns regarding the new terms, including the significant uncertainty and substantial costs, burdens, and harms they cause. Nor does the University have the benefit of federal agencies' responses to public comments, which might have helped clarify the meaning of the new terms. The significant uncertainty and substantial costs, burdens, and harms caused by Executive Order 14398 could have been mitigated, and perhaps avoided altogether, had the new terms been issued pursuant to lawful procedures.

25. As another example, the FAR Council guidance explains the FAR Council "is seeking clearance from the Office of Management and Budget (OMB) under the Paperwork Reduction Act of 1995 (PRA) for the information collections related to FAR clause 52.222-90." The

guidance provides that "agencies will be expected to enforce full compliance with these requirements" once OMB approves the information collection under the PRA, but does not address whether agencies may enforce compliance before that time, and in any event requires the immediate insertion of the new contract terms in new and existing contracts.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on July 14, 2026, in Minneapolis, Minnesota.

Joanne Billings MD MPH

Joanne Billings, MD, MPH
Interim Vice President for Research and Innovation