Exhibit 16

Declaration of Bonnie Nagel, PhD (Oregon)

**DECLARATION OF BONNIE NAGEL, PH.D.**

I, Bonnie Nagel, Ph.D., declare as follows:

1. I am the Interim Chief Research Officr and Executive Vice President, Oregon Health & Science University. I make this declaration based on personal knowledge and information provided to me in my official capacity. If called as a witness, I could and would testify competently to the matters set forth below.

**Professional and Agency Background**

2. I am currently employed by Oregon Health and Science University ("OHSU") as Interim Chief Research Officer and Executive Vice President and Professor of Psychiatry in the OHSU Division of Clinical Psychology.

3. OHSU's statutory mission is to provide healthcare, education and conduct research that supports the people of the State of Oregon.

4. As the Interim Chief Research Officer and Executive Vice President, my duties include oversight of research strategy, research administration, as well as collaborations and entrepreneurship, technology transfer, and university shared research services.

**Federal Contracting Activities of [Agency]**

5. OHSU regularly and routinely supplies services to the federal government under procurement contracts with federal agencies. OHSU also regularly and routinely supplies services as a subcontractor on procurement contracts with federal agencies.

6. For example, OHSU is party to contracts with the federal agencies for research projects and services, lab services, and physician services, including but not limited to:

   a. U.S. Army Medical Research Acquisition Activity contract to develop a 3D imaging platform for the anterior eye that is suitable for field hospitals

and combat environment. Awarded $391,743 for the period October 1, 2024 – September 30, 2026.

b. The Department of Health and Human Services ("DHHS") Centers for Medicare & Medicaid Services subcontract through Washington State Health Care Authority to be an Independent External Evaluator for HCA's Section 1115 Medicaid Transformation demonstration project (Transformation MTP 2.0) with the federal Centers for Medicare and Medicaid Services (CMS). Awarded $6,478,824 for the period July 1, 2024 – June 30, 2027.

c. U.S. Army Medical Research Acquisition Activity to study postural motor activation deficits after mTBI translating laboratory findings to clinical care. Awarded $604,323 for the period September 1, 2025 – August 31, 2029.

d. U.S. Department of Veterans Affairs ("VA") project to improve care coordination for Rural Veterans: Advancing Toolkits and Supporting VA Social Workers. Awarded $249,000 for the period September 25, 2025 – September 24, 2026.

e. DHHS Advanced Research Projects Agency for Health through DHHS Advanced Research Projects Agency for Health project to develop new and improved vaccines against National Institutes of Health ("NIH") priority pathogens. Awarded $331,982 for the period August 27, 2024 – August 26, 2029.

f. U.S. Army Medical Research Acquisition Activity through Northwestern University multi-institutional Phase 2 Trial of Fresh Frozen Plasma (FFP) in Patients with Moderate to Severe Traumatic Brain Injury. Awarded 432,003 for the period August 15, 2024 – August 14, 2026.

g. VA contract for the provision of cardiac surgery physician professional services. Awarded $2,399,446 for the period December 1, 2023 – November 30, 2028.

7. OHSU regularly and routinely seeks opportunities for new contracts with federal agencies, including, but not limited to:

a. VA contract to provide medical case management to VA patients living with HIV to ensure they access medical care and medications and other supports to help them achieve viral suppression. Proposed total $16,599.00. Another study to make veterans crisis line data more Findable, Accessible, Interoperable, and Reusable to increase identification of Veterans at acute risk for suicide. Proposed total $750,000.

b. Department of Defense clinical trial to test impacts of a certain compound in patients with moderate to severe traumatic brain injury. Proposed total $323,400.

c. DHHS NIH study to examine the ability of monoclonal antibodies against measles virus to protect against measles infection. Proposed total $1,005,668.

d. DHHS Agency for Healthcare Research and Quality study to identify and map the state of current research examining the associations between changes in Consumer Assessment of Healthcare Providers and Systems scores and changes in health and health care outcomes. Proposed total $250,000.

e. VA solicitation for neurosurgery physician services

8. In OHSU's FY25, OHSU received 33 contracts and subcontracts with 24 different federal agencies worth approximately $25 million, and has approximately 48 other contracts with the VA worth approximately $8 million annually. Each year, OHSU typically enters approximately 40 new contracts worth an average of $20.5 million per fiscal year.

