Exhibit 17

Declaration of Bethany D. Jenkins (Rhode Island)

# DECLARATION OF BETHANY D. JENKINS

I, Bethany Jenkins, declare as follows:

1. I am over the age of eighteen and understand the obligations of an oath. I am the Vice President for Research and Economic Development at the University of Rhode Island. I have held this role since 2023. I make this declaration based on personal knowledge and on my review of information and records gathered by agency staff.

2. I make this declaration based on personal knowledge and information provided to me in my official capacity. If called as a witness, I could and would testify competently to the matters set forth below.

## Professional and Agency Background

3. I am currently employed by the University of Rhode Island as the Vice President for Research and Economic Development (VPRED).

4. The University of Rhode Island (URI) is a public institution of higher education established under the laws of the State of Rhode Island. For more than 130 years, URI has been dedicated to serving the people and communities of Rhode Island as the state's flagship public research university. URI is the state's land and sea grant institution, and is a Carnegie-designated Research 1 institution

5. As VPRED, my duties include oversight of all research operations across URI, including Sponsored Projects, Research Development, Research Compliance, Research Security, Office of Intellectual Property, and Small Business Development.

## Federal Contracting Activities of URI

6. The University of Rhode Island (URI) regularly and routinely supplies goods and services to the federal government under procurement contracts with federal agencies.

7. For example, URI is party to the following present contracts, representing some of our portfolio:

a. Department of Defense: Strategic Environmental Research & Development Program: "Smart Incineration," award number W912HQ25P0024 ($329,000);

b. Department of Defense: Strategic Environmental Research & Development Program: "From the bottom up: Deciphering bioaccumulation and biomagnification of PFAS in plankton," award number W912HQ23C0014 ($1,226,200);

c. Department of Defense/Army: "Leapfest," award number W912LD26PA005 ($127,815.60);

d. Department of Defense/Navy, "Skills assessment for Navy as defined by SWOS objectives," award number N0018925PR049 ($25,000)

8. URI regularly and routinely seeks opportunities for new federal contract work. For example: We have pending proposals with the Department of Defense, Department of Energy, Department of Justice, and Department of Health and Human Services, among others.

9. In all, URI has at least 7 contracts with 4 different federal agencies worth approximately 3 million dollars, and is a subcontractor on at least 12 contracts with 4 different federal agencies worth approximately 3 million dollars.

10. The federal agencies for which URI is currently working as a contractor or subcontractor or seeking new contracts include: Department of Defense, National Oceanic Atmospheric Administration, Department of Energy, and Department of Commerce.

**Executive Order 14398**

11. I understand that on March 26, 2026, President Trump issued Executive Order 14398, Addressing DEI Discrimination by Federal Contractors, 91 Fed. Reg. 16,147 (Mar. 26, 2026). The order directs federal agencies to include terms in all their contracts barring contractors from "engag[ing] in any racially discriminatory DEI activities," defined as "disparate treatment based on race or ethnicity in the recruitment, employment . . . , contracting . . . , program participation, or allocation or deployment of an entity's resources." Under the terms, contractors or subcontractors not in compliance with this prohibition may be subject to contract cancellation and debarment from future contracts. The terms also require contractors to "furnish all information and reports, including providing access to books, records, and accounts" for purposes of ascertaining compliance. The terms state, "The contractor recognizes that compliance with the requirements of this clause are material to the Government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code (False Claims Act)."

12. I understand that on or about April 20, 2026, the FAR Council issued a memorandum to agency procurement officers with instructions on how to implement Executive Order 14398. The memorandum directs agencies to issue class deviations under FAR subpart 1.4 to incorporate the contract terms and other requirements of Executive Order 14398. The memorandum further directs agencies to start using the contract terms prescribed by Executive Order 14398 in new contracts by April 24, 2026, and to seek to modify existing contracts with the contract terms prescribed by Executive Order 14398 by July 24, 2026. These new terms are numbered FAR 52.222-90, Addressing DEI Discrimination by Federal Contractors, though they have not yet been officially incorporated into the Federal Acquisition Regulation. The memorandum directs that, "If a contractor refuses to agree to a bilateral modification, the contracting officer should consider

whether, absent the modification, the contract no longer meets the agency's needs and should therefore be terminated for convenience."

