Exhibit 18
Declaration of Genevieve M. Allaire Johnson (Rhode Island)

**DECLARATION OF GENEVIEVE M. ALLAIRE JOHNSON**

I, Genevieve M. Allaire Johnson, declare as follows:

1. I am the Associate Director of the Division of Healthcare Quality and Safety within the Rhode Island Department of Health. I make this declaration based on personal knowledge and information provided to me in my official capacity. If called as a witness, I could and would testify competently to the matters set forth below.

**Professional and Agency Background**

2. I am currently employed by the Rhode Island Department of Health as the Associate Director of the Division of Healthcare Quality and Safety.

3. The Rhode Island Department of Health is responsible for a wide range of areas in disease prevention and protecting the health and safety of all Rhode Islanders.

4. As the Associate Director of the Division of Healthcare Quality and Safety within the Rhode Island Department of Health, my duties include, among other matters, managing the Center for Health Facilities Regulation which contracts with federal agencies for various services including inspection of facilities and equipment to assure quality standards.

**Federal Contracting Activities of the Rhode Island Department of Health**

5. The Rhode Island Department of Health regularly and routinely supplies services to the federal government under procurement contracts with federal agencies.

6. For example, the Rhode Island Department of Health is party to the following present contract:

7. The Division of Healthcare Quality and Safety (HQS) contracts with the United States Food and Drug Administration (FDA) pursuant to the Mammography Quality Standards Act of 1992 (MQSA) to ensure women receive high quality mammography for early breast cancer

detection by requiring the establishment of a federal certification and inspection program for mammography facilities. The MQSA Program Contract is intended to obtain State assistance to perform inspections of certified non-Federal mammography facilities to document and report compliance with mammography quality standards issued under 21 CFR Part 900. The Division of HQS contracts with the FDA to inspect non-federal mammography facilities that have been FDA certified to perform mammography under the MQSA using inspectors from the state who have attained and continue to maintain an active FDA MQSA certification status. The total contract is $501,949.66 for a base period of performance for 12 months from 7/15/22 through 7/14/23, with 4 one-year options to extend, followed by 1 six-month option to extend, for a period ending 1/14/28.

8. The Rhode Island Department of Health regularly and routinely seeks opportunities for new federal contract work.

9. For example, the Rhode Island Department of Health receives over a half million dollars for six (6) contracts in which RIDOH conducts work on behalf of the federal government: Food and Drug Administration - Human Food Inspection ($88,983) and Mammography Quality Standards Act (MQSA) ($65,591); Social Security Administration - Electronic Death Records ($97,166) and Enumeration at Birth ($12,167), Centers for Disease Control and Prevention - Vital Statistics Cooperative Program ($224,112) and National Death Index ($8,754).

10. The federal agencies for which the Rhode Island Department of Health is currently working as a contractor or subcontractor or seeking new contracts include: Food and Drug Administration, Social Security Administration, and Centers for Disease Control and Prevention.

**<u>Executive Order 14398</u>**

11. I understand that on March 26, 2026, President Trump issued Executive Order 14398, Addressing DEI Discrimination by Federal Contractors, 91 Fed. Reg. 16,147 (Mar. 26, 2026). The order directs federal agencies to include terms in all their contracts barring contractors from "engag[ing] in any racially discriminatory DEI activities," defined as "disparate treatment based on race or ethnicity in the recruitment, employment . . . , contracting . . . , program participation, or allocation or deployment of an entity's resources." Under the terms, contractors or subcontractors not in compliance with this prohibition may be subject to contract cancellation and debarment from future contracts. The terms also require contractors to "furnish all information and reports, including providing access to books, records, and accounts" for purposes of ascertaining compliance. The terms state, "The contractor recognizes that compliance with the requirements of this clause are material to the Government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code (False Claims Act)."

12. I understand that on or about April 20, 2026, the FAR Council issued a memorandum to agency procurement officers with instructions on how to implement Executive Order 14398. The memorandum directs agencies to issue class deviations under FAR subpart 1.4 to incorporate the contract terms and other requirements of Executive Order 14398. The memorandum further directs agencies to start using the contract terms prescribed by Executive Order 14398 in new contracts by April 24, 2026, and to seek to modify existing contracts with the contract terms prescribed by Executive Order 14398 by July 24, 2026. These new terms are numbered FAR 52.222-90, Addressing DEI Discrimination by Federal Contractors, though they have not yet been officially incorporated into the Federal Acquisition Regulation. The memorandum directs that, "If a contractor refuses to agree to a bilateral modification, the contracting officer should consider

whether, absent the modification, the contract no longer meets the agency's needs and should therefore be terminated for convenience."

