**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| STATE OF MARYLAND, et al.<br><br>Plaintiffs<br><br>v.<br><br>PETE HEGSETH, Secretary of Defense, et al.<br><br>Defendants. | Case No: 1:26-cv-02322-MJM |

**PLAINTIFF STATES' REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN OPPOSITION TO DEFENDANTS' CROSS MOTION TO DISMISS OR IN THE ALTERNATIVE FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS


PRELIMINARY STATEMENT ........ 1

BACKGROUND ........ 3

I. The parties' Statements of Undisputed Facts ........ 3

II. Lack of clarity in the Executive Order No. 14398 contract terms ........ 4

ARGUMENT ........ 5

I. Standards applicable to motions to dismiss and motions for summary judgment .. 5

II. The plaintiff States have standing because the defendant agencies have already imposed the contract terms on the States and other contractors, and the plaintiffs are "forced to do something they otherwise would not need to do." ........ 6

III. The plaintiffs' claims challenge rules and policies relating to contracting and therefore properly fall within the statutory jurisdiction of this Court. ........ 8

IV. The April 2026 FAR Council memorandum exceeds the FAR Council's authority and violates procedural requirements and substantive limits established by federal statutes and regulations. ........ 10

A. The April 2026 FAR Council memorandum qualifies as final agency action, but even if it does not, it is still reviewable under APA § 704. ..... 10

B. The FAR Council memorandum exceeded the FAR Council's statutory authority. ........ 14

C. The FAR Council memorandum violated the notice and comment requirements of 41 U.S.C. § 1707 and the parallel requirements of FAR subpart 1.5. ........ 16

D. The plaintiff States' Paperwork Reduction Act claims are ripe and are properly directed at final agency action. ........ 18

E. In light of the defendants' acknowledgement that the False Claims Act provisions do not make violations of the Executive Order No. 14398 contract terms "material," the plaintiff States no longer contend that those provisions conflict with 31 U.S.C. § 3729(b)(4). ........ 20

V. The class deviations issued by the defendant agencies, and those agencies' adoption of the contract terms prescribed by Executive Order No. 14398, are unlawful for many of the same reasons. ........ 20

VI. The Court should vacate the challenged actions and enjoin their implementation. ........ 22

VII. The Court should award summary judgment for the plaintiff States, but if it does not, there is no basis for dismissing the plaintiff States' claims challenging the defendants' actions as arbitrary or capricious. .................................................... 24

CONCLUSION ........................................................................................................ 29

PRELIMINARY STATEMENT ................................................................................... 1

BACKGROUND ........................................................................................................ 3

I. The parties' Statements of Undisputed Facts ........................................................ 3

II. Lack of clarity in the Executive Order No. 14398 contract terms .......................... 4

ARGUMENT ............................................................................................................ 5

I. Standards applicable to motions to dismiss and motions for summary judgment .. 5

II. The plaintiff States have standing because the defendant agencies have already imposed the contract terms on the States and other contractors, and the plaintiffs are "forced to do something they otherwise would not need to do." ..................... 6

III. The plaintiffs' claims challenge rules and policies relating to contracting and therefore properly fall within the statutory jurisdiction of this Court. .................... 8

IV. The April 2026 FAR Council memorandum exceeds the FAR Council's authority and violates procedural requirements and substantive limits established by federal statutes and regulations. ......................................................................... 10

A. The April 2026 FAR Council memorandum qualifies as final agency action, but even if it does not, it is still reviewable under APA § 704. ..... 10

B. The FAR Council memorandum exceeded the FAR Council's statutory authority. ............................................................................... 14

C. The FAR Council memorandum violated the notice and comment requirements of 41 U.S.C. § 1707 and the parallel requirements of FAR subpart 1.5. ............................................................................... 16

D. The plaintiff States' Paperwork Reduction Act claims are ripe and are properly directed at final agency action. ................................................. 18

E. In light of the defendants' acknowledgement that the False Claims Act provisions do not make violations of the Executive Order No. 14398 contract terms "material," the plaintiff States no longer contend that those provisions conflict with 31 U.S.C. § 3729(b)(4). .................................... 20

V. The class deviations issued by the defendant agencies, and those agencies' adoption of the contract terms prescribed by Executive Order No. 14398, are unlawful for many of the same reasons. .......... 20

VI. The Court should vacate the challenged actions and enjoin their implementation. .......... 22

VII. The Court should award summary judgment for the plaintiff States, but if it does not, there is no basis for dismissing the plaintiff States' claims challenging the defendants' actions as arbitrary or capricious. .......... 24

CONCLUSION .......... 29

**TABLE OF AUTHORITIES**

**CASES**

*Allina Health Servs. v. Sebelius*,
746 F.3d 1102 (D.C. Cir. 2014)........................................................................ 22

*Alphapointe v. Dep't of Veterans Affs.*,
416 F. Supp. 3d 1, 7 (D.D.C. 2019) ................................................................. 10

*Am. Acad. of Pediatrics v. FDA*,
379 F. Supp. 3d 461 (D. Md. 2019) ................................................................. 12

*Am. Fed'n of Tchrs. v. Dep't of Educ.*,
796 F. Supp. 3d 66 (D. Md. 2025) ................................................................... 19

*Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*,
597 F. Supp. 3d 213 (D.D.C. 2022) ................................................................. 13

*Appalachian Power Co. v. EPA*,
208 F.3d 1015 (D.C. Cir. 2000)........................................................................ 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................ 5

*Baldwin ex rel. Baldwin v. Dir., Off. of Workers' Comp. Programs*,
170 F.4th 273 (4th Cir. 2026)........................................................................... 21

*Bennett v. Spear*,
520 U.S. 154 (1997)...................................................................................... 12, 13

*Biden v. Nebraska*,
143 S. Ct. 2355 (2023)......................................................................................... 6

*Biden v. Texas*,
142 S. Ct. 2528 (2022)....................................................................................... 28

*Chamber of Com. of the U.S. v. Napolitano*,
648 F. Supp. 2d 726 (D. Md. 2009) ................................................................. 22

*Chamber of Com. of the U.S. v. Reich*,
74 F.3d 1322 (D.C. Cir. 1996).......................................................................... 16

*Chamber of Com. of the U.S.A. v. Lierman*,
151 F.4th 530 (4th Cir. 2025)........................................................................... 21

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
401 U.S. 402 (1971)........................................................................................... 25

*City of Arlington v. FCC*,
569 U.S. 290 (2013) .......... 16

*City of Columbus v. Trump*,
453 F. Supp. 3d 770 (D. Md. 2020) .......... 25

*Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*,
144 S. Ct. 2440 (2024) .......... 23

*Ctr. for Sci. in the Pub. Int. v. Perdue*,
438 F. Supp. 3d 546 (D. Md. 2020) .......... 22

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
140 S. Ct. 1891 (2020) .......... 27

*Doe v. Chao*,
435 F.3d 492 (4th Cir. 2006) .......... 23

*Does 4, 7, 22, 27, 28, & 29 v. Musk*,
Civil Action No. 25-0462-TDC, 2025 WL 2346258 (D. Md. Aug. 13, 2025) ...... 10

*Dow AgroSciences LLC v. Nat'l Marine Fisheries Serv.*,
637 F.3d 259 (4th Cir. 2011) .......... 12, 13

*FCC v. Prometheus Radio Project*,
141 S. Ct. 1150 (2021) .......... 25

*Franklin v. Massachusetts*,
505 U.S. 788 (1992) .......... 16

*Kentucky v. Biden*,
571 F. Supp. 3d 715 (E.D. Ky. 2021) .......... 14

*La Gloria Oil & Gas Co. v. United States*,
56 Fed. Cl. 211 (Fed. Cl. 2003) .......... 15

*Larson v. Valente*,
456 U.S. 228 (1982) .......... 7

*Mayes v. Biden*,
67 F.4th 921 (9th Cir.) .......... 14

*Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) .......... 27

*Nat. Res. Def. Council v. Wheeler*,
955 F.3d 68 (D.C. Cir. 2020) .......... 11

*Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*,
167 F.4th 86 (4th Cir. 2026) ........ 6, 7, 8

*Nat'l Insts. of Health v. Am. Pub. Health Ass'n* (*NIH*),
145 S. Ct. 2658 (2025) ........ 9

*Nat'l Mining Ass'n v. Jackson*,
768 F. Supp. 2d 34 (D.D.C. 2011) ........ 11, 12

*Navajo Refin. Co. v. United States*,
58 Fed. Cl. 200 (Fed. Cl. 2003) ........ 18