9. The federal agencies for which OHSU is currently working as a contractor or subcontractor or seeking new contracts include:

**Active Contracts**
DHHS Agency for Healthcare Research and Quality
DHHS NIH National Institute of Allergy & Infectious Disease
DHHS NIH National Institute of Child Health
DHHS Office of the National Coordinator for Health Information
U.S. Army Medical Research Acquisition Activity
U.S. Department of Veterans Affairs

**Active Subcontracts**
DHHS Advanced Research Projects Agency for Health
DHHS ASPR Biomedical Advanced Research and Development Authority
DHHS CDC Public Health Emergency Preparedness
DHHS Centers for Disease Control and Prevention
DHHS Centers for Medicare & Medicaid Services
DHHS Food and Drug Administration
DHHS HRSA HIV/AIDS Bureau
DHHS National Institutes of Health
DHHS NIH National Cancer Institute
DHHS NIH National Heart, Lung, and Blood Institute
DHHS NIH National Institute of Allergy & Infectious Disease
DHHS NIH National Institute of Child Health
DHHS NIH National Library of Medicine

DHHS Substance Abuse and Mental Health Service Administration
DOD Strategic Environmental Research and Development Program
Office of National Drug Control Policy
U.S. Army Medical Research Acquisition Activity
U.S. Department of Defense
U.S. Department of Energy
U.S. Department of the Navy

**Pending Contracts**
DHHS Agency for Healthcare Research and Quality
DOE Office of Science
U.S. Department of Veterans Affairs

**Pending Subcontracts**
Department of Defense
DHHS ASPR Biomedical Advanced Research and Development Authority
DHHS National Institutes of Health
DHHS NIH National Institute on Drug Abuse

## Executive Order 14398

10. I understand that on March 26, 2026, President Trump issued Executive Order 14398, Addressing DEI Discrimination by Federal Contractors, 91 Fed. Reg. 16,147 (Mar. 26, 2026). The order directs federal agencies to include terms in all their contracts barring contractors from "engag[ing] in any racially discriminatory DEI activities," defined as "disparate treatment based on race or ethnicity in the recruitment, employment . . . , contracting . . . , program participation, or allocation or deployment of an entity's resources." Under the terms, contractors or subcontractors not in compliance with this prohibition may be subject to contract cancellation and debarment from future contracts. The terms also require contractors to "furnish all information and reports, including providing access to books, records, and accounts" for purposes of ascertaining compliance. The terms state, "The contractor recognizes that compliance with the requirements of this clause are material to the Government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code (False Claims Act)."

11. I understand that on or about April 20, 2026, the FAR Council issued a memorandum to agency procurement officers with instructions on how to implement Executive Order 14398. The memorandum directs agencies to issue class deviations under FAR subpart 1.4 to incorporate the contract terms and other requirements of Executive Order 14398. The memorandum further directs agencies to start using the contract terms prescribed by Executive Order 14398 in new contracts by April 24, 2026, and to seek to modify existing contracts with the contract terms prescribed by Executive Order 14398 by July 24, 2026. These new terms are numbered FAR 52.222-90, Addressing DEI Discrimination by Federal Contractors, though they have not yet been officially incorporated into the Federal Acquisition Regulation. The memorandum directs that, "If a contractor refuses to agree to a bilateral modification, the contracting officer should consider whether, absent the modification, the contract no longer meets the agency's needs and should therefore be terminated for convenience."

12. I understand that many federal agencies have issued class deviations to implement Executive Order 14398. Through these class deviations, the agencies have directed contracting officers to use the terms prescribed by Executive Order 14398, including the clause found at FAR 52.222-90, Addressing DEI Discrimination by Federal Contractors.

13. In light of Executive Order 14398, the FAR Council memorandum, and the class deviations described above, I expect that all OHSU federal contracts and subcontracts will be made subject to the order's terms in the immediate future, and thus OHSU will be required to agree to the contract term or risk losing the contracts or contracting opportunities.

14. OHSU has already been asked to sign or assure compliance with the new contract terms prescribed by Executive Order 14398 in connection with contracts or subcontracts for the VA and U.S. Department of the Army. For example, on May 7, 2026, OHSU received an

amendment to certain contracts with the VA to incorporate the terms prescribed by Executive Order 14398 requesting signature within 5 days. OHSU asked for an extension for review, but the VA ultimately stated they needed the amendment signed on June 16, 2026, making reference to termination of the contract if the amendment was not signed. On May 20, 2026, OHSU received a bilateral modification to add the terms prescribed by Executive Order 14398 from the VA to a separate contract with a signing deadline of June 12, 2026. The VA extended the deadline to July 9, 2026, referring to that date as a critical deadline. On May 26, 2026, OHSU received a bilateral modification request to add these terms for a U.S. Department of the Army award through Booz Allen, in which OHSU assists with study design, data analysis, and manuscript writing on a project examining the role of military parental leave in the onset and progression of postpartum mental health among military-connected mothers. Despite informing Booz Allen that OHSU was reviewing all of these FAR changes, Booz Allen issued a stop work order on June 10, 2026 because OHSU had not yet signed the modification. We are concerned that other federal agencies or subcontractors could follow suit with threats to stop work or other actions that place our ongoing work, and funding to support our employees, in jeopardy.