13. I understand that many federal agencies have issued class deviations to implement Executive Order 14398. Through these class deviations, the agencies have directed contracting officers to use the terms prescribed by Executive Order 14398, including the clause found at FAR 52.222-90, Addressing DEI Discrimination by Federal Contractors.

14. In light of Executive Order 14398, the FAR Council memorandum, and the class deviations described above, I expect that all URI federal contracts and subcontracts will be made subject to the order's terms in the immediate future, and thus URI will be required to agree to the contract term or risk losing the contracts or contracting opportunities.

15. URI has already been asked to sign or assure compliance with the new contract terms prescribed by Executive Order 14398 in connection with contracts or subcontracts for Department of Defense.

a. For example, on June 30, 2026, we received a modification request for award W912HQ23C0014: "*We are required to add RFO Clause 52.222-90 to the subject contract per Executive Order 14398. Please review and return a signed copy of the modification*" from the Department of Defense (Army). The description of modification included: *This modification adds clause RFO 52.222-90, Addressing DEI Discrimination by Federal Contractors, in accordance with DFARS CD 2026-O0040, Revision 1. In consideration of the modification agreed to herein, the contractor hereby releases the Government from any and all liability, demands, obligations, or claims arising under or by virtue of this modification. All other terms and conditions remain the same.*

b. On June 15, 2026, we received a modification request for award W912HQ25P0024f from the Department of Defense (Army), stating: "A*s a result of Executive Order 14398, Addressing DEI Discrimination by Federal Contractors, HQ USACE has directed implementation of USACE Alert 26-HQ-017, which requires incorporation of RFO 52.222-90, Addressing DEI Discrimination by Federal Contractors, into all applicable existing contracts. The implementation of this Executive Order is being tracked at the highest level and requires your immediate attention. I kindly ask that you please complete your review and return the partially executed MOD in a timely manner. A copy of the fully executed MOD will be provided for your record once endorsed by the Contracting Officer."* The description of modification stated: *Modification P00002 is issued to add clause RFO 52.222-90, Addressing DEI Discrimination by Federal Contractors, in accordance with DFARS CD 2026-O0040, Revision 1 in order to implement Executive Order (EO) 14398, titled "Addressing DEI Discrimination by Federal Contractors." In consideration of the modification agreed to herein, the contractor hereby releases the Government from any and all liability, demands, obligations, or claims arising under or by virtue of this modification. Authority for this modification is RFO 52.243-1 Changes Fixed Price Alt V. This modification will be executed bilaterally. All other terms and conditions remain unchanged.*

c. On June 26, 2026, we received a new award distribution, W912LD26PA005, Department of Defense (Army) which included stated: "*The Leapfest award is attached for distribution. Please confirm receipt at your earliest convenience.*" The award notice included the FAR Clauses Incorporated by Reference included: 52-

222.90, Addressing DEI Discrimination by Federal Contractors (Deviation 2026-O0040, Revision 1). This award did not need to be signed.

d. On July 5, 2026, we received a communication related to the modification request for award W912HQ25P0024 from the Department of Defense (Army), stating: *"The included release language represents a standardized agency requirement prescribed directly by our Headquarters and Department of the Army. Since these terms and the specific release language are mandated at the agency level, we are unable to authorize alterations. Please note – the NLT date for this MOD to be executed is 24 July 26. If you choose to sign the modification, I ask that you please return it a few days prior to that date to allow time for the KO to execute the modification."*

e. On July 6, 2026, we received a communication related to the modification request for award W912HQ23C0014 from the Department of Defense (Army), stating in part: *"Our agency is requiring the language in the guidance that came down us from HQ Policy Branch. The mod needs to be signed as is or the contract will be subject to termination at the Government's convenience if the modification is refused and or not signed by 24 July."*

**Executive Order 14398's Costs, Burdens, and Harms**

16. I am deeply concerned that the contract terms prescribed by Executive Order 14398, if included in our agency's federal contracts, will lead to significant uncertainty and create substantial costs, burdens, and harms for URI and our State.

17. Executive Order 14398's prohibition of "racially discriminatory DEI activities" is unclear. The order and the contract terms adopted to implement the order define "racially discriminatory

DEI activities" to mean "disparate treatment based on race or ethnicity in the recruitment, employment (e.g., hiring, promotions), contracting (e.g., vendor agreements), program participation, or allocation or deployment of an entity's resources." The order in turn defines "program participation" to mean "membership or participation in, or access or admission to: training, mentoring, or leadership development programs; educational opportunities; clubs; associations; or similar opportunities that are sponsored or established by the contractor or subcontractor."