13. I understand that many federal agencies have issued class deviations to implement Executive Order 14398. Through these class deviations, the agencies have directed contracting officers to use the terms prescribed by Executive Order 14398, including the clause found at FAR 52.222-90, Addressing DEI Discrimination by Federal Contractors.

14. In light of Executive Order 14398, the FAR Council memorandum, and the class deviations described above, I expect that all Rhode Island Department of Health federal contracts and subcontracts will be made subject to the order's terms in the immediate future, and thus the Rhode Island Department of Health will be required to agree to the contract term or risk losing the contracts or contracting opportunities.

**Executive Order 14398's Costs, Burdens, and Harms**

15. I am deeply concerned that the contract terms prescribed by Executive Order 14398, if included in our agency's federal contracts, would lead to significant uncertainty and create substantial costs, burdens, and harms for the Rhode Island Department of Health and our State.

16. Executive Order 14398's prohibition of "racially discriminatory DEI activities" is unclear. The order and the contract terms adopted to implement the order define "racially discriminatory DEI activities" to mean "disparate treatment based on race or ethnicity in the recruitment, employment (e.g., hiring, promotions), contracting (e.g., vendor agreements), program participation, or allocation or deployment of an entity's resources." The order in turn defines "program participation" to mean "membership or participation in, or access or admission to: training, mentoring, or leadership development programs; educational opportunities; clubs;

associations; or similar opportunities that are sponsored or established by the contractor or subcontractor."

17. Other federal and state laws applicable to the Rhode Island Department of Health and other contract terms prescribed by the federal government in the past have previously addressed the subject of racial discrimination. The new Executive Order and the agency actions implementing it do not explain how the new contract terms relate to those earlier laws and contract terms, nor do they explain whether the Executive Order imposes requirements that are different from those earlier laws and contract terms.

18. As a result, the inclusion of the new terms in our agency's federal contracts would create significant uncertainty going forward.

19. The lack of clarity in Executive Order 14398 and the associated contract terms is especially harmful given that the Executive Order directs federal agencies to "cancel, terminate, suspend, or cause to be cancelled, terminated, or suspended" any contract for the contractor or subcontractor's noncompliance—especially because the prohibition of "racially discriminatory DEI activities" is unclear as explained above—would create substantial risk should the Rhode Island Department of Health agree to the new terms. For example, the current contract between the Division of Healthcare Quality and Safety and the Food and Drug Administration pursuant to the Mammography Quality Standards Act of 1992 helps with the performance of inspections of certified non-Federal mammography facilities to document and report compliance with mammography quality standards issued under 21 CFR Part 900.

20. Executive Order 14398's requirement that federal agencies "take appropriate action to suspend and debar" contractors or subcontractors for noncompliance—especially because the prohibition of "racially discriminatory DEI activities" is unclear as explained above—would create

substantial risk associated with such unprecedented penalties, should the Rhode Island Department of Health agree to the new terms.

21. The contract term under which the contractor "recognizes that compliance with the requirements of this clause are material to the Government's payment decisions for purposes of" the False Claims Act is harmful because it threatens lawsuits under the False Claims Act. States would face costs associated with defending lawsuits under the False Claims Act even if they were to prevail in those lawsuits.

**Executive Order 14398's Procedural Harms**

22. The FAR Council guidance explains that the FAR Council "intends to conduct rulemaking pursuant to the notice and comment process set forth at 41 U.S.C. 1707" to amend the Federal Acquisition Regulation (FAR). But the FAR Council guidance also directed federal agencies to implement the Executive Order before this rulemaking was completed.

23. Because the FAR Council and other federal agencies began implementation of the Executive Order without the required process, the Rhode Island Department of Health has had no opportunity to share its concerns regarding the new terms, including the significant uncertainty and substantial costs, burdens, and harms they cause. Nor does the Rhode Island Department of Health have the benefit of federal agencies' responses to public comments, which might have helped clarify the meaning of the new terms. The significant uncertainty and substantial costs, burdens, and harms caused by Executive Order 14398 could have been mitigated, and perhaps avoided altogether, had the new terms been issued pursuant to lawful procedures.

24. As another example, the FAR Council guidance explains the FAR Council "is seeking clearance from the Office of Management and Budget (OMB) under the Paperwork Reduction Act of 1995 (PRA) for the information collections related to FAR clause 52.222-90." The guidance

provides that “agencies will be expected to enforce full compliance with these requirements” once OMB approves the information collection under the PRA, but does not address whether agencies may enforce compliance before that time, and in any event requires the immediate insertion of the new contract terms in new and existing contracts.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on Tuesday, July 14, 2026, at Providence, Rhode Island.

**Genevieve M. Allaire Johnson**