*Palisades Gen. Hosp. Inc. v. Leavitt*,
426 F.3d 400 (D.C. Cir. 2005) ........ 23

*People for the Ethical Treatment of Animals, Inc. v. Tabak*,
662 F. Supp. 3d 581 (D. Md. 2023) ........ 25

*Quarcoo v. Edlow*,
Civ. No. DLB-25-2484, 2026 WL 2491214 (D. Md. Aug. 25, 2026) ........ 25

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........ 6

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) ........ 7

*Sustainability Inst. v. Trump*,
165 F.4th 817 (4th Cir. 2026) ........ 8

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007) ........ 6

*Trump v. CASA, Inc.*,
145 S. Ct. 2540 (2025) ........ 24

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
578 U.S. 590 (2016) ........ 28

*United States v. Butler*,
297 U.S. 1 (1936) ........ 21

*United States v. J & E Salvage Co.*,
55 F.3d 985 (4th Cir. 1995) ........ 8

*United States v. Students Challenging Regul. Agency Procs. (SCRAP)*,
412 U.S. 669 (1973) ........ 7

*Vapor Tech. Ass'n v. Wooten*,
184 F.4th 329 (4th Cir. 2026) .......... 7

*Wis. Cent. Ltd. v. United States*,
585 U.S. 274 (2018) .......... 15

**CONSTITUTIONAL PROVISIONS**

U.S. Const. art. III .......... 1, 6

**FEDERAL STATUTES**

3 U.S.C. § 301 .......... 16

31 U.S.C. § 3729(b)(4) .......... 20

41 U.S.C. § 1303(d) .......... 15

41 U.S.C. § 1707 .......... passim

41 U.S.C. § 1707(a)(1) .......... 16

41 U.S.C. § 1707(a)(1)(B) .......... 17

41 U.S.C. § 1707(a)(1)(B)(i) .......... 17

41 U.S.C. § 1707(a)(1)(B)(ii) .......... 17

Administrative Procedure Act (APA), 5 U.S.C. §§ 551–559, 701–706 .......... passim

5 U.S.C. § 702 .......... 23

5 U.S.C. § 703 .......... 23

5 U.S.C. § 704 .......... 10, 13, 14

5 U.S.C. § 706(2)(A) .......... 25

Contract Disputes Act, 41 U.S.C. §§ 7101–7109 .......... 2, 8

41 U.S.C. § 7104 .......... 8

Paperwork Reduction Act, 44 U.S.C. §§ 3501–3521 .......... 18, 19, 21

44 U.S.C. § 3502(3)(A)(i) .......... 19

44 U.S.C. § 3502(13) .......... 19

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17 .......... 4, 17

Tucker Act, 28 U.S.C. § 1491(a) ........ 8

**EXECUTIVE ORDERS**

Exec. Order No. 11246, Equal Employment Opportunity, 3 C.F.R. 339 (1964–1965) . 3, 4, 26

Exec. Order No. 14173, Ending Illegal Discrimination and Restoring Merit-Based Opportunity, 90 Fed. Reg. 8633 (Jan. 21, 2025) ........ 4, 26

Exec. Order No. 14398, Addressing DEI Discrimination by Federal Contractors, 91 Fed. Reg. 16147 (Mar. 26, 2026) ........ passim

**FEDERAL REGULATIONS**

Federal Acquisition Regulation, 48 C.F.R. ch. 1 ........ passim

48 C.F.R. § 1.105-1 ........ 15

48 C.F.R. § 1.402 ........ 21

48 C.F.R. subpart 1.5 ........ 16, 21

**FEDERAL RULES**

Fed. R. Civ. P. 56(c) ........ 3

Fed. R. Civ. P. 56(e) ........ 3

## PRELIMINARY STATEMENT

The plaintiff States brought this suit because the federal defendants rolled out the new contract terms prescribed by Executive Order No. 14398,[1] and have threatened harsh penalties for violating the terms, without vetting the terms through the public process required by law and without explaining how the terms differ from past or existing antidiscrimination requirements governing federal contractors. The defendants argue that the contract terms are sufficiently clear because contractors are familiar with existing laws against racial discrimination. But the defendants have stated that the new contract terms go beyond requiring compliance with those existing laws, and they have so far refused to specify *how* they go beyond existing laws—that is, what other conduct the contract terms are intended to reach that is not already prohibited by existing federal civil rights laws. The defendants' obfuscation has sown confusion and fear in the federal contracting community and chilled lawful efforts to prevent and remedy discrimination.

While this lack of clarity is what spurred the plaintiffs to file suit, the Court does not need to decide whether the contract terms are sufficiently clear, because the plaintiffs' present motion for summary judgment turns on issues of law and authority that do not depend on the meaning of the contract terms. The arguments presented in the defendants' opposition and cross motion[2] misread the plain text of the applicable statutes and regulations, and they rest on mistaken interpretations of law.

The Court has jurisdiction over the plaintiff States' claims. The plaintiff States are directly injured by the defendants' actions and meet the Article III requirement of standing because they are frequent participants in federal contracting, and they must now agree to the

[1] Exec. Order No. 14398, Addressing DEI Discrimination by Federal Contractors, 91 Fed. Reg. 16147 (Mar. 26, 2026).

[2] Defs.' Opp'n to Pls.' Mot. for Partial Summ. J. and Cross-Mot. to Dismiss or in the Alternative for Partial Summ. J. (Defs.' Mem.), ECF Nos. 107, 108.

contract terms to obtain and retain federal contracts. Neither the Tucker Act, 28 U.S.C. § 1491(a), nor the Contract Disputes Act, 41 U.S.C. §§ 7101–7109, prevents the Court from hearing this case, because the plaintiff States are not challenging violations of contracts; they are challenging violations of statutes and regulations.

On the merits, the challenged actions of the Federal Acquisition Regulatory Council (FAR Council) and the other defendant agencies are unlawful for the reasons discussed in the plaintiffs' motion for summary judgment.[3] The defendants' argument that the FAR Council memorandum did not impose requirements beyond the Executive Order disregards several specific directives contained in the memorandum. And the defendants' other arguments conflict with the text of the statutes and regulations the plaintiff States cited in their motion.

The Court should grant summary judgment for the plaintiff States, but if the Court denies the plaintiffs' motion, it should reject the defendants' request for dismissal of or partial summary judgment on the plaintiff States' alternative claims that the challenged agency actions are arbitrary or capricious under the Administrative Procedure Act (APA), 5 U.S.C. §§ 551–559, 701–706. It would be premature to dismiss those claims without reviewing the administrative records for the challenged actions, and the federal defendants have not presented any valid reason to short-circuit those claims.

The Court should grant summary judgment for the plaintiff States and should deny the defendants' cross motion.

[3] Mem. in Supp. of Pls.' Mot. for Summ. J. (Pls.' Mem.), ECF No. 87.

## BACKGROUND

### I. The parties' Statements of Undisputed Facts

The defendants did not respond to the plaintiffs' statement of undisputed facts under Rule 56(c) of the Federal Rules of Civil Procedure. *See* Pls.' Mem. 5–17. For purposes of the plaintiffs' motion for summary judgment, the Court should treat the facts stated in the plaintiffs' statement as undisputed. *See* Fed. R. Civ. P. 56(e) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . .").

The defendants' cross motion seeks summary judgment in the alternative, but it did not include a statement of undisputed facts. The plaintiffs therefore do not include a responsive statement in this memorandum. The plaintiffs do not dispute the facts stated in the Background section of the defendants' memorandum, Defs.' Mem. 2–4, but the plaintiffs do dispute two erroneous characterizations contained in that section: the statement that Executive Order No. 14398 is "consistent" with the earlier Executive Order No. 11246[4] issued by President Johnson in 1965, Defs.' Mem. 2, and the statement that "[c]lass deviations are . . . modifications to the [Federal Acquisition Regulation]," Defs.' Mem. 4. President Trump rescinded Executive Order No. 11246 in January 2025, and the federal government is in the process of dismantling the regulatory framework built around Executive Order No. 11246. *See* Pls.' Mem. 13–14 & n.5. And class deviations are not modifications or amendments to the text of the Federal Acquisition Regulation (FAR), 48 C.F.R. ch. 1. *See infra* pp. 15–16.

---

[4] Exec. Order No. 11246, Equal Employment Opportunity, 3 C.F.R. 339 (1964–1965).