15. Notwithstanding the deep concerns described below—including the significant uncertainty and substantial costs, burdens, and harms caused by Executive Order 14398, coupled with the significant and unprecedented penalties Executive Order 14398 would impose—OHSU has in at least two cases agreed, due to risk of termination, to the new contract terms prescribed by Executive Order 14398, even though the federal government has not provided a clear explanation of what, if anything, the terms require from contractors beyond compliance with existing federal antidiscrimination law. OHSU has also reached out to Booz Allen indicating

OHSU would sign the requested modification, but has not received a response back from Booz Allen.

16. OHSU has in some case cases not agreed at this time to the new contract terms, in light of those deep concerns.

**Executive Order 14398's Costs, Burdens, and Harms**

17. I am deeply concerned that the contract terms prescribed by Executive Order 14398, if included in our agency's federal contracts, will lead to significant uncertainty and create substantial costs, burdens, and harms for OHSU and our State.

18. Executive Order 14398's prohibition of "racially discriminatory DEI activities" is unclear. The order and the contract terms adopted to implement the order define "racially discriminatory DEI activities" to mean "disparate treatment based on race or ethnicity in the recruitment, employment (e.g., hiring, promotions), contracting (e.g., vendor agreements), program participation, or allocation or deployment of an entity's resources." The order in turn defines "program participation" to mean "membership or participation in, or access or admission to: training, mentoring, or leadership development programs; educational opportunities; clubs; associations; or similar opportunities that are sponsored or established by the contractor or subcontractor."

19. Other federal and state laws applicable to OHSU and other contract terms prescribed by the federal government in the past have previously addressed the subject of racial discrimination. The new Executive Order and the agency actions implementing it do not explain how the new contract terms relate to those earlier laws and contract terms, nor do they explain whether the Executive Order imposes requirements that are different from those earlier laws and contract terms.

20. As a result, the inclusion of the new terms in our agency's federal contracts will create significant uncertainty going forward. It is expected that this uncertainty could create additional costs associated with defending OHSU programs and activities or ensuring compliance, which may include consideration of the provision of the terms in relevant subcontracts.

21. Executive Order 14398's prohibition of racially discriminatory DEI activities by contractors *or their subcontractors* and the requirement to report "any subcontractor's known or reasonably knowable conduct that *may* violate this clause" (emphasis added) creates additional compliance and monitoring costs for OHSU—especially because the prohibition of "racially discriminatory DEI activities" is unclear as explained above.

22. The lack of clarity in Executive Order 14398 and the associated contract terms is especially harmful given that the Executive Order directs federal agencies to "cancel, terminate, suspend, or cause to be cancelled, terminated, or suspended" any contract for the contractor or subcontractor's noncompliance—especially because the prohibition of "racially discriminatory DEI activities" is unclear as explained above would create substantial risk when OHSU agrees to the new terms. Termination of OHSU's contracts with federal agencies for noncompliance could eliminate a critical revenue stream for OHSU, impact OHSU's participation in research projects, result in research funding terminating mid-project. Termination of contracts for physicians services could result in financial harm if the physicians dedicated to providing services under those contracts were unable to be deployed to provide services at OHSU.

23. Executive Order 14398's requirement that federal agencies "take appropriate action to suspend and debar" contractors or subcontractors for noncompliance—especially because the prohibition of "racially discriminatory DEI activities" is unclear as explained above

will create substantial risk associated with such unprecedented penalties, when agreeing to the new terms. Suspension or debarment would have significant impact on OHSU's ability to effectively and sustainably operate as the only public academic medical center in the State of Oregon.

24. The contract term under which the contractor "recognizes that compliance with the requirements of this clause are material to the Government's payment decisions for purposes of" the False Claims Act is harmful because it threatens lawsuits under the False Claims Act. States would face costs associated with defending lawsuits under the False Claims Act even if they were to prevail in those lawsuits.

**Executive Order 14398's Procedural Harms**

25. The FAR Council guidance explains that the FAR Council "intends to conduct rulemaking pursuant to the notice and comment process set forth at 41 U.S.C. 1707" to amend the Federal Acquisition Regulation (FAR). But the FAR Council guidance also directed federal agencies to implement the Executive Order before this rulemaking was completed.

26. Because the FAR Council and other federal agencies began implementation of the Executive Order without the required process, OHSU has had no opportunity to share its concerns regarding the new terms, including the significant uncertainty and substantial costs, burdens, and harms they cause. Nor does OHSU have the benefit of federal agencies' responses to public comments, which might have helped clarify the meaning of the new terms. The significant uncertainty and costs, burdens, and harms caused by Executive Order 14398 could have been mitigated, and perhaps avoided altogether, had the new terms been issued pursuant to lawful procedures.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on July 17, 2026, at Portland, Oregon.

Bonnie Nagel, Ph.D.