18. Other federal and state laws applicable to URI and other contract terms prescribed by the federal government in the past have previously addressed the subject of racial discrimination. The new Executive Order and the agency actions implementing it do not explain how the new contract terms relate to those earlier laws and contract terms, nor do they explain whether the Executive Order imposes requirements that are different from those earlier laws and contract terms.

19. As a result, the inclusion of the new terms in our agency's federal contracts would create significant uncertainty going forward. This uncertainty would create additional costs associated with ensuring compliance. There is a significant amount of time taken away from core mission functions of supporting teaching and research to continue scrutinizing every activity and website description of what we believe is constitutionally and statutorily permissible activity attempting to determine if it will comply with the frequently changing, overly broad and vague definitions in the Executive Order, which may capture programs supporting veterans, Pell grant recipients, and first generation students and colleagues. Moreover, staff time could be redirected from ensuring compliance with other regulatory requirements, potentially around human or animal subjects research, research security measures, or other federal, state, and local compliance measures.

20. The lack of clarity in Executive Order 14398 and the associated contract terms is especially harmful given that the Executive Order directs federal agencies to "cancel, terminate, suspend, or cause to be cancelled, terminated, or suspended" any contract for the contractor or subcontractor's noncompliance—especially because the prohibition of "racially discriminatory DEI activities" is unclear as explained above—will create substantial risk should URI agree to the new terms. URI would face significant financial challenges if all federal contracts were terminated, resulting in layoffs, ceased funding for graduate students and post doctoral students, and economic hardship to the state.

21. Executive Order 14398's requirement that federal agencies "take appropriate action to suspend and debar" contractors or subcontractors for noncompliance—especially because the prohibition of "racially discriminatory DEI activities" is unclear as explained above— would create substantial risk associated with such unprecedented penalties, should URI agree to the new terms. URI would face significant financial challenges if it were suspended or debarred from accepting federal contracts, resulting in layoffs, ceased funding for graduate students and post doctoral students, and economic hardship to the state.

22. The contract term under which the contractor "recognizes that compliance with the requirements of this clause are material to the Government's payment decisions for purposes of" the False Claims Act (FCA) creates significant risk due to the potential for an FCA investigation or qui tam complaint against the institution. In either case, URI would face costs associated with defending potentially lengthy government investigations and/or lawsuits under the FCA even if it were to persuade the government not to intervene in an FCA action, or otherwise prevail in those lawsuits. Any defendant facing an FCA claim absorbs substantial, and often unrecoverable, attorney's fees, investigative costs, and litigation expenses; operational disruption,

including, in some cases, potential loss of federal funding during the course of the FCA litigation; and reputational damage. Moreover, the language arguably requires that the institution be factually or legally incorrect or inconsistent with the appropriate standard of materiality under the FCA as defined by the Supreme Court or other binding precedent.

**Executive Order 14398's Procedural Harms**

23. The FAR Council guidance explains that the FAR Council "intends to conduct rulemaking pursuant to the notice and comment process set forth at 41 U.S.C. 1707" to amend the Federal Acquisition Regulation (FAR). But the FAR Council guidance also directed federal agencies to implement the Executive Order before this rulemaking was completed.

24. Because the FAR Council and other federal agencies began implementation of the Executive Order without the required process, URI had no opportunity to share its concerns regarding the new terms, including the significant uncertainty and substantial costs, burdens, and harms they cause. Nor does URI have the benefit of federal agencies' responses to public comments, which might have helped clarify the meaning of the new terms. The significant uncertainty and substantial costs, burdens, and harms caused by Executive Order 14398 could have been mitigated, and perhaps avoided altogether, had the new terms been issued pursuant to lawful procedures.

25. As another example, the FAR Council guidance explains the FAR Council "is seeking clearance from the Office of Management and Budget (OMB) under the Paperwork Reduction Act of 1995 (PRA) for the information collections related to FAR clause 52.222-90." The guidance provides that "agencies will be expected to enforce full compliance with these requirements" once OMB approves the information collection under the PRA, but does not address whether agencies

may enforce compliance before that time, and in any event requires the immediate insertion of the new contract terms in new and existing contracts.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on July 15, 2026 at Kingston, RI.

**Bethany D. Jenkins, Ph.D.**