## II. Lack of clarity in the Executive Order No. 14398 contract terms

The plaintiff States brought this suit because, as explained in their motion for summary judgment, the lack of clarity in the contract terms prescribed by the Executive Order, and the defendants' failure to provide sufficient explanation, have caused confusion, uncertainty, and chaos in federal contracting. *See* Pls.' Mem. 13–16. The defendants assert that the contract terms are sufficiently clear because it is evident that they deal primarily with intentional discrimination based on race. But that does not resolve the plaintiff States' concerns. The defendants have stated that the Executive Order No. 14398 contract terms are "not perfectly coextensive with prohibitions under the civil rights laws" the plaintiff States are familiar with. Defs.' Mem. 8. And they have stated that the contract terms reach more broadly than existing civil rights laws in at least one major respect—they apply to small employers that are not covered by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17. *See* Defs.' Mem. 8. But they have declined to say whether the contract terms reach farther than Title VII in other ways, or what those other ways are.

The contract terms are especially confusing given the context in which they emerged. President Trump rescinded the longstanding Executive Order that had previously restricted racial discrimination in federal contracting for more than six decades, Executive Order No. 11246. President Trump's Executive Order No. 14173[5] had already directed agencies to adopt contract terms barring "diversity, equity, and inclusion" (DEI) activities that violate federal antidiscrimination laws. And Executive Order No. 14398 contained vituperative railing against DEI. All these factors suggest that Executive Order No. 14398 and the contract terms it prescribes are broader than prior efforts barring racial discrimination by federal contractors. But

---

[5] Exec. Order No. 14173, Ending Illegal Discrimination and Restoring Merit-Based Opportunity, 90 Fed. Reg. 8633 (Jan. 21, 2025).

the federal government has not explained how the terms exceed prior efforts to ensure compliance with existing civil rights law.

The lack of clarity in the contract terms, and the harsh penalties those terms threaten, have sown confusion and fear among contractors and chilled lawful and salutary efforts to combat racial discrimination. At least one of the plaintiff States already has lost a contract amid the confusion. A federal contractor ended a five-year subcontracting relationship with a Maryland state agency, apparently because, after discussions with the Environmental Protection Agency (EPA), the prime contractor concluded that it could not work with subcontractors that follow DEI policies of any kind, regardless of the nature or content of those policies. *See* Pl. States' Partial Opp'n to Defs.' Mot for Ext. of Time to Respond to Pls.' Compl. and Pls.' Mot. for Summ. J. Ex. 1 (Decl. of Luke Page), ECF No. 90.

In any event, the plaintiff States' present motion for summary judgment relies exclusively on violations of law in the issuance of the challenged agency actions. The Court can resolve the motion without determining whether the Executive Order No. 14398 contract terms are sufficiently clear or delineating their precise meaning.

## ARGUMENT

### I. Standards applicable to motions to dismiss and motions for summary judgment

On a motion to dismiss for lack of subject matter jurisdiction or failure to state a claim, a court determines whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" meaning that the alleged facts permit a "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2009)). The court considers the allegations of the complaint and may also consider "documents incorporated

into the complaint by reference[] and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

The plaintiff States discussed the standards applicable to a motion for summary judgment in their first memorandum, Pls.' Mem. 18–19.

## II. The plaintiff States have standing because the defendant agencies have already imposed the contract terms on the States and other contractors, and the plaintiffs are "forced to do something they otherwise would not need to do."

The plaintiffs are suffering a present injury for purposes of Article III standing because the defendant agencies are already requiring federal contractors, including the plaintiff States, to agree to the contract terms to engage in federal contract work.

Article III of the Constitution limits the jurisdiction of the federal courts to "cases" and "controversies." One way courts enforce this limitation is through the jurisdictional requirement of "standing." To meet this requirement, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). When multiple plaintiffs seek the same relief, only one plaintiff needs to demonstrate standing. *Biden v. Nebraska*, 143 S. Ct. 2355, 2365 (2023).

The plaintiff States are suffering a present injury because the defendant agencies have already begun demanding that the plaintiff States and other contractors agree to the contract terms, or risk losing existing contracts or contract opportunities. Under Supreme Court and Fourth Circuit precedent, being required to agree to the contract terms is enough to qualify as Article III injury, regardless of whether the plaintiff States might seek to violate the contract terms after they have agreed to them. The Fourth Circuit found standing in a virtually identical situation earlier this year in *National Ass'n of Diversity Officers in Higher Education v. Trump*, 167 F.4th 86 (4th Cir. 2026). The Fourth Circuit held that plaintiffs who routinely applied for and

received federal grants had standing to challenge provisions of two Executive Orders requiring grant recipients to certify that they complied with federal antidiscrimination laws. *Id.* at 98–99. The panel majority reasoned that the plaintiffs showed sufficient injury to establish standing because they "'[w]ere forced to do something they otherwise would not need to do'—affirmatively certify that their DEI programming complie[d] with federal antidiscrimination laws." *Id*. Judge Rushing, while disagreeing with some other aspects of the panel majority's analysis, agreed with the majority's core rationale—that the requirement that the plaintiffs provide the requested certification, "an action they otherwise would not take," was sufficient injury to establish standing to challenge the provisions. *Id.* at 105–06 (Rushing, J., concurring in part and concurring in the judgment). The plaintiffs have standing here for the same reason; they must agree to the new contract terms to access federal contracts. The step of agreeing to the contract terms is "action they otherwise would not take" and "would not need to do" but for the challenged agency actions. *Id.* at 98–99 (majority opinion); *see also Larson v. Valente*, 456 U.S. 228, 241 (1982) (holding that registration and reporting obligations imposed on charitable organizations as a requirement for being allowed to solicit charitable contributions were sufficient injury to establish standing); *United States v. Students Challenging Regul. Agency Procs. (SCRAP)*, 412 U.S. 669, 689 n.14 (1973) (noting that even a "small" interest can support standing); *accord Vapor Tech. Ass'n v. Wooten*, 184 F.4th 329, 345 (4th Cir. 2026).

The defendants argue that the plaintiffs must show a credible threat of prosecution to establish standing, citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014). *See* Defs.' Mem. 9–11. But that standard applies only when a plaintiff is suing based on a theory that "*threatened* enforcement of a law creates an Article III injury." *Id.* at 158 (emphasis added). The most immediate injury to the plaintiff States is not the threat of future penalties for violating the

contract terms; rather, it is the requirement that federal contractors agree to the contract terms. The defendant agencies are already imposing that requirement on the plaintiff States, not merely threatening to impose it, and that is sufficient to establish standing for the reasons the Fourth Circuit explained in *National Ass'n of Diversity Officers in Higher Education*. The federal government is requiring the plaintiff States to take an additional step "they otherwise would not take" to engage in federal contracts.

## III. The plaintiffs' claims challenge rules and policies relating to contracting and therefore properly fall within the statutory jurisdiction of this Court.

All the plaintiffs' claims properly fall within the statutory jurisdiction of this Court. The plaintiffs' claims are based on violations of statutes and regulations and lack of lawful authority. The plaintiffs are not asserting claims based on contract rights that would fall under the Tucker Act, 28 U.S.C. § 1491(a), or the Contract Disputes Act, 41 U.S.C. §§ 7101–7109.

Claims against the federal government based on contract rights cannot be brought in federal district court if they fall within the exclusive jurisdiction of the Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491(a), or within the exclusive remedial scheme provided by the Contract Disputes Act, 41 U.S.C. § 7104. But the Tucker Act and the Contract Disputes Act reach only claims that are "essentially contractual"—that is, claims that are based on the plaintiff's rights under a contract. *Sustainability Inst. v. Trump*, 165 F.4th 817, 825 (4th Cir. 2026) (quoting *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982)) (discussing Tucker Act jurisdiction); *United States v. J & E Salvage Co.*, 55 F.3d 985, 988–89 (4th Cir. 1995) ("In order to determine whether the [Contract Disputes Act] applies, federal courts generally look to whether the dispute at issue is one of contract."). To distinguish "essentially contractual" claims from other claims, "courts examine 'the source of the rights upon which the plaintiff[s] base[ ] [their] claims' and 'the type of relief sought (or appropriate).'" *Sustainability Inst.*, 165 F.4th at

825 (alterations in original) (quoting *Megapulse, Inc.*, 672 F.2d at 968) (citing *J & E Salvage Co.*, 55 F.3d at 988–89).

In this case, the plaintiffs' claims are not based on contract rights and do not seek contract remedies. The plaintiff States' claims are based on violations of federal statutes and regulations and lack of lawful authority to impose the contract terms in the first instance, not rights arising from their contracts. *See* Compl. ¶¶ 88–118, 132–144, ECF No. 1. The relief the plaintiffs seek—vacatur, injunctive relief, and declaratory relief—is directed at the defendants' violations of law and is not analogous to any contract remedy. The plaintiffs' claims accordingly are properly brought in federal district court under the APA.

The Supreme Court stay decision cited by the defendants, *National Institutes of Health v. American Public Health Ass'n* (*NIH*), 145 S. Ct. 2658 (2025), confirms that the plaintiffs' claims are proper in this Court. In *NIH*, the Supreme Court stayed a portion of a district court judgment that "vacat[ed] the Government's termination of various . . . grants." *Id.* at 2660. But the Court denied a stay with respect to other portions of the district court judgment that vacated the agency policies that had led to the grant terminations. *Id.* Five Justices reaffirmed that challenges to broader "policies related to grants" are properly brought in federal district court under the APA. *Id.* at 2661 (opinion of Barrett, J.) (distinguishing between "challenges to . . . grant terminations," which "belong[ed] in the Court of Federal Claims," and challenges to "policies related to grants," which belonged in federal district court); *id.* at 2663 (opinion of Roberts, C.J.) (reasoning, in an opinion joined by three other Justices, that the plaintiffs' challenge to grant-related policies set the case apart from *Department of Education v. California*, 145 S. Ct. 966 (2025) (per curiam order), and fell "well within the scope of the District Court's jurisdiction under the Administrative Procedure Act"); *see also id.* at 2671 (opinion of Jackson, J.) (noting

that five Justices agreed that "district courts may still exercise jurisdiction over—and vacate—grant-related policies that contravene federal law"). Likewise, in this case, the plaintiffs properly challenge contract-related policies in federal district court. *See also Does 4, 7, 22, 27, 28, & 29 v. Musk*, Civil Action No. 25-0462-TDC, 2025 WL 2346258, at *11 (D. Md. Aug. 13, 2025) (holding that claims brought by a contractor were not precluded by the Tucker Act or the Contract Disputes Act); *Alphapointe v. Dep't of Veterans Affs.*, 416 F. Supp. 3d 1, 7 (D.D.C. 2019) (holding that claims asserting that agency class deviations violated the law were properly brought in district court under the APA).

The defendants appear to acknowledge that the plaintiffs' claims are not precluded—they argue that this Court lacks jurisdiction only "[t]o the extent" the plaintiff States seek to bring claims challenging "contractual actions (including enforcement or termination actions pursuant to specific contract terms)." Defs.' Mem. 12. The plaintiff States have not sought enforcement of contract rights or challenged any past contract termination. Accordingly, the plaintiff States' claims are properly in this Court.

## IV. The April 2026 FAR Council memorandum exceeds the FAR Council's authority and violates procedural requirements and substantive limits established by federal statutes and regulations.

### A. The April 2026 FAR Council memorandum qualifies as final agency action, but even if it does not, it is still reviewable under APA § 704.

The FAR Council memorandum is reviewable under APA § 704, 5 U.S.C. § 704. The defendants have effectively conceded that, regardless of whether the FAR Council memorandum qualifies as "final agency action" under § 704, it is reviewable as a "preliminary, procedural, or intermediate agency action" that preceded the other defendant agencies' challenged actions. *Id.* Moreover, the FAR Council memorandum does qualify as final agency action because it has present definitive effect.

In their first memorandum, the plaintiffs explained that, regardless of whether the FAR Council Memorandum qualifies as final agency action, it may be reviewed as a "preliminary, procedural, or intermediate agency action" preceding a "final agency action." Pls.' Mem. 22. The defendants did not contest this argument in their opposition. The FAR Council Memorandum gave rise to the other agencies' class deviations, and the defendants acknowledge that those class deviations are final and reviewable in this suit. *See* Defs.' Mem. 26. Accordingly, the Court may review the FAR Council memorandum as part of its review of those other challenged actions, regardless of whether the memorandum would qualify as final agency action in its own right.

Nevertheless, the FAR Council memorandum does qualify as final agency action. It is the final word of the FAR Council on the matters discussed in the memorandum, and it has definitive effect.

The defendants argue that because the FAR Council memorandum establishes only an "interim" regime until the FAR Council takes steps to amend the FAR, it is not the "consummation" of an agency decision process. Defs.' Mem. 14–15. But the FAR Council memorandum represents the FAR Council's final word on how agencies should proceed for the present, even if those policies are subject to change in the future (as all policies are). The District Court for the District of Columbia faced a similar situation in *National Mining Ass'n v. Jackson*, 768 F. Supp. 2d 34 (D.D.C. 2011). The plaintiff challenged "interim" guidance that the defendant agency planned to replace the following year. *See id.* at 43. The court found that the guidance qualified as final agency action because, despite its "interim" nature, it was "nonetheless being applied in a binding manner" in the present and had been "implemented in its current version." *Id.* at 45; *see also Nat. Res. Def. Council v. Wheeler*, 955 F.3d 68, 78 (D.C. Cir. 2020) ("[A]n interim agency resolution counts as final agency action despite the potential for a different

permanent decision, as long as the interim decision is not itself subject to further consideration by the agency. In that event, the interim resolution is the final word from the agency on what will happen up to the time of any different permanent decision."); *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1022 (D.C. Cir. 2000) ("The fact that a law may be altered in the future has nothing to do with whether it is subject to judicial review at the moment."). At least one judge of this Court has followed the *National Mining Ass'n* decision. *See Am. Acad. of Pediatrics v. FDA*, 379 F. Supp. 3d 461, 496–97 (D. Md. 2019), *appeal dismissed sub nom. In re Cigar Ass'n of Am.*, 812 F. App'x 128 (4th Cir. 2020). The FAR Council memorandum likewise is operative for now even though the FAR Council has indicated it may take steps to amend the FAR in the future.

The FAR Council memorandum also gives rise to legal consequences, for two independent reasons, one of which the defendants effectively conceded by failing to meaningfully respond to the plaintiffs' argument.

The plaintiffs explained that the FAR Council memorandum qualifies as final agency action because other agencies incorporated the FAR Council guidance by reference into their own policies, Pls.' Mem. 22. As the plaintiffs explained, an agency's action can qualify as final when another federal agency accords determinative effect to the action. The plaintiffs cited *Bennett v. Spear*, 520 U.S. 154 (1997), in which the Supreme Court concluded that a Biological Opinion issued by the Fish and Wildlife Service, though characterized by the Service as "advisory," qualified as final agency action because another agency, the Bureau of Reclamation (the "action agency"), would accord "virtually determinative effect" to the opinion. *Id.* at 169–70, 178, *cited in* Pls.' Mem. 22. The plaintiffs also cited a Fourth Circuit case following the *Bennett* holding, *Dow AgroSciences LLC v. Nat'l Marine Fisheries Serv.*, 637 F.3d 259 (4th Cir.

2011), *cited in* Pls.' Mem. 22. The defendants' memorandum did not address the cited portion of *Bennett*, nor did it address *Dow AgroSciences LLC*.[6] The Court therefore should treat the argument as conceded and should conclude that the FAR Council memorandum is final and reviewable for the reasons the plaintiffs explained.

Because that argument is a sufficient basis to find the FAR Council memorandum final and reviewable under APA § 704, the Court does not need to address the plaintiffs' other argument, which was that the memorandum qualifies as final agency action because it is mandatory in its language and effect. Pls.' Mem. 20–21. But that argument also supports the conclusion that the FAR Council memorandum is final. The defendants' contrary arguments ignore key facts.

The defendants argue that the mandatory language employed in the Executive Order—its use of terms like "must" and instructions phrased as commands—is intended to describe what agencies must do to comply with the Executive Order, not to establish separate requirements. *See* Defs.' Mem. 18–19. But the defendants fail to acknowledge that the FAR Council memorandum establishes requirements and details that are not found in the Executive Order: No text in the Executive Order directed agencies to adopt class deviations compliant with the FAR Council model text, or directed agencies to seek clearance from the FAR Council if they chose not to adopt the model text. No text in the Executive Order established a July 27, 2026, deadline for agencies to modify existing contracts to include the new terms. No text in the Executive Order established exceptions for contracts that are to expire during 2026 or for contracts below the

---

[6] The case the defendants cite, *American Society for Testing & Materials v. Public .Resource.Org, Inc.*, 597 F. Supp. 3d 213 (D.D.C. 2022), *aff'd*, 82 F.4th 1262 (D.C. Cir. 2023), *cited in* Defs.' Mem. 19, says nothing about final agency action under APA § 704. The case did not involve the APA at all.

micro-purchase threshold or to be performed outside the United States. Because the FAR Council memorandum established entirely new rules and mandates, it qualifies as final agency action. *See* Pls.' Mem. 20–21. The new rules and mandates differentiate the present FAR Council memorandum from the FAR Council memorandum considered in *Mayes v. Biden*, 67 F.4th 921 (9th Cir.), *vacated as moot*, 89 F.4th 1186 (9th Cir. 2023), and *Kentucky v. Biden*, 571 F. Supp. 3d 715 (E.D. Ky. 2021), *aff'd in part and modified in part on other grounds*, 57 F.4th 545 (6th Cir. 2023). That earlier FAR Council memorandum only reiterated requirements previously stated in an Executive Order and did not establish new requirements. *See* Pls.' Mem. 21.

For all these reasons, the final agency action requirement of APA § 704 poses no obstacle. The Court can review the FAR Council memorandum as part of its review of the other defendant agencies' actions, which the defendants have agreed are final. In any event, because the FAR Council memorandum establishes binding rules and requirements with current and continuing effect, it qualifies as final agency action in its own right and is therefore reviewable under APA § 704.

### B. The FAR Council memorandum exceeded the FAR Council's statutory authority.

The plaintiffs explained that the FAR Council memorandum exceeded the FAR Council's statutory authority because the FAR Council's authority is limited to developing the content of the FAR and does not include authority to prescribe agency deviations or supervise agencies' day-to-day procurement activities. *See* Pls.' Mem. 22–23.

The defendants assert that the FAR Council memorandum did not direct agencies to adopt deviations, *see* Defs.' Mem. 20, but that is contradicted by the text of the memorandum. The memorandum directed agencies to "[u]pdate their Revolutionary Federal Acquisition Regulation Overhaul class deviations for parts 9, 12, 22, and 52 by April 27, 2026," using model language

specified in the memorandum. Pl. States' Mot. for Summ. J. Ex. 2 at 2, ECF No. 87. It provided that if an agency adopted text other than the FAR Council's model text, the agency "must request approval from the FAR Council" unless the agency was acting based on some other statutory direction. Pl. States' Mot. for Summ. J. Ex. 2 at 2. These directives originated with the FAR Council—the Executive Order does not direct contracting agencies to adopt deviations. And the FAR Council lacked authority to issue these directives.

The defendants also urge the Court to interpret the statutory grant of authority to manage "changes in[] the Federal Acquisition Regulation" as empowering the FAR Council to manage changes in federal procurement policy more broadly. Defs.' Mem. 20–21 (quoting 41 U.S.C. § 1303(d)). But Congress specified that the sole object of the FAR Council's authority is "changes in[] *the Federal Acquisition Regulation*." 41 U.S.C. § 1303(d) (emphasis added). Given that narrow, specific language, it would be improper for the Court to accord the FAR Council authority over matters other than the content of the FAR. *See Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 279 (2018) ("[Congress's] choice to use [a] narrower term . . . requires respect, not disregard.").

The defendants are also wrong when they state that the FAR Council has authority to direct class deviations because class deviations are "changes to the FAR." Defs.' Mem. 20–21. The FAR is a body of regulations codified in Title 48 of the Code of Federal Regulations. *See* 48 C.F.R. § 1.105-1 ("Publication and code arrangement."). The FAR permits agencies to issue class deviations, but when agencies issue deviations, those deviations do not become part of the FAR, and they do not amend the FAR. *See La Gloria Oil & Gas Co. v. United States*, 56 Fed. Cl. 211, 221 (Fed. Cl. 2003) (noting that class deviations are distinct from FAR revisions).

Finally, the defendants argue that the FAR Council should be permitted to act beyond its statutory authority when its actions are intended to further an Executive Order. Defs.' Mem. 21–22. That proposition is in conflict with well-established principles of law, among them that the power of a federal agency is "authoritatively prescribed by Congress," *City of Arlington v. FCC*, 569 U.S. 290, 297 (2013), and that agency action is subject to judicial review even when directed by the President, *see Franklin v. Massachusetts*, 505 U.S. 788, 828 (1992) (opinion of Scalia, J.) ("Review of the legality of Presidential action can ordinarily be obtained in a suit seeking to enjoin the officers who attempt to enforce the President's directive . . . ."); *Chamber of Com. of the U.S. v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996). The defendants' proposition is especially suspect in this case. The Executive Order did not direct the FAR Council to prescribe agency deviations, supervise agencies' procurement activities, or undertake other actions outside the FAR Council's authority. The President also did not delegate any authority to the FAR Council to wield Presidential powers, so the FAR Council cannot claim to have been clothed in the power of the President. *See* 3 U.S.C. § 301 (providing that a delegation of authority by the President must be in writing and published in the Federal Register).

**C. The FAR Council memorandum violated the notice and comment requirements of 41 U.S.C. § 1707 and the parallel requirements of FAR subpart 1.5.**

The plaintiffs explained that the FAR Council memorandum violated the notice and comment requirements of 41 U.S.C. § 1707, which require notice and comment for any "procurement policy, regulation, procedure, or form" that has "a significant effect beyond the internal operating procedures" of contracting agencies or "a significant cost or administrative impact on contractors or offerors," *id.* § 1707(a)(1), and the parallel requirements of FAR subpart 1.5, 48 C.F.R. subpart 1.5. *See* Pls.' Mem. 23–25.

The defendants first argue that § 1707 is inapplicable because the Executive Order No. 14398 contract terms and the FAR Council's instructions for implementing those terms do not "ha[ve] a significant effect beyond the internal operating procedures" of contracting agencies or "a significant cost or administrative impact on contractors or offerors," 41 U.S.C. § 1707(a)(1)(B). But the defendants have stated that the contract terms reach more broadly than existing civil rights laws in at least one major respect—they apply to small employers who are not covered by Title VII. *See* Defs.' Mem. 8. That alone is a "significant effect" outside contracting agencies, 41 U.S.C. § 1707(a)(1)(B)(i). The introduction of the contract terms also imposes "significant cost or administrative impact on contractors," *id.* § 1707(a)(1)(B)(ii). The plaintiff States have submitted evidence—which the defendants have not disputed—showing that the introduction of the new contract terms, which the defendants have refused to clarify, has forced the plaintiffs to engage in time-consuming and expensive efforts to comply. *See* Pls.' Mem. 29 & n.13 (citing declarations discussing compliance costs).

The defendants also argue that the FAR Council memorandum does not set forth any "procurement policy, regulation, procedure, or form" within the meaning of § 1707. As discussed in the sections above, the FAR Council memorandum did in fact establish policies that had not been specified in Executive Order No. 14398. *See supra* pp. 13–14.

Moreover, the defendants' litigation position is at odds with the FAR Council memorandum itself, which admitted that implementation of the Executive Order No. 14398 contract terms requires notice and comment rulemaking under § 1707. Pl. States' Mot. for Summ. J. Ex. 2 at 3. ("The FAR Council intends to conduct rulemaking pursuant to the notice and comment process set forth at 41 U.S.C. 1707."). The FAR Council's theory at the time was not that § 1707 is inapplicable, but that agency class deviations permit an end-run around § 1707.

As the plaintiffs explained, that theory cannot be squared with the text of § 1707. *See* Pls.' Mem. 23–24.

The defendants argue that § 1707 "does not specifically address class deviations," quoting the statement of the Court of Federal Claims in *Navajo Refining Co. v. United States*, 58 Fed. Cl. 200 (Fed. Cl. 2003). But they fail to note that the court in *Navajo Refining Co.*—and the courts in the two other cases cited in the plaintiff States' memorandum—concluded that deviations are subject to § 1707 when they implement "significant" policies. *See* Pls.' Mem. 24. As discussed above, the federal government has already confirmed that the implementation of Executive Order No. 14398 has significant effects outside federal agencies.

### D. The plaintiff States' Paperwork Reduction Act claims are ripe and are properly directed at final agency action.

The FAR Council memorandum is also unlawful because it prescribed reporting and recordkeeping requirements in violation of the Paperwork Reduction Act, 44 U.S.C. §§ 3501–3521. The defendants do not dispute that the recordkeeping and reporting requirements prescribed by Executive Order No. 14398, which have been adopted by the FAR Council and contracting agencies, are subject to the Paperwork Reduction Act. *See* Defs.' Mem. 25. And they concede that they have adopted these requirements without first complying with all of the Act's requirements. *See* Defs.' Mem. 25. The defendants assert they are free to impose binding recordkeeping and reporting requirements without following the Paperwork Reduction Act so long as they comply with the Act sometime in the future. Defs.' Mem. 12, 25. This argument lacks any logical or legal support.

The plaintiffs' Paperwork Reduction Act claims are ripe. Contracting agencies have already put the requirements into place and required contractors to agree to the associated contract terms. Imposition of reporting or recordkeeping requirements is a "collection of

information" regulated under the Act even if the federal government does not make any demand for production of records or information. *See* 44 U.S.C. § 3502(3)(A)(i), (13) (statutory definitions of "collection of information" and "recordkeeping requirement"). In violation of the Act, the defendants have adopted these requirements before completing all the steps required by the Act, which the Act expressly prohibits. The plaintiffs have already incurred costs and expenses necessary to identify, prepare, and retain documentation required under the contract terms. *See, e.g.*, Pl. States' Mot. for Summ. J. Ex. 8 (Ellinger Decl.) ¶ 31. The defendants' temporary and voluntary forbearance from requiring the plaintiffs to turn over that information does not eliminate the illegality or the injury.

The agencies' adoption of the reporting and recordkeeping requirements is also final agency action. The contracting agencies have already put the requirements into place and are requiring contractors to agree to the associated contract terms. *See supra* pp. 11–12 (explaining that agency action is final if it establishes operative policies, even if it is subject to later revision). And the agencies' adoption of the contract terms has legal consequences—contractors must submit to the contract terms, and thereby assume an obligation to comply with the terms, to obtain contracts. That is a legal consequence even if the defendants have not yet held contractors to that obligation. Tellingly, the defendants do not identify any authority to support their argument that there is no final agency action.[7]

[7] While the Paperwork Reduction Act does not provide a private right of action, its requirements are enforceable through the APA. *See, e.g.*, *Am. Fed'n of Tchrs. v. Dep't of Educ.*, 796 F. Supp. 3d 66, 103 (D. Md. 2025) (discussing a claimed Paperwork Reduction Act violation under the APA). The defendants imply that the Paperwork Reduction Act might not be enforceable through the APA, but they do not explain why it would not be enforceable and do not cite any authority.

**E. In light of the defendants' acknowledgement that the False Claims Act provisions do not make violations of the Executive Order No. 14398 contract terms "material," the plaintiff States no longer contend that those provisions conflict with 31 U.S.C. § 3729(b)(4).**

The plaintiff States challenged the False Claims Act provisions in the Executive Order No. 14398 contract terms because they appeared to conflict with how courts analyze whether violations are material under the Act, 31 U.S.C. § 3729(b)(4). In their opposition memorandum, the defendants acknowledge that the provision cannot have the effect of making violations of the Executive Order No. 14398 contract terms "material," and "the government would still have to prove materiality in any False Claims Act action." Defs.' Mem. 24. In light of that admission, the plaintiff States no longer rely on any conflict with 31 U.S.C. § 3729(b)(4) as a basis for holding the challenged agency actions unlawful. The plaintiff States continue to assert that the False Claims Act provisions are unlawful based on all the other arguments the plaintiff States have presented against the FAR Council memorandum and the actions of the other defendant agencies.

**V. The class deviations issued by the defendant agencies, and those agencies' adoption of the contract terms prescribed by Executive Order No. 14398, are unlawful for many of the same reasons.**

As discussed in the plaintiff States' first memorandum, the actions of the other defendant agencies are unlawful for many of the same reasons the April 2026 FAR Council memorandum was unlawful.

As the plaintiffs explained—and the defendants have not disputed—the agency implementing actions should be vacated simply because they were rooted in the unlawful FAR Council memorandum. *See* Pls.' Mem. 27. But the agency implementing actions are also subject to judicial review independent of the FAR Council memorandum.

The defendants agree that the agency implementing actions qualify as reviewable final agency action. *See* Defs.' Mem. 26. For the reasons explained in the plaintiffs' first memorandum

and section IV.C above, the agencies' actions are policy changes with "significant" effect that require notice and comment under 41 U.S.C. § 1707 and FAR subpart 1.5. And class deviations do not provide a way around those requirements. *See* Pls.' Mem. 23–24. The defendants state that the plaintiffs offered no support for their arguments, but that is wrong. The plaintiffs cited the text of § 1707 and three decisions from the Court of Federal Claims. *See* Pls.' Mem. 24 (citing *La Gloria Oil & Gas Co. v. United States*, 56 Fed. Cl. 211, 220 (Fed. Cl. 2003); *Navajo Refin. Co. v. United States*, 58 Fed. Cl. 200, 209 (Fed. Cl. 2003); and *Tesoro Haw. Corp. v. United States*, 58 Fed. Cl. 65, 71–72 (Fed. Cl. 2003)).

Moreover, as the plaintiffs explained, the regulation governing deviations, 48 C.F.R. § 1.402, authorizes deviations only "when necessary to meet the specific needs and requirements of each agency." *Id.* Deviations therefore may not be used to implement governmentwide policies such as implementation of the Executive Order. The defendants again assert that the plaintiffs cited no authority for that argument, but the plaintiffs in fact cited the most relevant authority—the plain text of the regulation. The defendants urge the Court to simply ignore the phrase "when necessary to meet the specific needs and requirements of each agency" in the regulation. "These words cannot be meaningless, else they would not have been used." *United States v. Butler*, 297 U.S. 1, 65 (1936); *accord Chamber of Com. of the U.S.A. v. Lierman*, 151 F.4th 530, 537 (4th Cir. 2025); *see also Baldwin ex rel. Baldwin v. Dir., Off. of Workers' Comp. Programs*, 170 F.4th 273, 282–87 (4th Cir. 2026) (rejecting an agency interpretation of a regulation that was incompatible with the text of the regulation).

The agencies' adoption of the recordkeeping and reporting provisions prescribed by the Executive Order violates the Paperwork Reduction Act because neither the FAR Council nor the

other implementing agencies have complied with the requirements of the Act as discussed above. *See supra* pp. 18–19. These agency actions therefore are also unlawful under the APA.

## VI. The Court should vacate the challenged actions and enjoin their implementation.

For the reasons explained in the plaintiffs' first memorandum, the Court should award declaratory relief, vacatur of the challenged actions, and a permanent injunction. *See* Pls.' Mem. 28–30. The defendants' arguments seeking to narrow the relief misstate the law.

As the plaintiffs explained, the Court should vacate the challenged actions, which will prevent the defendants from imposing the contract terms on the plaintiff States or anyone else, including prime contractors with whom the plaintiff States work as subcontractors. Vacatur is the typical remedy for agency action found "legally deficient." Pls.' Mem. 28. That includes violations of procedural requirements. *See, e.g.*, *Ctr. for Sci. in the Pub. Int. v. Perdue*, 438 F. Supp. 3d 546, 561 (D. Md. 2020) (holding that vacatur was the appropriate remedy for violation of notice requirements and citing cases supporting vacatur in that context); *see also Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1110 (D.C. Cir. 2014) ("[D]eficient notice is a 'fundamental flaw' that almost always requires vacatur." (quoting *Heartland Reg'l Med. Ctr. v. Sebelius,* 566 F.3d 193, 199 (D.C. Cir. 2009))).

The defendants argue that under *Chamber of Commerce of the United States v. Napolitano*, 648 F. Supp. 2d 726 (D. Md. 2009), the Court should simply remand the challenged actions and stay their application without vacating them. *See* Defs.' Mem. 30 (citing *id.* at 741). But that case involved sharply different circumstances. The Court held that the statutory notice and comment requirements of § 1707 did not apply at all, because the challenged agency action had no connection to procurement. *Id.* at 740. The Court further reasoned that the defendant agencies had published notice of the document and collected comments, so, even if notice and comment had been required, the defendants had substantially complied. *Id*. In this case, the

agencies' actions are subject to the requirements of § 1707, and they have not come close to complying with the notice and comment requirements.

The defendants also argue that any vacatur should operate only with respect to the relationships between certain plaintiffs and certain agencies, but that is not how vacatur works. An action vacated for one plaintiff is vacated for all plaintiffs, as well as the public more broadly. *See Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 144 S. Ct. 2440, 2460–61 (2024) (Kavanaugh, J., concurring). Because the plaintiff States' contracting activities collectively span all the defendant agencies*, see* Pls.' Mem. 17 & n.10, it is proper for the Court to vacate all the defendant agencies' actions.

The defendants also argue that the Court cannot issue an injunction, citing a statement in *Palisades General Hospital Inc. v. Leavitt*, 426 F.3d 400 (D.C. Cir. 2005), that the APA does not permit "specific relief." Defs.' Mem. 30 (quoting *Palisades Gen. Hosp. Inc.*, 426 F.3d at 403). But the defendants are misinterpreting the case. The court in *Palisades General Hospital Inc.* meant only that a court generally may not dictate specific future actions to be taken by an agency. *See id.* at 404 (stating more specifically that the district court did not "have jurisdiction to order either reclassification based upon . . . adjusted wage data or an adjusted reimbursement payment that would reflect such a reclassification"). The court did not cast doubt on the propriety of the kind of garden-variety prohibitory injunction the plaintiffs are seeking in this case—an injunction prohibiting implementation of past action that has been held unlawful. Indeed, the plain terms of the APA specifically contemplate injunctive relief. *See* 5 U.S.C. § 702 (referring to "injunctive decree[s]"); *id.* § 703 (referring to "actions for . . . prohibitory . . . injunction"); *see also Doe v. Chao*, 435 F.3d 492, 504 n.17 (4th Cir. 2006) (noting that the APA authorizes injunctive relief).

The defendants also argue that the Court should not enjoin the "challenged actions as to third parties." Defs.' Mem. 29. The plaintiffs have not requested an injunction as to third parties; they have sought only a "permanent injunction barring implementation of the challenged actions *with respect to the plaintiff States*." Pls.' Mem. 29 (emphasis added). That properly extends to contracts on which State agencies or instrumentalities are subcontractors or seek to work as subcontractors. The defendants protest that only parties and intended beneficiaries may ordinarily seek enforcement of the terms of a contract. *See* Defs.' Mem. 29–30. But the plaintiff States are not seeking to enforce contract terms; they are seeking relief to prevent application of unlawfully adopted policies. Relief is proper to prevent any application of the challenged policies that injures the plaintiff States, including in situations where the plaintiff States are acting as subcontractors rather than as prime contractors. *See Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2556–57 (2025) (reaffirming that a "court of equity may fashion a remedy that awards complete relief" to the plaintiffs). The possibility that an injunction protecting the plaintiff States may incidentally benefit nonparties (such as private contractors who work with the States on the same federal contracts) does not make an injunction impermissible. *See id.* at 2557.

The defendants do not contest that declaratory relief is available. The Court therefore should grant the full relief the plaintiffs have requested—declaratory relief, vacatur of the challenged actions, and a permanent injunction.

## VII. The Court should award summary judgment for the plaintiff States, but if it does not, there is no basis for dismissing the plaintiff States' claims challenging the defendants' actions as arbitrary or capricious.

For the reasons above, the Court should grant final judgment in favor of the plaintiff States on Count I of the complaint. That will make it unnecessary to consider Count II, which challenges the same actions and seeks the same relief on the ground that the challenged actions

are arbitrary or capricious under the APA.[8] But if the Court does not grant the plaintiff States' motion for summary judgment, the Court should deny the defendants' cross motion seeking dismissal of or summary judgment on Count II. It is generally improper for a court to dismiss a claim challenging an agency action as arbitrary or capricious without reviewing the agency record, and this case is no exception. Further, the defendants' arguments that the plaintiffs cannot prevail on their claims are all founded on misunderstandings of the law.

The APA provides that a court should set aside agency action that is "arbitrary" or "capricious." 5 U.S.C. § 706(2)(A). "The . . . arbitrary-and-capricious standard requires that agency action be reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021). The court examines whether "the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *Id.*

When considering a claim that agency action was arbitrary or capricious under the APA, a court reviews the record that was before the agency at the time it made its decision. *See Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419–20 (1971). Judges of this Court have repeatedly held that it is usually error to dismiss such a claim without reviewing the agency record. *See, e.g.*, *City of Columbus v. Trump*, 453 F. Supp. 3d 770, 795–96 (D. Md. 2020); *People for the Ethical Treatment of Animals, Inc. v. Tabak*, 662 F. Supp. 3d 581, 594 (D. Md. 2023); *Quarcoo v. Edlow,* Civ. No. DLB-25-2484, 2026 WL 2491214, at *15 (D. Md. Aug. 25, 2026). The Court should not rule on the merits of the plaintiff States' arbitrary-and-capricious claims

[8] The defendants are mistaken when they refer to the plaintiffs' motion as a motion for "*partial* summary judgment," *e.g.*, Defs.' Mem. 1, 9. If the plaintiffs' motion for summary judgment is granted, it will dispose of the entire case and support entry of a final judgment.

until the defendants have produced the administrative records for all the challenged actions and the parties have briefed cross motions for summary judgment based on those records.

The defendants argue that the plaintiffs cannot show that the defendants' actions were arbitrary or capricious, but the reasons they present all rest on misunderstandings of fact or law. First, the defendants argue that there is nothing unclear about the new contract terms. But as discussed above, the defendants failed to explain at the time of their actions—and still refuse to explain—whether or how the contract terms impose requirements that differ from existing civil rights laws. The contract terms are especially confusing considering the context in which they emerged—including the rescission of Executive Order No. 11246, the existing requirements of Executive Order No. 14173, and the vituperation against "DEI" in Executive Order No. 14398. The confusion has caused at least one plaintiff State to lose contracting work. *See supra* p. 5.

The defendants also say that they should not have to provide any factual basis for their decisions given that their stated purpose is to prevent racial discrimination. But just because an agency action purports to serve a laudable goal does not mean that it cannot be arbitrary or capricious. Requirements aimed at combating racial discrimination may still be arbitrary or capricious if, for example, they are ineffective, are unnecessary, or have harmful side effects such as chilling lawful, salutary conduct or imposing inordinate costs on the public.

The defendants also argue that the defendants need not explain their change in position from the Executive Order No. 11246 regime because both the new regime and the old regime had the same basic purpose of preventing racial discrimination. But even if the new policy and the old policy are broadly similar, the change-in-position doctrine requires the defendant agencies to justify the changes made to the agency policy. That is especially true in the case of the Executive Order No. 11246 regime, which was in place for 60 years. The defendants also assert that the

plaintiffs have not identified any valid reliance interests that the defendants' actions failed to consider. Defs.' Mem. 28. It would be improper to require the plaintiffs to articulate all their arguments in full before the defendants have produced the administrative records for the challenged actions. And the plaintiffs have identified some specific reliance interests that the defendants should have considered—the reliance interests of longtime, frequent, and large-scale contractors, such as the plaintiff States, that benefit from stable, predictable, and clear antidiscrimination requirements and have tailored their operations around existing antidiscrimination laws. Compl. ¶¶ 9, 115.

The defendants next argue that the agencies did not have to explain why they rejected reasonably obvious alternatives because that requirement applies only when an agency has received public comments. That is simply wrong. The requirement that an agency consider reasonably obvious alternatives is part of the general requirement of reasoned decisionmaking that applies to all agency action. One prominent example of a court enforcing the requirement to examine reasonably obvious alternatives is the Supreme Court's opinion in *Motor Vehicle Manufacturers Ass'n of the United States v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29 (1983), a foundational case on the APA standard of reasoned decisionmaking. *See id.* at 46–51 (concluding that the agency should have considered an airbag requirement as an alternative). The Supreme Court has enforced the obligation to consider alternatives in circumstances that did not involve consideration of public comments. *See, e.g.*, *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1913 (2020) (noting the obligation to discuss alternatives and citing *Motor Vehicle Manufacturers Ass'n* in review of an agency action taken without public comment).

The defendants then repeat their argument that agency action that aims to implement an Executive Order is immune from judicial review. That violates the long-established principle that agency action is subject to judicial review even when taken at Presidential direction. *See supra* p. 16.

The plaintiffs also challenge the defendants' instructions that, if a contractor refuses to consent to add the Executive Order No. 14398 contract terms to an existing contract, the contracting officer should then consider terminating the contract on a different, unrelated ground—that the contract no longer meets the government's needs. The defendants argue that the plaintiffs may not challenge this instruction because the federal government has not yet terminated any specific contract. But the directive amounts to a rule that governs how contracting officers perform their work. The rule is improper because it appears to direct contracting officers to use failure to meet the agency's needs as a pretext for improperly retaliating against a contractor that declines a bilateral modification. Even if that is not the intent of the rule, there is a substantial risk that contracting officers will interpret it that way. The rule qualifies as final agency action because it governs how contracting officers do their work and has a present chilling effect on contractors who are faced with requests for bilateral modification. *Cf. Biden v. Texas*, 142 S. Ct. 2528, 2545 (2022) (holding that an agency memorandum was final agency action because it governed the work of agency staff); *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 599–600 (2016) (holding that agency action was final under a "pragmatic" analysis because even though it did not entail any immediate legal determination, it altered the legal environment for regulated parties by threatening them with significant penalties).

**CONCLUSION**

For the reasons above, the Court should enter judgment for the plaintiff States based on the claims in Count I of the complaint and should deny the defendants' cross motion.

Date: October 13, 2026

Respectfully submitted,

**ANTHONY G. BROWN**
Attorney General of Maryland

/s/ JAMES C. LUH
JAMES C. LUH (D. Md. Bar No. 31776)
VIRGINIA A. WILLIAMSON (D. Md. Bar No. 31472)
ADAM KIRSCHNER (D. Md. Bar No. 31767)
Assistant Attorneys General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-6411
jluh@oag.maryland.gov

Attorneys for State of Maryland

**ROB BONTA**
Attorney General of California

By: */s/ Nicholas Keats*
Nicholas Keats*
*Deputy Attorney General*
Office of the Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102
Michael L. Newman*
*Senior Assistant Attorney General*
James E. Stanley*
*Supervising Deputy Attorney General*
Alexis M. Piazza*
Kenneth J. Sugarman*
Xiyun Yang*
*Deputy Attorneys General*
Nicholas.Keats@doj.ca.gov
Michael.Newman@doj.ca.gov
James.Stanley@doj.ca.gov
Alexis.Piazza@doj.ca.gov
Kenneth.Sugarman@doj.ca.gov
Xiyun.Yang@doj.ca.gov

*Attorneys for State of California*

**KWAME RAOUL**
Attorney General of Illinois

*/s/ Paul Berks*
CARA HENDRICKSON*
Executive Deputy Attorney General
PAUL BERKS*
Complex Litigation Counsel
MOLLY PETCHENIK*
Assistant Attorney General
Office of the Illinois Attorney General
115 S. LaSalle St., Chicago, IL 60603
(773) 919-2923
Paul.Berks@ilag.gov
Cara.Hendrickson@ilag.gov
Molly.Petchenik@ilag.gov

*Attorneys for Plaintiff State of Illinois*

**PHILIP J. WEISER**
Attorney General of Colorado

By: /s/ Nora Passamaneck
Nora Passamaneck*
*Senior Assistant Attorney General*
Sam Wolter*
*Assistant Attorney General*
1300 Broadway, #10
Denver, CO 80203
(720) 508-6000
nora.passamaneck@coag.gov
samuel.wolter@coag.gov

*Counsel for the State of Colorado*

**WILLIAM TONG**
Attorney General of Connecticut

*/s/ Andrew Ammirati*
Andrew Ammirati*
Assistant Attorney General
165 Capitol Ave
Hartford, CT 06106
(860) 808-5090
Andrew.Ammirati@ct.gov

*Attorney for Plaintiff State of Connecticut*

**BRIAN L. SCHWALB**
Attorney General for the District of Columbia

By: */s/ Eliza H. Simon*
Eliza H. Simon (D. Md. Bar No. 19648)
*Senior Counsel to the Attorney General*
Office of the Attorney General for the District of Columbia
400 Sixth Street NW
Washington, D.C. 20001
(202) 741-5221
Eliza.Simon@dc.gov

*Counsel for the District of Columbia*

**ANNE E. LOPEZ**
Attorney General of Hawaiʻi

By: /s/ *Kalikoʻonālani D. Fernandes*
Kalikoʻonālani D. Fernandes*
Solicitor General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov

*Attorneys for the State of Hawaiʻi*

**AARON M. FREY**
Attorney General of Maine

/s/ *Katherine W. Thompson*
Katherine W. Thompson*
Special Counsel
Office of the Attorney General
6 State House Station
Augusta, ME 04333
Tel.: 207-626-8455
Fax: 207-287-3145
Kate.thompson@maine.gov

*Attorneys for Plaintiff State of Maine*

**ANDREA JOY CAMPBELL**
Attorney General of Massachusetts

By: /s/ *Nita K. Klunder*
Nita K. Klunder*
*State Trial Counsel*
Savannah Arguello*
*Assistant Attorney General*
Office of the Attorney General
One Ashburton Place, 20th Floor
Boston, MA 02108
(617) 963-2394
Nita.Klunder@mass.gov
Sav.Arguello@mass.gov

*Counsel for the Commonwealth of Massachusetts*

**DANA NESSEL**
Attorney General of Michigan

By: /s/ *Neil Giovanatti*
Neil Giovanatti*
*Assistant Attorney General*
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
(517) 335-7603
GiovanattiN@michigan.gov

*Attorneys for the State of Michigan*

**KEITH ELLISON**
Attorney General of Minnesota

By: /s/ *Kimberly Svendsen*
Kimberly Svendsen*
Special Counsel, Rule of Law
445 Minnesota Street, Suite 1400
St. Paul, MN 55101
(651) 757-1141
kimberly.svendsen@ag.state.mn.us

*Counsel for the State of Minnesota*

**AARON D. FORD**
Attorney General of Nevada

By: /s/ K. Brunetti Ireland
K. Brunetti Ireland*
Chief of Special Litigation
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
kireland@ag.nv.gov

Attorneys for State of Nevada

**JENNIFER DAVENPORT**
Attorney General of New Jersey

*/s/ Andrea I. Cavazos*
Andrea I. Cavazos*
Deputy Attorney General
Office of the Attorney General
124 Halsey Street, 5th Floor
Newark, NJ 07101
(609) 696-5276
andrea.cavazos@law.njoag.gov

Counsel for the State of New Jersey

**RAÚL TORREZ**
Attorney General of New Mexico

*/s/ Olivia den Dulk*
Olivia den Dulk*
Assistant Attorney General
New Mexico Department of Justice
408 Galisteo Street
Santa Fe, New Mexico 87501
(505) 490-4060
odendulk@nmdoj.gov

*Attorneys for the State of New Mexico*

**DAN RAYFIELD**
Attorney General of Oregon

By: */s/ Leanne Hartmann*
Leanne Hartmann*
Senior Assistant Attorney General
Galen Knowles*
Assistant Attorney General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Tel (971) 673-1880
Fax (971) 673-5000
Leanne.Hartmann@doj.oregon.gov
Galen.Knowles@doj.oregon.gov

Attorneys for the State of Oregon

**PETER F. NERONHA**
Attorney General of Rhode Island

By: */s/ Leonard Giarrano IV*
Leonard Giarrano IV*
*Special Assistant Attorney General*
Office of the Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400
lgiarrano@riag.ri.gov

Attorney for State of Rhode Island

**CHARITY R. CLARK**
Attorney General of Vermont

By: */s/ Ryan P. Kane*
Ryan P. Kane*
Deputy Solicitor General
109 State Street
Montpelier, VT 05609
(802) 828-2153
Ryan.kane@vermont.gov

Attorneys for State of Vermont

**JAY JONES**
Attorney General of Virginia

By: /s/ *Megan C. Keenan*
Megan C. Keenan (D. Md. Bar No. 32426)
*Deputy Solicitor General*
Office of the Attorney General of Virginia
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-2071
mkeenan@oag.state.va.us

*Counsel for the Commonwealth of Virginia*

**NICHOLAS W. BROWN**
Attorney General of Washington

*/s/ Sarah E. Smith-Levy*
SARAH E. SMITH-LEVY*
Assistant Attorney General
CRISTINA SEPE*
Deputy Solicitor General
800 Fifth Avenue, Suite 2000
P.O. Box TB-14
Seattle, WA 98104-3188
206-464-7744
sarah.e.smith-levy@atg.wa.gov
cristina.sepe@atg.wa.gov

*Attorneys for Plaintiff State of Washington*

**JOSHUA L. KAUL**
Attorney General of Wisconsin

By: */s/ Aaron J. Bibb*
Aaron J. Bibb*
*Assistant Attorney General*
Wisconsin Department of Justice
17 West Main Street
Post Office Box 7857
Madison, WI 53707-7857
(608) 266-0810
aaron.bibb@wisdoj.gov

*Attorneys for State of Wisconsin*

* *pro hac vice*